DEX 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| EMPOWER OVERSIGHT | ) | |
| WHISTLEBLOWERS & RESEARCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:21-cv-1275 (LMB/JFA) |
| v. | ) | |
| | ) | |
| NATIONAL INSTITUTES OF HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## <u>DECLARATION OF GORKA GARCIA-MALENE</u>

I, Gorka Garcia-Malene, declare as follows:

1.      I am the Freedom of Information Act ("FOIA") Officer, National Institutes of Health ("NIH"), U.S. Department of Health and Human Services ("HHS" or the "Department"). I have held this position with NIH since October 15, 2017.

2.      My duties include responding to requests for NIH records under FOIA, 5 U.S.C. § 552.  These duties include managing searches for NIH records in response to FOIA requests, providing guidance to NIH record custodians or personnel regarding these searches, and determining whether to release or withhold records or portions of records in accordance with FOIA and HHS regulations implementing FOIA.

3.      I make this declaration based upon my personal knowledge and information available to me in my official capacity.  I have reviewed all documents at issue in the above-captioned litigation.

4.      The purpose of this declaration is to describe NIH's administrative handling and processing of Plaintiff's FOIA requests that are at issue in the above-captioned litigation.

**NIH's Standard Review Process**

5.      NIH is the nation's medical research agency, seeking to make discoveries that improve health and save lives.  It is made up of 27 different components, each of which has its own research agenda.

6.      The NIH FOIA program is decentralized.  Each institute or center (IC) has a FOIA staff dedicated to responding to requests.  Requesters can send requests to the IC of interest or to the NIH Office of the Director (OD).  When an IC receives a request, it is placed into one of two tracks: Simple or Complex.

7.      When responding to a FOIA request, the FOIA staff conducts a page-by-page, word-by-word review of all potentially responsive records to determine whether the document is responsive to the request, whether the information is publicly available, whether information should be withheld under one or more of the nine exemptions to the FOIA, and whether the records contain the equities of other federal agencies or third-party stakeholders.  During the review process, FOIA staff will consult with HHS program offices, federal agencies, or any other stakeholders of the records involved, as appropriate.

8.      When a request requires a partial or full denial under a FOIA exemption, or relates to COVID, the request is transferred to the OD FOIA program.  In these cases, my office conducts a word-by-word review to evaluate any proposed withholding.

9.      When the records are finalized, a response letter is prepared detailing the number of pages processed, the number of pages withheld in part, the number of pages withheld in full, the number of pages sent for referral, and the reasons for any withholdings.  If the records have been made available to the public during the time between the FOIA request and my office's review, we send a letter to the requestor detailing where they may access the publicly-available

2

records.

## Administrative Processing of Plaintiff's FOIA Requests

### Plaintiff's FOIA Request 56712

10.     On July 15, 2021, Defendant received a FOIA request via electronic mail sent to

"nihfoia@mail.nih.gov" dated July 14, 2021 which stated, in relevant parts:

> 1) All communications regarding the request to post the SARS-CoV-2 sequences
> to the Sequence Read Archive in March 2020. This request covers all
> communications between March 1, 2020 to March 31, 2020.
>
> 2) All communications regarding the request to withdraw the SARS-CoV-2
> sequences from Sequence Read Archive in June 2020. This request covers all
> communications between June 1, 2020 to June 31, 2020.
>
> 3) All communications regarding these withdrawn sequences as reported by a
> preprint titled "Recovery of deleted deep sequencing data sheds more light on the
> early Wuhan SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred
> Hutchinson Cancer Research Center. This request covers all communications
> between Jesse Bloom and the NIH, from January 1, 2021 and the present. This
> request all covers all communications inside the NIH regarding the preprint from
> June 21, 2021 to the present.
> .
> 4) All communications to, from, and within the NIH press office about the NIH
> statement released on June 23, 2021, and about reports that these sequences were
> removed from the Sequence Read Archive. This includes all emails related to the
> drafting of the statement, communications about the reported removal, and
> communications with reporters. This request covers all communications between
> June 21, 2021 to June 25, 2021.

11.     A complete and accurate copy of this correspondence is attached hereto as

Attachment A.

12.     On the same day it received it, July 15, 2021, NIH assigned Plaintiff's FOIA

Request, the internal control number 56712 ("Plaintiff's FOIA Request 56712").

13.     On August 4, 2021, NIH sent Plaintiff a letter indicating that it had denied

Plaintiff's request for expedited processing.  A copy of this correspondence is attached to this

Declaration as Attachment B.

3

14.     On November 17, 2021, Plaintiff filed suit against NIH in the United States District Court, Eastern District of Virginia, Alexandria Division.  A copy of this Complaint is attached to this Declaration as Attachment C.  Plaintiff also filed an Amended Complaint on March 1, 2022.  A copy of this Amended Complaint is attached to this Declaration as Attachment D.

15.     The NIH Sequence Read Archive, or SRA, is a repository for high-throughput sequencing data.  It is hosted by the National Center for Biotechnology Information (NCBI) at the National Library of Medicine (NLM).

16.     For purposes of background and related to Items 1 and 2 of Plaintiff's FOIA Request 56712, NCBI normally uses a database for tracking communications between curators and submitters to NCBI databases (including SRA).  In response to Items 1 and 2 of Plaintiff's FOIA Request 56712, NCBI searched that database for communications between SRA curators and the submitter of the withdrawn SARS-CoV2 sequences at Wuhan University.  As applied here specifically, the submitter involved in Plaintiff's FOIA Request 56712 had provided the withdrawn sequences under the project ID PRJNA612766.  As a result, the NCBI team used that project ID "PRJNA612766" as search term to pull responsive documents from the database for the dates requested.

17.     In response to Item 3 of Plaintiff's FOIA Request 56712, Stephen Sherry, Acting Director of NCBI, searched for responsive emails using the following keywords: "preprint", "jesse bloom" or "biorxiv" for the dates requested.

18.     The reason why Dr. Sherry used the search terms mentioned in Paragraph 17 above was that on June 22, 2021, Jesse Bloom of Fred Hutchinson Cancer Research Center, who is the individual mentioned in Plaintiff's FOIA Request 56712, published a manuscript on

bioRxiv, "the server for biology preprints".  Mr. Bloom's also published an article, *Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV2 epidemic* (available: https://www.biorxiv.org/content/10.1101/2021.06.18.449051v1), which identifies several early obtained SARS-CoV2 sequences that he recovered from the Google Cloud after they were "deleted from the NIH's Sequence Read Archive".  Both manuscript and article related to the topics of "biorxiv," "Jesse Bloom," and "preprints" representing the keywords used in the search.

19.      In response to Item 4 of Plaintiff's FOIA Request 56712, the Communications program at the OD (defined above in Paragraph 6) searched for emails containing the keywords "NIH statement sequence read archive" for the dates requested.  These keywords were used because Plaintiff's FOIA Request 56712 specifically mentioned communications regarding the NIH statement on Sequence Read Archive.

20.      As a result of the above searches by NIH OD and NCBI, the agency identified, reviewed, and processed 238 pages of records.  The records retrieved consisted of draft media outreach materials and communications with the submitter and Dr. Bloom.

21.      Of the 238 responsive pages NIH located, NIH released these pages to Plaintiff on February 7, 2022, in their entirety or in part, with information redacted pursuant to FOIA Exemptions 5 or 6.  A copy of this correspondence is attached to this Declaration as Attachment E.

22.      Exemption 5 permits the withholding of internal government records which are pre-decisional and contain staff advice, opinion, and recommendations.  This exemption is intended to preserve free and candid internal dialogue leading to decision-making.

23.      Exemption 5 was applied here because much of the internal discussion among

NIH staff members regarding the preprint, sequence submission procedures and policies for the

SRA database, and a public response strategy are deliberative and pre-decisional.  A public

response was published by multiple news outlets after these internal conversations occurred.

24.     Exemption 6 mandates the withholding of information that if disclosed "would

constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

25.     Exemption 6 was applied here due to the heightened public scrutiny with

anything remotely related to COVID-19.  Consequently, all email addresses, direct telephone

numbers, identities of the submitter and NIH database curators that the submitter dealt with, have

been withheld.  Conversely, there is no public interest in the disclosure of this information.

26.     NIH conducted a segregability review of the records released.  Following its

segregability review, NIH released the information, withholding only information subject to

Exemptions 5 or 6 of the FOIA.

27.     Information protected by Exemptions 5 and 6 was so intertwined with non-

exempt information that NIH could not reasonably segregate any portion of those documents for

release to provide any meaningful information.

**Plaintiff's FOIA Request 57203**

28.     On October 12, 2021, Defendant received another FOIA request via electronic

mail sent to "nihfoia@mail.nih.gov" dated September 30, 2021 which stated, in relevant parts:

> 1) All communications regarding the letter by Senators Grassley and Blackburn dated
> June 28, 2021.
>
> 2) All communications regarding the NIH's response to Senators Grassley and Blackburn
> dated September 8, 2021.
>
> 3) All communications regarding the letter by Senators Grassley and Blackburn dated
> September 16, 2021.

29.     A complete and accurate copy of this correspondence is attached hereto as
Attachment F.

30.     On the same day it received it, October 12, 2021, NIH assigned Plaintiff's FOIA
Request the internal control number 57203 ("Plaintiff's FOIA Request 57203").

31.     The NIH Office of Executive Secretariat searched their database for records
responsive to Plaintiff's FOIA Request 57203 using the following keywords: "Grassley" and / or
"Blackburn" for the dates requested.

32.     The reason why NIH used these keywords was that the words "Grassley" and
"Blackburn" were specifically mentioned in Plaintiff's FOIA Request 57203.

33.     As a result of the above search, NIH identified, reviewed, and processed
approximately 17 pages of records, all of which were released to Plaintiff.  The records that NIH
had retrieved consisted of draft correspondence with Congress.  They were released in part to
Plaintiff on February 7, 2022, together with the records responsive to Plaintiff's FOIA Request
56712.

34.     Exemption 5 permits the withholding of internal government records which are
pre-decisional and contain staff advice, opinion, and recommendations.  This exemption is
intended to preserve free and candid internal dialogue leading to decision-making.

35.     Exemption 5 was applied here because the records in question were comprised
of draft correspondence that had not been finalized.

36.     Exemption 6 mandates the withholding of information that if disclosed "would
constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

37.     Exemption 6 was applied here due to the heightened public scrutiny on anything
remotely related to COVID-19.  Consequently, all email addresses, direct telephone numbers and

signatures have been withheld.

38.     NIH conducted a segregability review of the records released.  Following its

segregability review, NIH released the information, withholding only information subject to

Exemptions 5 or 6 of the FOIA.

39.      Information protected by Exemptions 5 and 6 was so intertwined with non-

exempt information that NIH could not reasonably segregate any portion of those documents for

release to provide any meaningful information.

### Appeal

40.     On February 24, 2022, Plaintiff transmitted two administrative appeal letters in

response to the NIH's production corresponding to Plaintiff's FOIA Request 56712 and

Plaintiff's FOIA Request 57203.  A copy of this correspondence is attached to this Declaration as

Attachments G and H, respectively.

41.     In the appeal, Plaintiff appeals the NIH's February 7, 2022, initial determination

and requests that the NIH review the nature and scope of its FOIA staff's records search and

review, correct any deficiencies that are identified, and apprise Plaintiff of the results of such

review on the grounds that NIH's FOIA staff:

- Did not perform a search for records that was reasonably calculated to find
  all responsive records;

- Claimed FOIA Exemption b(5)—specifically for the deliberative process
  privilege—for records that were not both pre-decisional and deliberative;

- Claimed FOIA Exemption b(6) for records that do not invoke a legitimate
  personal privacy interest.  *Id.*

42.     While NIH admits that as Plaintiff states in its cover correspondence, it had not

extended appeals rights in its February 7, 2022 letter, NIH posits that it had not done so because given that these FOIA requests were now before the court and in litigation status, NIH was expecting that as is customary when a matter is before the court, Plaintiff would have either conferred with Defendant's counsel on some of its concerns to try to resolve the matter, or as an alternative brought the matter to the court's attention.  A copy of this cover correspondence is attached to this Declaration as Attachments G-1 and H-1, respectively.  Extending appeal rights would make no sense in terms of NIH limited resources given that the outcome of any appeal could be superseded by the court's decision.

## CONCLUSION

43.     In summary, NIH avers that it conducted searches reasonably calculated to locate records responsive to Plaintiff's request.

44.     NIH only withheld information pursuant to Exemptions 5 and 6 and determined that none of the withheld information is segregable for release.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing to be true and correct, to the best of my knowledge, information and belief.

Executed this 30th day of March 2022.

Gorka Garcia-malene -S
Digitally signed by
Gorka Garcia-malene -S
Date: 2022.03.30
15:38:24 -04'00'

GORKA GARCIA-MALENE

# Attachment A





EMPOWR.us

July 14, 2021

**VIA ELECTRONIC TRANSMISSION:** NIHFOIA@MAIL.NIH.GOV

National Institutes of Health
Building 31 Room 5B35
9000 Rockville Pike
Bethesda, MD 20892

**RE: RECORDS REGARDING NIH'S SARS-COV-2 (COVID19) DATABASE**

Dear FOIA Officer:

Empower Oversight Whistleblowers & Research ("Empower Oversight") is a nonpartisan, nonprofit educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing.  We work to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities help to hold those authorities accountable to act on such reports.

We respectfully request records be delivered from the National Institutes of Health (NIH) pursuant to this request under the Freedom of Information Act (FOIA), 5 U.S.C. 552 within the next 20 business days. As detailed below, we request access to certain records regarding SARS-CoV-2 sequences submitted for posting to the Sequence Read Archive in March 2020 by Chinese researchers and subsequently requested to be withdrawn by the submitting investigator in June 2020. Sequences of SARS-CoV-2 virus are critical to understanding how this pandemic (which has killed more than 600,000 Americans) started, in order to prevent future pandemics.[1] Furthermore, the State Department has noted that China has not been transparent in its handling of the SARS-CoV-2 origin question and has removed virus sequences from its own online databases that could help uncover how the pandemic started.[2]

The *New York Times* and the *Washington Post* have reported on requests to remove these sequences and this removal has added fuel to the SARS-CoV-2 origin debate.[3]

---

[1] "COVID Mortality Data," Johns Hopkins University (https://coronavirus.jhu.edu/data/mortality).
[2] "Fact Sheet on Activity at the Wuhan Institute of Virology," U.S. State Dep't (https://2017-2021.state.gov/fact-sheet-activity-at-the-wuhan-institute-of-virology/index.html)
[3] "Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted," *New York Times* (Jun 23, 2021); "Seattle scientist digs up deleted coronavirus genetic data, adding fuel to the covid origin debate," *Washington Post* (Jun 23, 2021).

According to the *Washington Post*, "The NIH released a statement Wednesday saying that a researcher who originally published the genetic sequences asked for them to be removed from the NIH database so that they could be included in a different database."[4] In a statement to the *Washington Post*, the NIH said:

> These SARS-CoV-2 sequences were submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020. The requestor indicated the sequence information had been updated, was being submitted to another database, and wanted the data removed from SRA to avoid version control issues.[5]

And, according to the *New York Times*:

> "These SARS-CoV-2 sequences were submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020," said Renate Myles, a spokeswoman for the National Institutes of Health. She said that the investigator, whom she did not name, told the archive managers that the sequences were being updated and would be added to a different database.[6]

Accordingly, please provide all records relating to the following:

1) All communications regarding the request to post the SARS-CoV-2 sequences to the Sequence Read Archive in March 2020. This request covers all communications between March 1, 2020 to March 31, 2020.

2) All communications regarding the request to withdraw the SARS-CoV-2 sequences from Sequence Read Archive in June 2020. This request covers all communications between June 1, 2020 to June 31, 2020.

3) All communications regarding these withdrawn sequences as reported by a preprint titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred Hutchinson Cancer Research Center.[7] This request covers all communications between Jesse Bloom and the NIH, from January 1, 2021 and the present. This request all covers all communications inside the NIH regarding the preprint from June 21, 2021 to the present.

4) All communications to, from, and within the NIH press office about the NIH statement released on June 23, 2021, and about reports that these sequences were removed from the Sequence Read Archive. This includes all emails related to the drafting of the statement, communications about the reported removal, and communications with reporters. This request covers all communications between June 21, 2021 to June 25, 2021.

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic," *bioRxiv* (Jun 18, 2021).

**Fee Waiver Request**

Empower Oversight requests a waiver of fees associated with processing this request, in keeping with 5 U.S.C. § 552 (a)(4)(A)(iii). The information sought is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government. Empower Oversight is a non-profit organization as defined under Section 501(c)(3) of the Internal Revenue Code and has no commercial interest in making this request.  public has a significant interest in understanding how this pandemic started. Empower Oversight is committed to government accountability and public integrity and is committed to public disclosure of documents via its website, and by providing these documents to the media for public dissemination.[8]

**Request for Expedited Processing**

Empower Oversight also requests expedited processing of this request. Understanding how the SARS-CoV-2 pandemic started is of massive public interest both in the United States and around the globe, particularly because understanding how this pandemic started can help us stop future pandemics. The information requested is urgently needed to inform the public concerning actual or alleged federal government activity, namely why were genetic sequences removed from a United States federal database when they could help understand how the pandemic started. The request is of widespread and exceptional media interest and the information sought involves questions about research integrity, which affect public confidence in the operations of NIH.  Empower Oversight is engaged in disseminating information to the public through its website and working with media.[9]  It is important that this request be processed and the results publicly disseminated as quickly as possible to help the country guard against future pandemics.

For ease of administration and to conserve resources, we ask that documents be produced in a readily accessible electronic format. In the event our request for a fee waiver is denied or if you have any questions about this request, please contact us immediately. Thank you for your prompt attention to this matter.

Cordially,

/Jason Foster/

Jason Foster
Founder & President

---

[8] "Mission," *Empower Oversight* (http://empowr.us/mission).
[9] *Id.*

# Attachment B



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Public Health Service

National Institutes of Health
Freedom of Information Office
Building 31, Room 5B-35
31 Center Drive, MSC 2107
Bethesda, Maryland 20892-2107
phone: (301) 496-5633
fax: (301) 402-4541

Via Email:  info@empowr.us

August 4, 2021

Jason Foster
Founder & President
Empower Oversight
2615 Columbia Pike, #445
Arlington, VA 22204

RE: FOIA Request 56712

Dear Mr. Foster,

This is in reference to your July 15, 2021, Freedom of Information Act (FOIA) request addressed to the FOIA Office, National Institutes of Health (NIH), and received in this office on the same day.  You requested a copy of the following:

> 1) All communications regarding the request to post the SARS-CoV-2 sequences to the Sequence Read Archive in March 2020. This request covers all communications between March 1, 2020 to March 31, 2020.
>
> 2) All communications regarding the request to withdraw the SARS-CoV-2 sequences from Sequence Read Archive in June 2020. This request covers all communications between June 1, 2020 to June 31, 2020.
>
> 3) All communications regarding these withdrawn sequences as reported by a preprint titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred Hutchinson Cancer Research Center.7 This request covers all communications between Jesse Bloom and the NIH, from January 1, 2021 and the present. This request all covers all communications inside the NIH regarding the preprint from June 21, 2021 to the present.
>
> 4) All communications to, from, and within the NIH press office about the NIH statement released on June 23, 2021, and about reports that these sequences were removed from the Sequence Read Archive. This includes all emails related to the drafting of the statement, communications about the reported removal, and communications with reporters. This request covers all communications between June 21, 2021 to June 25, 2021.

You also requested expedited processing.

Page 2 – Mr. Foster (56712)

The FOIA, 5 U.S.C. §552(a)(6)(E), requires agencies to consider requests for expedited processing and grant them whenever a "compelling need" is shown and in other cases as determined by the agency.  The term "compelling need" is defined as (1) involving "an imminent threat to the life or physical safety of an individual," or (2) in the case of a request made by "a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity."  The compelling need standard is "intended to be narrowly applied."  *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001).

Your request does not meet the standards of "compelling need," therefore, I am denying your request for expedited processing.

We are searching the files of the NIH for records responsive to your request. If any documents responsive to your request are located, they will be reviewed for releasability, and all releasable information will be sent to you. We will do everything possible to comply with your request in a timely manner. Please contact the NIH FOIA Office at nihfoia@od.nih.gov or 301-496-5633 for additional information or to inquire about the status of your request.

Provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the Department of Health and Human Services (HHS) FOIA Regulations as they apply to educational institution requesters; i.e., you will be charged for duplication at 10 cents per page although the first 100 pages are free; there is no charge for search or review time.  If there are any fees associated with processing this request, you will be sent an invoice with our final response.  Because we are uncertain that any applicable fees will exceed our minimum charge ($25.00), we are not addressing your request for a fee waiver at this time. However, if we determine there will be fees associated with processing your request, we will contact you at that time.

If you are not satisfied with the processing and handling of this requests, you may contact the NIH FOIA Public Liaison and/or the Office of Government Information Services (OGIS):

NIH FOIA Public Liaison
Stephanie Clipper
Public Affairs Specialist
Office of Communications and Public Liaison
Building 31, Room 5B35
31 Center Drive
Bethesda, MD 20814
301-496-5633 (phone)
301-496-0818 (fax)
nihfoia@od.nih.gov (email)

OGIS
National Archives and Records Admin.
8601 Adelphi Rd - OGIS
College Park, MD 20740-6001
202-741-5770 (phone)
1-877-684-6448 (toll-free)
202-741-5769 (fax)
ogis@nara.gov (email)

Page 3 – Mr. Foster (56712)

In addition, you have the right to appeal this determination to deny you expedited processing of your request.  Should you wish to do so, your appeal must be sent within ninety (90) days of the date of this letter, following the procedures outlined in Subpart C of the HHS FOIA Regulations http://www.nih.gov/icd/od/foia/cfr45.htm) to:

> Assistant Secretary for Public Affairs
> Agency Chief FOIA Officer
> U.S. Department of Health and Human Services
> Office of the Assistant Secretary for Public Affairs
> Room 729H
> 200 Independence Avenue, S.W.
> Washington, DC 20201

Clearly mark both the envelope and your letter "Freedom of Information Act Appeal."

> Sincerely,
>
> Gorka Garcia-malene -S
> Digitally signed by Gorka Garcia-malene -S
> Date: 2021.08.04 13:36:14 -04'00'
>
> Gorka Garcia-Malene
> Freedom of Information Officer, NIH

# Attachment C

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

```
                                        )
                                        )
Empower Oversight Whistleblowers & Research  )
                                        )
_____     )
            Plaintiff(s)                )
                                        )        Civil Action No.  1:21-cv-01275
              v.                        )
                                        )
                                        )
       National Institutes of Health        )
                                        )
            Defendant(s)                 )
                                        )
```

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Jessica D. Aber, U.S. Attorney for the Eastern District of Virginia
Justin W. Williams United States Attorney's Building
2100 Jamieson Ave.
Alexandria, VA  22314

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Michael J. Schrier
Husch Blackwell LLP
750 17th St NW, #900
Washington, DC 20006
202.378.2313

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Digitally signed by Dana Van Metre
Date: 2021.11.19 13:35:40 -05'00'

Date: __**11/19/2021**__

*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| EMPOWER OVERSIGHT WHISTLEBLOWERS & RESEARCH, 2615 Columbia Pike, #445 Arlington, VA 22204 | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | |
| NATIONAL INSTITUTES OF HEALTH, 9000 Rockville Pike Bethesda, MD 20892 | ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiff Empower Oversight Whistleblowers & Research (hereinafter "Empower Oversight") brings this action against Defendant National Institutes of Health ("NIH") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ( "FOIA"), including obtaining access to records maintained by the NIH.

2.      The records at issue, including but not limited to communications to and from NIH, relate to SARS-CoV-2 sequences submitted by a Chinese researcher for posting to the Sequence Read Archive ("SRA") in March 2020 and subsequently withdrawn by the NIH upon the researcher's request to SRA staff in June 2020. *See infra* ¶¶ 4-7.

3.      On June 18, 2021, Dr. Jesse D. Bloom of the Fred Hutchen Cancer Research Center published an article titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic." Jesse Bloom, *Recovery of deleted deep sequencing data sheds*

1

*more light on the early Wuhan SARS-CoV-2 epidemic*, bioRxiv (June 18, 2021), https://www.biorxiv.org/content/10.1101/2021.06.18.449051v1.full.pdf.

4.       Dr. Bloom explained that in reviewing a March 2020 Wuhan University-associated study containing a spreadsheet with information on 241 genetic sequences from the SRA, his own searches for these sequences indicated that they were deleted from the SRA. *See id.* Nevertheless, he was able to recover certain deleted files from Google Cloud and reconstruct partial sequences of 13 early viruses. *See id.*

5.       Dr. Bloom reasoned that "[t]he fact that such an informative data set was deleted has implications beyond those gleaned directly from the recovered sequences," and that it "therefore seems likely the sequences were deleted to obscure their existence." *Id.* at 7.

6.       A June 23, 2021 New York Times article, among numerous others, heightened the national focus on Dr. Bloom's conclusions, reporting that he provided "intriguing new information for discerning when and how the virus may have spilled over from a bat or another animal into humans" and that it "raise[s] questions about why original sequences were deleted." *See* Carl Zimmer, *Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted*, N.Y.T. (June 23, 2021) (updated July 22, 2021), *available at* https://www.nytimes.com/2021/06/23/science/coronavirus-sequences.html.

7.       The New York Times article revealed that, in fact, more than 200 data entries from the genetic sequencing of early COVID-19 cases disappeared from an online scientific database in the summer of 2020. *See id.* The article included confirmation by the National Library of Medicine within the NIH, which manages the SRA, that these sequences were "submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020." *See id.*

2

8.      However, deletions from the SRA are reportedly rare.  From March 2020 to March 2021, the SRA repeatedly received approximately 2.4 million submissions of sequence data, according to the NCBI spokeswoman.  However, a *mere 0.19%* were withdrawn.  *See* Amy Dockser Marcus & Drew Hinshaw, *After Covid-19 Data Is Deleted, NIH Reviews How Its Gene Archive Is Handled*, WALL ST. J. (Sept. 13, 2021), *available at* https://www.wsj.com/articles/after-covid-19-data-is-deleted-nih-reviews-how-its-gene-archive-is-handled-11631545490.

9.      On June 28, 2021, Senators Grassley, Blackburn, and Marshall sent the NIH a letter seeking records and responses to questions regarding the removal of the sequences from the SRA.  Letter from Sen. Grassley et al. to Francis S. Collins, June 28, 2021.  The same Senators sent a follow-up letter on September 16, 2021, reiterating their requests.  Letter from Sen. Grassley et al. to Francis S. Collins, Sept. 16, 2021.

10.     According to the Centers for Disease Control and Prevention ("CDC"), as of November 6, 2021, over 756,000 deaths—and counting—have been attributed to COVID-19 in the United States alone.  *See COVID-19 Mortality Overview*, CDC (last accessed Nov. 16, 2021), *available at* https://www.cdc.gov/nchs/covid19/mortality-overview.htm.  Yet, upon information and belief, there is no global consensus on the origin of the COVID-19 pandemic.

11.     The public thus has a significant interest in understanding the reason why these early sequences were removed from the SRA.  In recognizing this significant interest, Empower Oversight filed the three FOIA Requests described herein.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

3

13.     Venue is proper in this district and division pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## PARTIES

14.     Plaintiff Empower Oversight is a nonprofit, nonpartisan educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing. Empower Oversight has its principal place of business located at 2615 Columbia Pike, #445, Arlington, VA 22204.  Empower Oversight works to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, as well as work to hold authorities accountable to act on such reports.

15.     Defendant NIH is an agency within the U.S. Department of Health and Human Services, and a federal administrative agency within the meaning of 5 U.S.C. § 552(f)(1), with its principal place of business located at 9000 Rockville Pike, Bethesda, MD 20892.   Upon information and belief, the NIH has possession, custody, and control of the records, within the meaning of 5 U.S.C. § 552(f)(2), to which Empower Oversight seeks access.

## LEGAL STANDARD

16.     FOIA requires a federal administrative agency to promptly make available requested, non-exempt agency records in response to a request that (a) reasonably describes such records and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A); *see also* 45 C.F.R. § 5.22.

17.     FOIA requires an agency to respond to a valid request within twenty (20) days (exempting Saturdays, Sundays, and legal public holidays) (hereinafter "working days") upon receipt of such request, including notifying the requestor immediately of its determination, the

4

reasons therefor, and the right to appeal any adverse determination.  5 U.S.C. § 552(a)(6)(A)(i); *see also* 45 C.F.R. §§ 5.24, 5.28.

18.    In certain circumstances, an agency may instead provide notice to the requester that "unusual circumstances" merit additional time—up to an additional ten (10) working days—to respond to the request.   5 U.S.C. § 552(a)(4)(viii)(II)(aa); *see also* 45 C.F.R. § 5.24(f).   In the event the agency provides notice to the requester of "unusual circumstances," and that it is not able to respond to the records request within the statutory deadline, the agency must provide the requester "an opportunity to arrange with the agency an alternative time frame for processing the request." 5 U.S.C. § 552(a)(6)(B)(ii); 45 C.F.R. § 5.24(f).

19.    If an agency does not respond to a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review.  5 U.S.C. § 552(a)(6)(C)(i).

## **FACTS**

20.    On July 14, 2021, Empower Oversight submitted a FOIA request to the NIH, *see* Ex. A, seeking access to the following:

a.  All communications regarding the request to post the SARs-CoV-2 sequences to the Sequence Read Archive in March 2020.   This request covers all communications between March 1, 2020 to March 31, 2020.

b.  All communications regarding the request to withdraw the SARS-CoV-2 sequences from Sequence Read Archive in June 2020.   This request covers all communications between June 1, 2020 to June 31, 2020.

c.  All communications regarding these withdrawn sequences as reported by a preprint titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred Hutchinson Cancer Research Center.  This request covers all communications between Jesse Bloom and the NIH, from January 1, 2021 and the present.  This request covers all communications inside the NIH regarding the preprint from June 21, 2021 to the present.

5

    d.   All communications to, from, and within the NIH press office about the NIH statement released on June 23, 2021, and about reports that these sequences were removed from the Sequence Read Archive. This includes all emails related to the drafting of the statement, communications about the reported removal, and communications with reporters. This request covers all communications between June 21, 2021 to June 25, 2021.

21.    On September 30, 2021, Plaintiff submitted two additional FOIA Requests to the NIH. In one September 30, 2021 Request, *see* Ex. B, Plaintiff sought access to and copies of:

    a.   All communications regarding the letter by Senators Grassley and Blackburn dated June 28, 2021.

    b.   All communications regarding the NIH's response to Senators Grassley and Blackburn dated September 8, 2021.

    c.   All communications regarding the letter by Senators Grassley and Blackburn dated September 16, 2021.

22.    In the other September 30, 2021 Request, *see* Ex. C, Plaintiff requested a copy of the NIH's "log" of requests for records filed pursuant to the FOIA.

23.    To date, Empower Oversight has yet to receive any correspondence whatsoever from Defendant concerning any of its three pending FOIA Requests (hereinafter the "Three Requests"), despite applicable regulations prescribing that the NIH, at a minimum, is required to acknowledge receipt of all FOIA requests in writing within 10 working days. *See* 45 C.F.R. § 5.24; see also 45 C.F.R. § 5.4 (explaining that all operating divisions ("OpDivs") of HHS are subject to the requirements in that regulation); 45 C.F.R. § 5.3 (defining NIH as an OpDiv of HHS).

24.    However, to date, Empower Oversight's account on the NIH's online FOIA portal shows:

    a.   A Request 56712 as having been filed by Empower Oversight on July 15, 2021. The "Description" of Request 56712 matches the four enumerated items on

Empower Oversight's July 14, 2021 Request, and the details of Request 56712 include an embedded link to a copy of Empower Oversight's request. Therefore, upon information and belief, the responsible FOIA officer "received" that July 14, 2021 Request on or before July 15, 2021.

b. A Request 57151 as having been filed by Empower Oversight on October 7, 2021. The "Description" of Request 57151 matches the substance of one of Empower Oversight's September 30, 2021 Requests, and the details of Request 57151 include an embedded link to a copy of Empower Oversight's request. Therefore, upon information and belief, the responsible FOIA officer "received" that September 30, 2021 Request on or before October 7, 2021.

c. A Request 57199 as having been filed by Empower Oversight on October 14, 2021. The "Description" of Request 57199 matches the substance of Empower Oversight's other September 30, 2021 Request, and the details of Request 57199 include an embedded link to a copy of Empower Oversight's September 30, 2021 Request. Therefore, upon information and belief, the responsible FOIA officer "received" that September 30, 2021 Request on or before October 14, 2021.

25.    To date, the NIH has not provided a determination as to Request 56712, 57151, or 57199, despite the requirement of 5 U.S.C. § 552(a)(6)(A) that an agency respond within twenty (20) working days, including by providing detail on the scope of the records the agency intends to produce or withhold, the reasons for making that determination, and an explanation of the process by which a requester can administratively appeal that determination.

26.     To date, the NIH also has not provided Empower Oversight notice that "unusual circumstances" warrant a failure to comply with the statutory deadline with respect to any of the Three Requests.

27.     Empower Oversight has been required to expend resources to prosecute this action.

## **CLAIMS FOR RELIEF**

### **Count I**
### **Failure to Comply with Statutory Deadlines in Violation of FOIA, 5 U.S.C. § 552(a)(6)**

28.     Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1-27, as if fully set forth herein.

29.     To date, Defendant has failed to respond – timely or otherwise - to each of Plaintiff's Three Requests identified above in paragraphs 20-22.

30.     More than 20 working days have passed since each of the Three Requests were received by the NIH as reflected on its online FOIA portal.

31.     FOIA requires Defendant to have provided a final determination within 20 working days of each of the Three Requests. Defendant may extend this 20-day period in the event of "unusual circumstances," as defined by 5 U.S.C. § 552(a)(6)(B)(iii), for a maximum of 10 working days, but must provide Empower Oversight with notice to do so. *See* 5 U.S.C. §§ 552(a)(4)(A)(viii)(II)(aa), 552(a)(6)(B)(ii).

32.     Defendant did not provide a final determination within 20 working days of each of the Three Requests, nor did it contact Empower Oversight with a claim that unusual circumstances exist as to any of the Three Requests.

33.     The NIH has thus failed to timely make a determination on all Three Requests, in violation of FOIA. *See* 5 U.S.C. § 552(a)(6).

8

34.     Empower Oversight has constructively exhausted all administrative remedies required by FOIA as to each of the Three Requests. *See* 5 U.S.C. § 552(a)(6)(C)(i).

35.     Plaintiff is being irreparably harmed by Defendant's violation of the FOIA, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the FOIA as to each of the Three Requests.

## Count II
**Unlawful Withholding of Agency Records in Violation of FOIA, 5 U.S.C. § 552(a)(3)**

36.     Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1-35, as if fully set forth herein.

37.     FOIA requires Defendant to process records requests and promptly provide the requested records or the reasonably segregable portion of records not subject to a FOIA exemption. 5 U.S.C. § 552(a)(3)(B).

38.     However, Defendant has neither provided Empower Oversight any responsive documents in response to any of its Three Requests, nor has it claimed that any responsive records are exempt from disclosure.

39.     Therefore, the NIH's acts and omissions for failing to produce records or claim applicable exemptions violate FOIA.  5 U.S.C. § 552(a)(3)(B).

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays that this Court:

A.     Declare that NIH failed to make timely determinations on each of Empower Oversight's Three Requests, in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

B.     Declare that NIH failed to promptly provide records responsive to each of Empower Oversight's Three Requests, in violation of FOIA, 5 U.S.C. § 552(a)(3);

9

C.      Order NIH to immediately conduct a reasonable search for all responsive records, as required by FOIA, 5 U.S.C. § 552(a)(3)(C);

D.      Order NIH to immediately provide determinations on each of Empower Oversight's Three Requests, as required by FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

E.      Order NIH to promptly disclose to Empower Oversight all responsive, non-exempt records, as required by FOIA, 5 U.S.C. § 552(a)(3);

F.      Award Empower Oversight its costs and reasonable attorneys' fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

G.      Grant such other relief as the Court may deem just and proper.

November 17, 2021                  Respectfully submitted,

/s/ Michael J. Schrier
Michael J. Schrier (VSB #65916)
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, DC 20006-4675
Tel. 202-378-2313
Fax 202-378-2319
michael.schrier@huschblackwell.com

Scott L. Glabe
HUSCH BLACKWELL  LLP
235 E. High St., Suite 300
Jefferson City, MO 65101
Tel. 202-378-2396
Fax 292-378-2319
scott.glabe@huschblackwell.com

*Attorneys for Plaintiff Empower Oversight
Whistleblowers & Research*

# EXHIBIT A

# EMPOWER OVERSIGHT

### W h i s t l e b l o w e r s   &   R e s e a r c h



**EMPOWR.us**

July 14, 2021

**VIA ELECTRONIC TRANSMISSION: NIHFOIA@MAIL.NIH.GOV**

National Institutes of Health
Building 31 Room 5B35
9000 Rockville Pike
Bethesda, MD 20892

**RE: RECORDS REGARDING NIH'S SARS-CoV-2 (COVID19) DATABASE**

Dear FOIA Officer:

Empower Oversight Whistleblowers & Research ("Empower Oversight") is a nonpartisan, nonprofit educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing.  We work to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities help to hold those authorities accountable to act on such reports.

We respectfully request records be delivered from the National Institutes of Health (NIH) pursuant to this request under the Freedom of Information Act (FOIA), 5 U.S.C. 552 within the next 20 business days. As detailed below, we request access to certain records regarding SARS-CoV-2 sequences submitted for posting to the Sequence Read Archive in March 2020 by Chinese researchers and subsequently requested to be withdrawn by the submitting investigator in June 2020. Sequences of SARS-CoV-2 virus are critical to understanding how this pandemic (which has killed more than 600,000 Americans) started, in order to prevent future pandemics.[1] Furthermore, the State Department has noted that China has not been transparent in its handling of the SARS-CoV-2 origin question and has removed virus sequences from its own online databases that could help uncover how the pandemic started.[2]

The *New York Times* and the *Washington Post* have reported on requests to remove these sequences and this removal has added fuel to the SARS-CoV-2 origin debate.[3]

---

[1] "COVID Mortality Data," Johns Hopkins University (https://coronavirus.jhu.edu/data/mortality).
[2] "Fact Sheet on Activity at the Wuhan Institute of Virology," U.S. State Dep't (https://2017-2021.state.gov/fact-sheet-activity-at-the-wuhan-institute-of-virology/index.html)
[3] "Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted," *New York Times* (Jun 23, 2021); "Seattle scientist digs up deleted coronavirus genetic data, adding fuel to the covid origin debate," *Washington Post* (Jun 23, 2021).

According to the *Washington Post*, "The NIH released a statement Wednesday saying that a researcher who originally published the genetic sequences asked for them to be removed from the NIH database so that they could be included in a different database."[4] In a statement to the *Washington Post*, the NIH said:

> These SARS-CoV-2 sequences were submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020. The requestor indicated the sequence information had been updated, was being submitted to another database, and wanted the data removed from SRA to avoid version control issues.[5]

And, according to the *New York Times*:

> "These SARS-CoV-2 sequences were submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020," said Renate Myles, a spokeswoman for the National Institutes of Health. She said that the investigator, whom she did not name, told the archive managers that the sequences were being updated and would be added to a different database.[6]

Accordingly, please provide all records relating to the following:

1) All communications regarding the request to post the SARS-CoV-2 sequences to the Sequence Read Archive in March 2020. This request covers all communications between March 1, 2020 to March 31, 2020.

2) All communications regarding the request to withdraw the SARS-CoV-2 sequences from Sequence Read Archive in June 2020. This request covers all communications between June 1, 2020 to June 31, 2020.

3) All communications regarding these withdrawn sequences as reported by a preprint titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred Hutchinson Cancer Research Center.[7] This request covers all communications between Jesse Bloom and the NIH, from January 1, 2021 and the present. This request all covers all communications inside the NIH regarding the preprint from June 21, 2021 to the present.

4) All communications to, from, and within the NIH press office about the NIH statement released on June 23, 2021, and about reports that these sequences were removed from the Sequence Read Archive. This includes all emails related to the drafting of the statement, communications about the reported removal, and communications with reporters. This request covers all communications between June 21, 2021 to June 25, 2021.

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic," *bioRxiv* (Jun 18, 2021).

**Fee Waiver Request**

Empower Oversight requests a waiver of fees associated with processing this request, in keeping with 5 U.S.C. § 552 (a)(4)(A)(iii). The information sought is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government. Empower Oversight is a non-profit organization as defined under Section 501(c)(3) of the Internal Revenue Code and has no commercial interest in making this request. The public has a significant interest in understanding how this pandemic started. Empower Oversight is committed to government accountability and public integrity and is committed to public disclosure of documents via its website, and by providing these documents to the media for public dissemination.[8]

**Request for Expedited Processing**

Empower Oversight also requests expedited processing of this request. Understanding how the SARS-CoV-2 pandemic started is of massive public interest both in the United States and around the globe, particularly because understanding how this pandemic started can help us stop future pandemics. The information requested is urgently needed to inform the public concerning actual or alleged federal government activity, namely why were genetic sequences removed from a United States federal database when they could help understand how the pandemic started. The request is of widespread and exceptional media interest and the information sought involves questions about research integrity, which affect public confidence in the operations of NIH.  Empower Oversight is engaged in disseminating information to the public through its website and working with media.[9]  It is important that this request be processed and the results publicly disseminated as quickly as possible to help the country guard against future pandemics.

For ease of administration and to conserve resources, we ask that documents be produced in a readily accessible electronic format. In the event our request for a fee waiver is denied or if you have any questions about this request, please contact us immediately. Thank you for your prompt attention to this matter.

Cordially,

/Jason Foster/

Jason Foster
Founder & President

---

[8] "Mission," *Empower Oversight* (http://empowr.us/mission).
[9] *Id.*

# EXHIBIT B





September 30, 2021

VIA ELECTRONIC TRANSMISSION: NIHFOIA@MAIL.NIH.GOV

National Institutes of Health
Building 31, Room 5B35
9000 Rockville Pike
Bethesda, MD 20892

RE: Records Regarding NIH'S SARS-COV-2 Database

Dear FOIA Officer:

## Introduction

Empower Oversight Whistleblowers & Research ("Empower Oversight") is a nonpartisan, nonprofit educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing. We work to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and seek to hold those authorities accountable to act on those reports by, among other means, publishing information concerning the same.

## Background

*The New York Times* and *The Washington Post*, among others, have reported on requests by Chinese researchers to have certain SARS-CoV-2 genetic sequences withdrawn from the National Institutes of Health's ("NIH") Sequence Read Archive.[1] Genetic sequences for SARS-CoV-2 virus are critical to understanding how the pandemic (which has killed more than 670,000 Americans) started, and

---

[1] "Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted," New York Times (Jun 23, 2021); "Seattle scientist digs up deleted coronavirus genetic data, adding fuel to the covid origin debate," Washington Post (Jun 23, 2021).

understanding the origin of the pandemic is essential to furthering the prevention of future pandemics.[2] Additionally, the State Department has noted that China has not been transparent in its handling of the question of the origin of SARS-CoV-2 and, as part of its hindrance of efforts to gain an understanding of the virus, has removed genetic sequences from its own online databases.[3]

On June 28, 2021, Senators Charles Grassley and Marsha Blackburn sent the NIH a letter seeking records and answers to seven questions regarding the removal of the SARS-CoV-2 genetic sequences from the Sequence Read Archive. They received a response to their inquiry on September 8, 2021, that they state "failed to fully and completely answer all seven questions and failed to provide the requested records."[4] Senators Grassley and Blackburn then sent a follow up letter on September 16, 2021, demanding answers to their previous questions.[5]

## Records Request

To shed light on the manner in which the NIH is addressing the SARS-CoV-2 pandemic and responding to information requests from members of Congress, we respectfully request, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, copies of:

1. All communications regarding the letter by Senators Grassley and Blackburn dated June 28, 2021.
2. All communications regarding the NIH's response to Senators Grassley and Blackburn dated September 8, 2021.
3. All communications regarding the letter by Senators Grassley and Blackburn dated September 16, 2021.

## Definitions

"COMMUNICATION(S)" means every manner or method of disclosure, exchange of information, statement, or discussion between or among two or more persons, including but not limited to, face-to-face and telephone conversations, correspondence, memoranda, telegrams, telexes, email messages, voice-mail messages, text messages, meeting minutes, discussions, releases, statements, reports, publications, and any recordings or reproductions thereof.

"DOCUMENT(S)" or "RECORD(S)" mean any kind of written, graphic, or recorded matter, however produced or reproduced, of any kind or description,

---

[2] "COVID Mortality Data," Johns Hopkins University (https://coronavirus.jhu.edu/data/mortality)
[3] "Fact Sheet on Activity at the Wuhan Institute of Virology," U.S. State Dep't (https://2017-2021.state.gov/fact- sheet-activity-at-the-wuhan-institute-of-virology/index.html)
[4] https://www.grassley.senate.gov/news/news-releases/did-nih-improperly-delete-covid-19-data-at-request-of-chinese-researchers-senators-want-answers
[5] https://www.grassley.senate.gov/news/news-releases/did-nih-improperly-delete-covid-19-data-at-request-of-chinese-researchers-senators-want-answers

whether sent, received, or neither, including drafts, originals, non-identical copies, and information stored magnetically, electronically, photographically or otherwise. As used herein, the terms "DOCUMENT(S)" or "RECORD(S)" include, but are not limited to, studies, papers, books, accounts, letters, diagrams, pictures, drawings, photographs, correspondence, telegrams, cables, text messages, emails, memoranda, notes, notations, work papers, intra-office and inter-office communications, communications to, between and among employees, contracts, financial agreements, grants, proposals, transcripts, minutes, orders, reports, recordings, or other documentation of telephone or other conversations, interviews, affidavits, slides, statement summaries, opinions, indices, analyses, publications, questionnaires, answers to questionnaires, statistical records, ledgers, journals, lists, logs, tabulations, charts, graphs, maps, surveys, sound recordings, data sheets, computer printouts, tapes, discs, microfilm, and all other records kept, regardless of the title, author, or origin.

"PERSON" means individuals, entities, firms, organizations, groups, committees, regulatory agencies, governmental entities, business entities, corporations, partnerships, trusts, and estates.

"REFERS," "REFERRING TO," "REGARDS," REGARDING," "RELATES," "RELATING TO," "CONCERNS," "BEARS UPON," or "PERTAINS TO" mean containing, alluding to, responding to, commenting upon, discussing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, evidencing, setting forth, summarizing, or characterizing, either directly or indirectly, in whole or in part.

## Instructions

The time period of the requested records is June 28, 2021, through the present.

The words "and" and "or" shall be construed in the conjunctive or disjunctive, whichever is most inclusive.

The singular form shall include the plural form and vice versa.

The present tense shall include the past tense and vice versa.

In producing the records described above, you shall segregate them by reference to each of the numbered items of this FOIA request.

If you have any questions about this request, please contact Bryan Saddler by e-mail at bsaddler@empowr.us.

**Fee Waiver Request**

Empower Oversight agrees to pay up to $25.00 in applicable fees, but notes that it qualifies as a "news media requester"[6] and requests a waiver of any fees that may be associated with processing this request, in keeping with 5 U.S.C. § 552 (a)(4)(A)(iii).

Empower Oversight is a non-profit educational organization as defined under Section 501(c)(3) of the Internal Revenue Code, which helps insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and seeks to hold those authorities accountable to act on such reports by, among other means, publishing information concerning the same. Empower Oversight has no commercial interest in making this request.

Further, the information that Empower Oversight seeks is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the NIH. Specifically, the public has a significant interest in understanding how the NIH is addressing the SARS-CoV-2 pandemic and responding to information requests from members of Congress. Empower Oversight is committed to government accountability, public integrity, and transparency. In the latter regard, the information that that Empower Oversight receives that tends to explain the NIH's practices will be disclosed publicly via its website, and shared copies with other news media for public dissemination.[7]

**Request for Expedited Processing**

Although Empower Oversight fully expects the NIH to respond to this FOIA request within the 20 business days allotted by the FOIA, it requests expedited processing. Understanding how the NIH responds to FOIA requests can enlighten the public concerning why SARS-CoV-2 genetic sequences were removed from a United States' federal database when they could help researchers establish how the pandemic started. The request is of widespread and exceptional media interest and the information sought involves questions about research integrity that affect public confidence in the activities and operations of the NIH. Empower Oversight is engaged in disseminating information to the public through its website and working with media.[8] Accordingly, it is important that this request be processed and the results publicly disseminated as quickly as possible.

---

[6] As the Securities Exchange Commission recently conceded, with its issuances of 'press releases' describing its activities and findings, and its emails of research papers, FOIA updates, and news accounts of its activities to an address list more than 9,400 members of the press, Capitol Hill staff, and key thought leaders, Empower Oversight qualifies as a news media requester for purposes of fees assessed pursuant to the FOIA.

[7] "Mission," Empower Oversight (http://empowr.us/mission).

[8] "Mission," Empower Oversight (http://empowr.us/mission).

4

For ease of administration and to conserve resources, we ask that documents be produced in a readily accessible electronic format.  In the event our request for a fee waiver is denied or if you have any questions about this request, please contact us immediately.  Thank you for your prompt attention to this matter.

Cordially,

/S/

Jason Foster
Founder & President

# EXHIBIT C





**EMPOWR.us**

September 30, 2021

**VIA ELECTRONIC TRANSMISSION: NIHFOIA@MAIL.NIH.GOV**

National Institutes of Health
Building 31, Room 5B35
9000 Rockville Pike
Bethesda, MD 20892

RE: Record of NIH'S FOIA Log from March 2020 to Present

Dear FOIA Officer:

## Introduction

Empower Oversight Whistleblowers & Research ("Empower Oversight") is a nonpartisan, nonprofit educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing.  We work to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and seek to hold those authorities accountable to act on those reports by, among other means, publishing information concerning the same.

## Records Request

To shed light on the manner in which the National Institutes of Health ("NIH") administers its statutory obligations under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, we respectfully request a copy of the NIH's "log" of requests for records filed pursuant to the FOIA.

## Definitions

"LOG" means all registers, processing queues, spreadsheets, indexes, or other types of records that the NIH maintains or uses to administer and track the date of receipt, subject matter, requester, date of response, and status of all FOIA requests that NIH received from March 1, 2020, through the present.

"COMMUNICATION(S)" means every manner or method of disclosure, exchange of information, statement, or discussion between or among two or more persons, including but not limited to, face-to-face and telephone conversations, correspondence, memoranda, telegrams, telexes, email messages, voice-mail messages, text messages, meeting minutes, discussions, releases, statements, reports, publications, and any recordings or reproductions thereof.

"DOCUMENT(S)" or "RECORD(S)" mean any kind of written, graphic, or recorded matter, however produced or reproduced, of any kind or description, whether sent, received, or neither, including drafts, originals, non-identical copies, and information stored magnetically, electronically, photographically or otherwise. As used herein, the terms "DOCUMENT(S)" or "RECORD(S)" include, but are not limited to, studies, papers, books, accounts, letters, diagrams, pictures, drawings, photographs, correspondence, telegrams, cables, text messages, emails, memoranda, notes, notations, work papers, intra-office and inter-office communications, communications to, between and among employees, contracts, financial agreements, grants, proposals, transcripts, minutes, orders, reports, recordings, or other documentation of telephone or other conversations, interviews, affidavits, slides, statement summaries, opinions, indices, analyses, publications, questionnaires, answers to questionnaires, statistical records, ledgers, journals, lists, logs, tabulations, charts, graphs, maps, surveys, sound recordings, data sheets, computer printouts, tapes, discs, microfilm, and all other records kept, regardless of the title, author, or origin.

"PERSON" means individuals, entities, firms, organizations, groups, committees, regulatory agencies, governmental entities, business entities, corporations, partnerships, trusts, and estates.

"REFERS," "REFERRING TO," "REGARDS," REGARDING," "RELATES," "RELATING TO," "CONCERNS," "BEARS UPON," or "PERTAINS TO" mean containing, alluding to, responding to, commenting upon, discussing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, evidencing, setting forth, summarizing, or characterizing, either directly or indirectly, in whole or in part.

## Instructions

The time period of the requested records is March 1, 2020, through the present.

2

The words "and" and "or" shall be construed in the conjunctive or disjunctive, whichever is most inclusive.

The singular form shall include the plural form and vice versa.

The present tense shall include the past tense and vice versa.

In producing the records described above, you shall segregate them by reference to each of the numbered items of this FOIA request.

If you have any questions about this request, please contact Bryan Saddler by e-mail at bsaddler@empowr.us.

**Fee Waiver Request**

Empower Oversight agrees to pay up to $25.00 in applicable fees, but notes that it qualifies as a "news media requester"[1] and requests a waiver of any fees that may be associated with processing this request, in keeping with 5 U.S.C. § 552 (a)(4)(A)(iii).

Empower Oversight is a non-profit educational organization as defined under Section 501(c)(3) of the Internal Revenue Code, which helps insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and seeks to hold those authorities accountable to act on such reports by, among other means, publishing information concerning the same. Empower Oversight has no commercial interest in making this request.

Moreover, the information that Empower Oversight seeks is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the NIH. Specifically, the public has a significant interest in understanding how the NIH responds to FOIA requests. Empower Oversight is committed to government accountability, public integrity, and transparency. In the latter regard, the information that that Empower Oversight receives that tends to explain the NIH's FOIA practices will be disclosed publicly via its website, and shared copies with other news media for public dissemination.[2]

For ease of administration and to conserve resources, we ask that documents be produced in a readily accessible electronic format. In the event our request for a

---

[1] As the Securities Exchange Commission recently conceded, with its issuances of 'press releases' describing its activities and findings, and its emails of research papers, FOIA updates, and news accounts of its activities to an address list more than 9,400 members of the press, Capitol Hill staff, and key thought leaders, Empower Oversight qualifies as a news media requester for purposes of fees assessed pursuant to the FOIA.

[2] "Mission," Empower Oversight (http://empowr.us/mission).

fee waiver is denied or if you have any questions about this request, please contact us immediately.  Thank you for your prompt attention to this matter.

Cordially,

/S/

Jason Foster
Founder & President

JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

EMPOWER OVERSIGHT WHISTLEBLOWERS & RESEARCH

**(b)** County of Residence of First Listed Plaintiff   Arlington (VA)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Michael J. Schrier, Husch Blackwell LLP (202.378.2313)
750 17th St NW #900, Washington, DC 20006

**DEFENDANTS**

NATIONAL INSTITUTES OF HEALTH

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☒ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☒ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
5 U.S.C. 552

Brief description of cause:
Complaint for declaratory and injunctive relief for failure to timely respond to FOIA request and produce responsive records

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   11-17-2021

SIGNATURE OF ATTORNEY OF RECORD   /s/ Michael J. Schrier

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA             DIVISION

EMPOWER OVERSIGHT WHISTLEBLOWERS & RESEARCH

vs.                                    Civil Action No. 1:21-cv-01275

NATIONAL INSTITUTES OF HEALTH

## FINANCIAL INTEREST DISCLOSURE STATEMENT

Pursuant to Local Rule 7.1 of the Eastern District of Virginia and to enable Judges and
Magistrate Judges to evaluate possible disqualification or recusal, the undersigned counsel for

in the above captioned action, certifies that the following are parents, trusts, subsidiaries and/or
affiliates of said party that have issued shares or debt securities to the public or own more than
ten percent of the stock of the following:

Or

Pursuant to Local Rule 7.1 of the Eastern District of Virginia and to enable Judges and
Magistrate Judges to evaluate possible disqualification or recusal, the undersigned counsel for

in the above captioned action, certifies that the following are parties in the partnerships, general
or limited, or owners or members of non-publicly traded entities such as LLCs or other closely
held entities:

Or

Pursuant to Local Rule 7.1 of the Eastern District of Virginia and to enable Judges and
Magistrate Judges to evaluate possible disqualifications or recusal, the undersigned counsel for
Empower Oversight Whistleblowers & Research

in the above captioned action, certifies that there are no parents, trusts, subsidiaries and/or
affiliates of said party that have issued shares or debt securities to the public.

11-17-21                               /s/ Michael J. Schrier

Date                                   Signature of Attorney or Litigant
                                       Counsel for Plaintiff Empower Oversight
                                       Whistleblowers & Research

Rev. 03/12/19

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

### NOTICE

#### CONSENT TO TRIAL BY MAGISTRATE JUDGE

Pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c) you have the right to have your case conducted before a United States Magistrate Judge upon consent of all parties. In order to proceed before the Magistrate Judge, a consent form must be filed with the Clerk's Office. It may be filed jointly or separately. The consent form may be printed from the U.S. District Court website (listed below) or obtained from the Clerk's Office. Please refer to the previously mentioned rule for further information.

#### FINANCIAL INTEREST DISCLOSURE STATEMENT

Pursuant to Local Rule 7.1, a financial interest disclosure statement must be filed by a "nongovernmental corporation, partnership, trust, [or] other similar entity that is a party to, or that appears in, an action or proceeding in this Court." This statement should be filed with "the party's first appearance, pleading, petition, motion, response, or other request addressed to the Court. The financial interest disclosure statement may be printed from the U.S. District Court website (listed below) or obtained from the Clerk's Office. Please refer to the previously mentioned rule for further information.

#### ALEXANDRIA DIVISION SPECIFIC INFORMATION

Information regarding Alexandria Chambers Copy, Civil and Criminal Motions Procedures, and Other Division-Specific information can be found on the U.S. District Court website at:
http://www.vaed.uscourts.gov/ecf/documents/AlexandriaInformation-01-01-18_000.pdf

#### WEBSITE AND CLERK'S OFFICES ADDRESSES

The website address for the U.S. District Court for the Eastern District of Virginia is www.vaed.uscourts.gov. If you do not have access to a computer, contact one of the Clerk's Offices listed below to obtain either of these forms:

Albert V. Bryan United States Courthouse
401 Courthouse Square
Alexandria, VA 22314
(703) 299-2101

Walter E. Hoffman United States Courthouse
600 Granby Street
Norfolk, VA 23510
(757) 222-7201

Spotswood W. Robinson, III
and Robert R. Merhige, Jr. Federal Courthouse
701 East Broad Street
Suite 3000
Richmond, VA 23219
(804) 916-2220

U.S Federal Courthouse
2400 West Avenue
Newport News, VA 23607
(757) 247-0784

# Attachment D

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EMPOWER OVERSIGHT            )
WHISTLEBLOWERS & RESEARCH,   )
601 King Street, Suite 200   )
Alexandria, VA 22314-3151    )
                             )
            Plaintiff,       )
                             )        Case No. _____
v.                           )
                             )
NATIONAL INSTITUTES OF HEALTH,  )
9000 Rockville Pike          )
Bethesda, MD 20892           )
                             )
            Defendant.       )

**FIRST AMENDED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      Plaintiff Empower Oversight Whistleblowers & Research (hereinafter "Empower

Oversight") brings this action against Defendant National Institutes of Health ("NIH") to compel

compliance with the Freedom of Information Act, 5 U.S.C. § 552 ( "FOIA"), including obtaining

access to records maintained by the NIH.

2.      The records at issue, including but not limited to communications to and from NIH,

relate to SARS-CoV-2 sequences submitted by a Chinese researcher for posting to the Sequence

Read Archive ("SRA") in March 2020 and subsequently withdrawn by the NIH upon the

researcher's request to SRA staff in June 2020.  *See infra* ¶¶ 4-7.

3.      On June 18, 2021, Dr. Jesse D. Bloom of the Fred Hutchen Cancer Research Center

published an article titled "Recovery of deleted deep sequencing data sheds more light on the early

Wuhan SARS-CoV-2 epidemic."  Jesse Bloom, *Recovery of deleted deep sequencing data sheds*

1

*more light on the early Wuhan SARS-CoV-2 epidemic*, bioRxiv (June 18, 2021), https://www.biorxiv.org/content/10.1101/2021.06.18.449051v1.full.pdf.

4.     Dr. Bloom explained that in reviewing a March 2020 Wuhan University-associated study containing a spreadsheet with information on 241 genetic sequences from the SRA, his own searches for these sequences indicated that they were deleted from the SRA.  *See id*.  Nevertheless, he was able to recover certain deleted files from Google Cloud and reconstruct partial sequences of 13 early viruses.  *See id*.

5.     Dr. Bloom reasoned that "[t]he fact that such an informative data set was deleted has implications beyond those gleaned directly from the recovered sequences," and that it "therefore seems likely the sequences were deleted to obscure their existence."  *Id*. at 7.

6.     A June 23, 2021 New York Times article, among numerous others, heightened the national focus on Dr. Bloom's conclusions, reporting that he provided "intriguing new information for discerning when and how the virus may have spilled over from a bat or another animal into humans" and that it "raise[s] questions about why original sequences were deleted."  *See* Carl Zimmer, *Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted*, N.Y.T. (June 23, 2021) (updated July 22, 2021), *available at* https://www.nytimes.com/2021/06/23/science/coronavirus-sequences.html.

7.     The New York Times article revealed that, in fact, more than 200 data entries from the genetic sequencing of early COVID-19 cases disappeared from an online scientific database in the summer of 2020.  *See id*.  The article included confirmation by the National Library of Medicine within the NIH, which manages the SRA, that these sequences were "submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020."  *See id*.

8.      However, deletions from the SRA are reportedly rare.  From March 2020 to March 2021, the SRA repeatedly received approximately 2.4 million submissions of sequence data, according to the NCBI spokeswoman.  However, a *mere 0.19%* were withdrawn.  *See* Amy Dockser Marcus & Drew Hinshaw, *After Covid-19 Data Is Deleted, NIH Reviews How Its Gene Archive Is Handled*, WALL ST. J. (Sept. 13, 2021), *available at* https://www.wsj.com/articles/after-covid-19-data-is-deleted-nih-reviews-how-its-gene-archive-is-handled-11631545490.

9.      On June 28, 2021, Senators Grassley, Blackburn, and Marshall sent the NIH a letter seeking records and responses to questions regarding the removal of the sequences from the SRA. Letter from Sen. Grassley et al. to Francis S. Collins, June 28, 2021.  The same Senators sent a follow-up letter on September 16, 2021, reiterating their requests.  Letter from Sen. Grassley et al. to Francis S. Collins, Sept. 16, 2021.

10.      According to the Centers for Disease Control and Prevention ("CDC"), as of November 6, 2021, nearly 923,000 deaths—and counting—have been attributed to COVID-19 in the United States alone.  *See COVID-19 Mortality Overview*, CDC (last accessed Feb. 22, 2022), *available at* https://www.cdc.gov/nchs/covid19/mortality-overview.htm.  Yet, upon information and belief, there is no global consensus on the origin of the COVID-19 pandemic.

11.      The public thus has a significant interest in understanding the reason why these early sequences were removed from the SRA.  In recognizing this significant interest, Empower Oversight filed the three FOIA Requests described herein.

12.      Only after Empower Oversight filed its Complaint did the NIH begin to produce records as to any of the three FOIA Requests.

13.      As detailed herein, NIH's unlawfully-delayed productions are insufficient and fall short of what FOIA commands.  In particular, NIH has failed to conduct a search reasonably

calculated to locate responsive materials and has withheld non-exempt portions of responsive documents.

14. Thus, despite six months passing since its first production was due, the NIH still flouts the minimal transparency required under federal law. Empower Oversight has amended its Complaint accordingly.

## JURISDICTION AND VENUE

15. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

16. Venue is proper in this district and division pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## PARTIES

17. Plaintiff Empower Oversight is a nonprofit, nonpartisan educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing. Empower Oversight has its principal place of business located at 601 King Street, Suite 200, Alexandria, VA 22314-3151. Empower Oversight works to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, as well as work to hold authorities accountable to act on such reports.

18. Defendant NIH is an agency within the U.S. Department of Health and Human Services, and a federal administrative agency within the meaning of 5 U.S.C. § 552(f)(1), with its principal place of business located at 9000 Rockville Pike, Bethesda, MD 20892. Upon information and belief, the NIH has possession, custody, and control of the records, within the meaning of 5 U.S.C. § 552(f)(2), to which Empower Oversight seeks access.

## **LEGAL STANDARD**

19.    FOIA requires a federal administrative agency to promptly make available requested, non-exempt agency records in response to a request that (a) reasonably describes such records and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A); *see also* 45 C.F.R. § 5.22.

20.    FOIA requires an agency to make reasonable efforts to search for records reasonably calculated to locate all records responsive to a FOIA request.  *See* 5 U.S.C. § 552(a)(3)(C).

21.    An agency may withhold responsive records only to the extent such records fall within nine discrete categories of exemptions.  *See* 5 U.S.C. § 552(b); *see also* 45 C.F.R. § 5.61. FOIA requires an agency to respond to a valid request within twenty (20) days (exempting Saturdays, Sundays, and legal public holidays) (hereinafter "working days") upon receipt of such request, including notifying the requester immediately of its determination, the reasons therefor, and the right to appeal any adverse determination.  5 U.S.C. § 552(a)(6)(A)(i); *see also* 45 C.F.R. §§ 5.24, 5.28.

22.    In certain circumstances, an agency may instead provide notice to the requester that "unusual circumstances" merit additional time—up to an additional ten (10) working days—to respond to the request.   5 U.S.C. § 552(a)(4)(viii)(II)(aa); *see also* 45 C.F.R. § 5.24(f).  In the event the agency provides notice to the requester of "unusual circumstances," and that it is not able to respond to the records request within the statutory deadline, the agency must provide the requester "an opportunity to arrange with the agency an alternative time frame for processing the request."  5 U.S.C. § 552(a)(6)(B)(ii); 45 C.F.R. § 5.24(f).

23.     If an agency does not respond to a FOIA request and process responsive records by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review.  5 U.S.C. § 552(a)(6)(C)(i).

### FACTS

24.     On July 14, 2021, Empower Oversight submitted a FOIA request to the NIH, *see* Exhibit ("Ex.") A, seeking access to the following:

   a.  All communications regarding the request to post the SARs-CoV-2 sequences to the Sequence Read Archive in March 2020.  This request covers all communications between March 1, 2020 to March 31, 2020.

   b.  All communications regarding the request to withdraw the SARS-CoV-2 sequences from Sequence Read Archive in June 2020.  This request covers all communications between June 1, 2020 to June 31, 2020.

   c.  All communications regarding these withdrawn sequences as reported by a preprint titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred Hutchinson Cancer Research Center.  This request covers all communications between Jesse Bloom and the NIH, from January 1, 2021 and the present.  This request covers all communications inside the NIH regarding the preprint from June 21, 2021 to the present.

   d.  All communications to, from, and within the NIH press office about the NIH statement released on June 23, 2021, and about reports that these sequences were removed from the Sequence Read Archive.  This includes all emails related to the drafting of the statement, communications about the reported removal, and communications with reporters.  This request covers all communications between June 21, 2021 to June 25, 2021.

25.     On September 30, 2021, Plaintiff submitted two additional FOIA Requests to the NIH.  In one September 30, 2021 Request, *see* Ex. B, Plaintiff sought access to and copies of:

   a.  All communications regarding the letter by Senators Grassley and Blackburn dated June 28, 2021.

   b.  All communications regarding the NIH's response to Senators Grassley and Blackburn dated September 8, 2021.

6

      c.   All communications regarding the letter by Senators Grassley and Blackburn dated September 16, 2021.

26.     On October 14, 2021, the NIH acknowledged by email that it received this Request, assigning it as No. 57199.

27.     In the other September 30, 2021 Request, *see* Ex. C, Plaintiff requested a copy of the NIH's "log" of requests for records filed pursuant to the FOIA.

28.     Before filing the instant lawsuit against NIH, Empower Oversight did not receive any correspondence from Defendant concerning either its July 14, 2021 or second of the two September 30, 2021 FOIA Requests, despite applicable regulations prescribing that the NIH, at a minimum, is required to acknowledge receipt of all FOIA requests in writing within 10 working days. *See* 45 C.F.R. § 5.24; *see also* 45 C.F.R. § 5.4 (explaining that all operating divisions ("OpDivs") of HHS are subject to the requirements in that regulation); 45 C.F.R. § 5.3 (defining NIH as an OpDiv of HHS).

29.     Therefore, Empower Oversight was resigned to verify NIH's receipt of these two Requests by viewing NIH's online FOIA portal, which suggested proof of receipt as follows:

      a.   A Request No. 56712 as having been filed by Empower Oversight on July 15, 2021. The "Description" of Request No. 56712 matches the four enumerated items on Empower Oversight's July 14, 2021 Request, and the details of Request No. 56712 include an embedded link to a copy of Empower Oversight's request. Therefore, upon information and belief, the responsible FOIA officer "received" that July 14, 2021 Request on or before July 15, 2021.

      b.   A Request No. 57151 as having been filed by Empower Oversight on October 7, 2021. The "Description" of Request No. 57151 matches the substance of one of Empower Oversight's September 30, 2021 Requests, and the details of Request No.

7

57151 include an embedded link to a copy of Empower Oversight's request. Therefore, upon information and belief, the responsible FOIA officer "received" that September 30, 2021 Request on or before October 7, 2021.

30. As of November 17, 2021, the NIH had not provided a determination as to Request Nos. 56712, 57151, or 57199, despite the requirement of 5 U.S.C. § 552(a)(6)(A) that an agency respond within twenty (20) working days, including by providing detail on the scope of the records the agency intends to produce or withhold, the reasons for making that determination, and an explanation of the process by which a requester can administratively appeal that determination.

31. Accordingly, on November 17, 2021, Empower Oversight filed the instant action against NIH for failure to comply with statutory deadlines, in violation of FOIA, 5 U.S.C. § 552(a)(6), and for unlawful withholding of agency records, in violation of FOIA, 5 U.S.C. § 552(a)(3). *See* Dkt. 1.

32. On December 17, 2021, and as revised on December 23, 2021, NIH provided a final determination letter as to Request No. 57151, corresponding to Empower Oversight's second of two September 20, 2021 Requests. *See* Ex. D.

33. In its December 23, 2021 letter, NIH explicitly confirmed to Empower Oversight for the first time that it received Request No. 57151 on October 7, 2021.

34. Therefore, by affirming on December 23, 2021 that it received Request No. 57151 on October 7, 2021, NIH openly acknowledged—with no explanation— that it unlawfully delayed its response to the Request. *See* 5 U.S.C. § 552(a)(6)(A)(i); *see also* 45 C.F.R. §§ 5.24, 5.28 (requiring a response within 20 working days).

35. Along with the December 23, 2021 letter, NIH attached 130 pages of responsive records in the form of fiscal year ("FY") 2020 and FY 2021 FOIA Logs.

36.     On February 7, 2022, NIH provided a final determination as to Requests 56712 and 57203 (renumbering request "57199"),[1] corresponding to Empower Oversight's July 14, 2021 Request and its September 30, 2021 Request, respectively.  *See* Ex. E.

37.     In the February 7, 2022 letter, NIH explicitly confirmed to Empower Oversight for the first time that it received Request No. 56712 on July 15, 2021 and Request No. 57203 on October 12, 2021.

38.     Therefore, by affirming on February 7, 2022 that it received the Requests on July 15, 2021 and October 12, 2021, respectively, NIH openly acknowledged—with no explanation—that it unlawfully delayed its response to both Requests.

39.     Also in the February 7, 2022 letter, NIH stated that it processed 255 pages of responsive records.  In addition, NIH asserted it was withholding redacted information within those 255 pages pursuant to FOIA exemptions (b)(5) and (b)(6).  *See id*.; *see also* 5 U.S.C. § 552(b)(5)-(6); 45 C.F.R. § 5.31(e)-(f).

40.     On February 24, 2022, Empower Oversight transmitted two administrative appeal letters in response to the NIH's production corresponding to Request Nos. 56712 and 57203 (hereinafter the "Administrative Appeals").  *See* Ex. F (corresponding to Request No. 56712); Ex. G (corresponding to Request No. 57203).

41.     As its Administrative Appeals reflect, NIH's respective productions remain in violation of FOIA for three main reasons.  First, the NIH did not perform a search for records that was reasonably calculated to find all responsive records.  *See id*.  Second, NIH's own production appears to show that NIH claimed FOIA Exemption (b)(5) for records that were not both pre-

---

[1] It is unclear why Request No. 57199, as designated previously on FOIA's Portal, was renumbered as Request No. 57203.  However, both numbers (referred to as "57203" going forward) reflects Empower Oversight's September 30, 2021 Request.

decisional and deliberative.  *See id.*  Third, NIH claimed FOIA Exemption (b)(6) for records that did not reflect legitimate personal privacy interests.  *See* Ex. F.

42.     To date, the NIH has not responded to the Administrative Appeals.

43.     Empower Oversight has been required to expend resources to prosecute this action.

## CLAIMS FOR RELIEF

### Count I
### Failure to Comply with Statutory Deadlines
### in Violation of FOIA, 5 U.S.C. § 552(a)(6)

44.     Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1-43, as if fully set forth herein.

45.     More than 20 working days passed since each of the Three Requests were received by the NIH.  *See supra* ¶¶ 26, 29, 33, 37.

46.     FOIA requires Defendant to have provided a final determination within 20 working days of each of the Three Requests.  Defendant may extend this 20-day period in the event of "unusual circumstances," as defined by 5 U.S.C. § 552(a)(6)(B)(iii), for a maximum of 10 working days, but must provide Empower Oversight with notice to do so.  *See* 5 U.S.C. §§ 552(a)(4)(A)(viii)(II)(aa), 552(a)(6)(B)(ii).

47.     Defendant did not provide a final determination within 20 working days of each of the Three Requests, nor did it contact Empower Oversight with a claim that unusual circumstances exist as to any of the Three Requests.

48.     The NIH thus failed to timely make a determination on all Three Requests, in violation of FOIA.  *See* 5 U.S.C. § 552(a)(6).

49.     Empower Oversight constructively exhausted all administrative remedies required by FOIA as to each of the Three Requests.  *See* 5 U.S.C. § 552(a)(6)(C)(i).

10

**Count II**
**Failure to Conduct a Search Reasonably Calculated to Locate All Responsive Records,**
**in Violation of FOIA, 5 U.S.C. § 552(a)(6)**

50.    Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1-49, as if fully set forth herein.

51.    FOIA requires Defendant to process records requests and promptly provide the requested records or the reasonably segregable portion of records not subject to a FOIA exemption. 5 U.S.C. § 552(a)(3)(B).

52.    However, upon information and belief, Defendant has not provided Empower Oversight all responsive, non-exempt documents in response to Requests No. 56712 and 57203.

53.    In compiling a response to a FOIA Request, an agency cannot ignore a responsive document that clearly indicates the existence of other relevant documents. However, the NIH appears to have done precisely that.

54.    For example, the NIH produced a July 26, 2021 email, which states in relevant part, "I'm also attaching the last set of QA (which we already sent to you last week)."  *See* Ex. F at 7. That email then forwards the "last" set of questions and answers, which is responsive to Request No. 56712.  *See id*.  However, the earlier set(s) preceding this "last" set was not produced.  Upon information and belief, the earlier set(s) would been equally responsive.

55.    As another example, the NIH produced an August 11, 2021 email from NIH to Dr. Jesse Bloom, which begins: "Thank you for your reply."  *See id*. at 6-7.  However, the prior correspondence to which NIH replied is not included within the NIH's production.   Upon information and belief, the earlier set(s) would been equally responsive.

11

56.     By timely filing its Administrative Appeals in response to Defendant's inadequate search, Empower Oversight has thus constructively exhausted all administrative remedies required by FOIA as to Requests No. 56712 and 57203.  *See* 5 U.S.C. § 552(a)(6)(C)(i).

57.     The NIH's failure to conduct a search reasonably calculated to locate all responsive records—as clearly referenced in its own limited production—is in violation of FOIA.  5 U.S.C. § 552(a)(3)(B).

**Count III**
**Unlawful Withholding of Non-Exempt Agency Records**
**in Violation of FOIA, 5 U.S.C. § 552(a)(3)**

58.     Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1-57, as if fully set forth herein.

59.     FOIA requires Defendant to process records requests and promptly provide the requested records or the reasonably segregable portion of records not subject to a FOIA exemption. 5 U.S.C. § 552(a)(3)(B).

60.     However, as reflected in its pending Administrative Appeals concerning Requests No. 56712 and 57203, Defendant has redacted responsive records that are neither both pre-decisional and deliberative, and thus entitled to a (b)(5) FOIA exemption.  *See* Exs. F-G; *see also* 5 U.S.C. 552(b)(5).

61.     In addition, as reflected in its pending Administrative Appeal concerning Request No. 56712, Defendant has withheld responsive records, the disclosure of which would not constitute a clearly unwarranted invasion of personal privacy, and thus entitled to a (b)(6) FOIA Exemption.  *See* Ex. F; *see also* 5 U.S.C. 552(b)(6).

62.     In addition, Defendant has withheld other responsive records entirely in accordance with its failure to conduct a reasonable search for records.  *See supra* ¶¶ 47-49; *see also* Exs. F-G.

63.     Therefore, the NIH's acts and omissions to unlawfully withhold responsive records and to improperly invoke Exemption (b)(5) and (b)(6) to redact and/or withhold entire documents is in violation of FOIA.  5 U.S.C. § 552(a)(3)(B).

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff prays that this Court:

A.      Declare that NIH failed to make timely determinations on each of Empower Oversight's Three Requests, in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

B.      Declare that NIH failed to conduct a reasonable and adequate search as to each of Requests No. 56712 and 57203, in violation of FOIA, 5 U.S.C. § 552(a)(3)(C);

C.      Declare that NIH failed to promptly provide records responsive to each of Empower Oversight's Three Requests, in violation of FOIA, 5 U.S.C. § 552(a)(3);

D.      Declare that in responding to Requests No. 56712 and 57203, NIH improperly invoked FOIA Exemption (b)(5) to redact information from produced documents and/or withhold production of otherwise responsive documents;

E.      Declare that in responding to Request No. 56712, NIH improperly invoked FOIA Exemption (b)(6) to redact information from produced documents and/or withhold production of otherwise responsive documents;

F.      Order NIH to immediately conduct a reasonable search for all responsive records, as required by FOIA, 5 U.S.C. § 552(a)(3)(C);

G.      Order NIH to promptly disclose to Empower Oversight all responsive, non-exempt records, as required by FOIA, 5 U.S.C. § 552(a)(3);

H.      Order NIH to properly limit its use of FOIA Exemptions (b)(5) and (b)(6) and provide appropriately unredacted documents;

I.      Award Empower Oversight its costs and reasonable attorneys' fees incurred in this

        action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

J.      Grant such other relief as the Court may deem just and proper.

February 25, 2022                              Respectfully submitted,

                                               /s/ Michael J. Schrier
                                               Michael J. Schrier (VSB #65916)
                                               HUSCH BLACKWELL LLP
                                               750 17th Street, NW, Suite 900
                                               Washington, DC 20006-4675
                                               Tel. 202-378-2313
                                               Fax 202-378-2319
                                               michael.schrier@huschblackwell.com

                                               Scott L. Glabe
                                               HUSCH BLACKWELL  LLP
                                               750 17th Street, NW, Suite 900
                                               Washington, DC 20006-4675
                                               Tel. 202-378-2396
                                               Fax 202-378-2319
                                               scott.glabe@huschblackwell.com

                                               *Attorneys for Plaintiff Empower Oversight*
                                               *Whistleblowers & Research*

# Attachment E



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

National Institutes of Health
Freedom of Information Office
Building 31, Room 5B-35
31 Center Drive, MSC 2107
Bethesda, Maryland 20892-2107
phone: (301) 496-5633
fax: (301) 402-4541

Via Email: info@empowr.us

February 7, 2022

Jason Foster
Founder & President
Empower Oversight
2615 Columbia Pike, #445
Arlington, VA 22204

Re: NIH FOIA Case No.: 56712 & 57203; Empower Oversight Whistleblowers & Research v.
NIH, Case No. 21-cv-01275

Dear Mr. Foster:

This is the final response to the Freedom of Information Act (FOIA) request that is the subject of
the complaint filed in *Empower Oversight Whistleblowers & Research v. NIH*, Case No. 21-cv-
01275, now pending in the U.S. District Court for Virginia. Your FOIA request 56712, dated
July 15, 2021, was received by the National Institutes of Health (NIH) FOIA Office, on the same
day. Your FOIA request 57203, dated October 12, 2021, was received by the National Institutes
of Health (NIH) FOIA Office, on the same day.

FOIA request 56712 requested:
     1)All communications regarding the request to post the SARS-CoV-2 sequences to the
     Sequence Read Archive in March 2020. This request covers all communications between
     March 1, 2020 to March 31, 2020.
     2)All communications regarding the request to withdraw the SARS-CoV-2 sequences
     from Sequence Read Archive in June 2020. This request covers all communications
     between June 1, 2020 to June 31, 2020.
     3)All communications regarding these withdrawn sequences as reported by a preprint
     titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan
     SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred Hutchinson Cancer
     Research Center.  This request covers all communications between Jesse Bloom and the
     NIH, from January 1, 2021 and the present. This request all covers all communications
     inside the NIH regarding the preprint from June 21, 2021 to the present.
     4)All communications to, from, and within the NIH press office about the NIH statement
     released on June 23, 2021, and about reports that these sequences were removed from the
     Sequence Read Archive. This includes all emails related to the drafting of the statement,
     communications about the reported removal, and communications with reporters. This
     request covers all communications between June 21, 2021 to June 25, 2021.

FOIA Request 57203 requested:

Page 2 –  Mr. Foster (56712 & 57203; Empower. v. NIH, 21-cv-01275)

      1) All communications regarding the letter by Senators Grassley and Blackburn dated June 28, 2021.
      2) All communications regarding the NIH's response to Senators Grassley and Blackburn dated September 8, 2021. 3) All communications regarding the letter by Senators Grassley and Blackburn dated September 16, 2021.

 In accordance with the Court's order dated November 17, 2021, we have processed 255 pages of responsive records for this litigation. The information being withheld is protected from release pursuant to Exemptions (b)(5) and (b)(6) of the FOIA, 5 U.S.C. § 552 (b)(5) and (b)(6); and sections 5.31 (e) and (f) of the HHS FOIA Regulations, 45 CFR Part 5. Exemption 5 permits the withholding of internal government records which are pre-decisional and contain staff advice, opinion, and recommendations. This exemption is intended to preserve free and candid internal dialogue leading to decision-making. Exemption 6 permits the withholding of privacy information, the release of which would constitute a clearly unwarranted invasion of personal privacy.

Please direct any questions regarding this response to Meghan Loftus of the Department of Justice, who can be reached at meghan.loftus@usdoj.gov.

Sincerely,

Karen E.
Lampe -S

Digitally signed by
Karen E. Lampe -S
Date: 2022.02.07
14:22:16 -06'00'

*for* Gorka Garcia-Malene
Freedom of Information Act Officer, NIH

# Attachment F





EMPOWR.us

September 30, 2021

VIA ELECTRONIC TRANSMISSION: NIHFOIA@MAIL.NIH.GOV

National Institutes of Health
Building 31, Room 5B35
9000 Rockville Pike
Bethesda, MD 20892

RE: Records Regarding NIH'S SARS-COV-2 Database

Dear FOIA Officer:

### Introduction

Empower Oversight Whistleblowers & Research ("Empower Oversight") is a nonpartisan, nonprofit educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing.  We work to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and seek to hold those authorities accountable to act on those reports by, among other means, publishing information concerning the same.

### Background

*The New York Times* and *The Washington Post*, among others, have reported on requests by Chinese researchers to have certain SARS-CoV-2 genetic sequences withdrawn from the National Institutes of Health's ("NIH") Sequence Read Archive.[1] Genetic sequences for SARS-CoV-2 virus are critical to understanding how the pandemic (which has killed more than 670,000 Americans) started, and

---

[1] "Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted," New York Times (Jun 23, 2021); "Seattle scientist digs up deleted coronavirus genetic data, adding fuel to the covid origin debate," Washington Post (Jun 23, 2021).

understanding the origin of the pandemic is essential to furthering the prevention of future pandemics.[2]  Additionally, the State Department has noted that China has not been transparent in its handling of the question of the origin of SARS-CoV-2 and, as part of its hindrance of efforts to gain an understanding of the virus, has removed genetic sequences from its own online databases.[3]

On June 28, 2021, Senators Charles Grassley and Marsha Blackburn sent the NIH a letter seeking records and answers to seven questions regarding the removal of the SARS-CoV-2 genetic sequences from the Sequence Read Archive.  They received a response to their inquiry on September 8, 2021, that they state "failed to fully and completely answer all seven questions and failed to provide the requested records."[4] Senators Grassley and Blackburn then sent a follow up letter on September 16, 2021, demanding answers to their previous questions.[5]

## Records Request

To shed light on the manner in which the NIH is addressing the SARS-CoV-2 pandemic and responding to information requests from members of Congress, we respectfully request, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, copies of:

1. All communications regarding the letter by Senators Grassley and Blackburn dated June 28, 2021.
2. All communications regarding the NIH's response to Senators Grassley and Blackburn dated September 8, 2021.
3. All communications regarding the letter by Senators Grassley and Blackburn dated September 16, 2021.

## Definitions

"COMMUNICATION(S)" means every manner or method of disclosure, exchange of information, statement, or discussion between or among two or more persons, including but not limited to, face-to-face and telephone conversations, correspondence, memoranda, telegrams, telexes, email messages, voice-mail messages, text messages, meeting minutes, discussions, releases, statements, reports, publications, and any recordings or reproductions thereof.

"DOCUMENT(S)" or "RECORD(S)" mean any kind of written, graphic, or recorded matter, however produced or reproduced, of any kind or description,

---

[2] "COVID Mortality Data," Johns Hopkins University (https://coronavirus.jhu.edu/data/mortality)
[3] "Fact Sheet on Activity at the Wuhan Institute of Virology," U.S. State Dep't (https://2017-2021.state.gov/fact- sheet-activity-at-the-wuhan-institute-of-virology/index.html)
[4] https://www.grassley.senate.gov/news/news-releases/did-nih-improperly-delete-covid-19-data-at-request-of-chinese-researchers-senators-want-answers
[5] https://www.grassley.senate.gov/news/news-releases/did-nih-improperly-delete-covid-19-data-at-request-of-chinese-researchers-senators-want-answers

whether sent, received, or neither, including drafts, originals, non-identical copies, and information stored magnetically, electronically, photographically or otherwise. As used herein, the terms "DOCUMENT(S)" or "RECORD(S)" include, but are not limited to, studies, papers, books, accounts, letters, diagrams, pictures, drawings, photographs, correspondence, telegrams, cables, text messages, emails, memoranda, notes, notations, work papers, intra-office and inter-office communications, communications to, between and among employees, contracts, financial agreements, grants, proposals, transcripts, minutes, orders, reports, recordings, or other documentation of telephone or other conversations, interviews, affidavits, slides, statement summaries, opinions, indices, analyses, publications, questionnaires, answers to questionnaires, statistical records, ledgers, journals, lists, logs, tabulations, charts, graphs, maps, surveys, sound recordings, data sheets, computer printouts, tapes, discs, microfilm, and all other records kept, regardless of the title, author, or origin.

"PERSON" means individuals, entities, firms, organizations, groups, committees, regulatory agencies, governmental entities, business entities, corporations, partnerships, trusts, and estates.

"REFERS," "REFERRING TO," "REGARDS," REGARDING," "RELATES," "RELATING TO," "CONCERNS," "BEARS UPON," or "PERTAINS TO" mean containing, alluding to, responding to, commenting upon, discussing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, evidencing, setting forth, summarizing, or characterizing, either directly or indirectly, in whole or in part.

## Instructions

The time period of the requested records is June 28, 2021, through the present.

The words "and" and "or" shall be construed in the conjunctive or disjunctive, whichever is most inclusive.

The singular form shall include the plural form and vice versa.

The present tense shall include the past tense and vice versa.

In producing the records described above, you shall segregate them by reference to each of the numbered items of this FOIA request.

If you have any questions about this request, please contact Bryan Saddler by e-mail at bsaddler@empowr.us.

## Fee Waiver Request

Empower Oversight agrees to pay up to $25.00 in applicable fees, but notes that it qualifies as a "news media requester"[6] and requests a waiver of any fees that may be associated with processing this request, in keeping with 5 U.S.C. § 552 (a)(4)(A)(iii).

Empower Oversight is a non-profit educational organization as defined under Section 501(c)(3) of the Internal Revenue Code, which helps insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and seeks to hold those authorities accountable to act on such reports by, among other means, publishing information concerning the same. Empower Oversight has no commercial interest in making this request.

Further, the information that Empower Oversight seeks is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the NIH. Specifically, the public has a significant interest in understanding how the NIH is addressing the SARS-CoV-2 pandemic and responding to information requests from members of Congress. Empower Oversight is committed to government accountability, public integrity, and transparency. In the latter regard, the information that that Empower Oversight receives that tends to explain the NIH's practices will be disclosed publicly via its website, and shared copies with other news media for public dissemination.[7]

## Request for Expedited Processing

Although Empower Oversight fully expects the NIH to respond to this FOIA request within the 20 business days allotted by the FOIA, it requests expedited processing. Understanding how the NIH responds to FOIA requests can enlighten the public concerning why SARS-CoV-2 genetic sequences were removed from a United States' federal database when they could help researchers establish how the pandemic started. The request is of widespread and exceptional media interest and the information sought involves questions about research integrity that affect public confidence in the activities and operations of the NIH. Empower Oversight is engaged in disseminating information to the public through its website and working with media.[8] Accordingly, it is important that this request be processed and the results publicly disseminated as quickly as possible.

---

[6] As the Securities Exchange Commission recently conceded, with its issuances of 'press releases' describing its activities and findings, and its emails of research papers, FOIA updates, and news accounts of its activities to an address list more than 9,400 members of the press, Capitol Hill staff, and key thought leaders, Empower Oversight qualifies as a news media requester for purposes of fees assessed pursuant to the FOIA.

[7] "Mission," Empower Oversight (http://empowr.us/mission).

[8] "Mission," Empower Oversight (http://empowr.us/mission).

For ease of administration and to conserve resources, we ask that documents be produced in a readily accessible electronic format.  In the event our request for a fee waiver is denied or if you have any questions about this request, please contact us immediately.  Thank you for your prompt attention to this matter.

Cordially,

/S/

Jason Foster
Founder & President

# Attachment G-1

**From:** Bryan Saddler <bsaddler@empowr.us>
**Sent:** Thursday, February 24, 2022 12:50 PM
**To:** Garcia-Malene, Gorka (NIH/OD) [E] <gorka.garcia-malene@nih.gov>
**Cc:** Jason Foster <jf@empowr.us>
**Subject:** [EXTERNAL] Appeal of FOIA Request Number 56712

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are confident the content is safe.

Dear Mr. Garcia-Malene:  Attached is a letter appealing the NIH's February 7, 2022, response to Empower Oversight's July 14, 2021, FOIA request, which the NIH designated as FOIA Request Number 56712.

Referencing the litigation pending in connection with the FOIA request, the NIH's February 7th letter does not advise Empower Oversight how to appeal.  I note, however, that the HHS has a web-portal established to accept appeals of the NIH's FOIA responses.   But, in light of the litigation and the risk of the matter getting lost in the HHS's processes, I thought that it would be more efficient to forward the appeal to your attention and request your advice concerning the effectuation of service.  Please advise me if I need to send a copy of the appeal to the HHS's web-portal, if your office is unable or unwilling to accept the appeal.

Cordially, Bryan Saddler

# Attachment G

# EMPOWER OVERSIGHT
### W h i s t l e b l o w e r s   &   R e s e a r c h



**EMPOWR.us**

February 24, 2022

**VIA ELECTRONIC TRANSMISSION:** gorka.garcia-malene@nih.gov

Gorka Garcia-Malene,
    NIH Freedom of Information Institute/Center Coordinator
    Office of the Director
Building 31 Room 5B35
9000 Rockville Pike
Bethesda, MD 20892

**VIA ELECTRONIC TRANSMISSION:** meghan.loftus@usdoj.gov

Meghan Loftus
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314

**RE:    FREEDOM OF INFORMATION ACT APPEAL**
            FOIA REQUEST NUMBER 56712

Dear Mr. Garcia-Malene:

## INTRODUCTION

With respect to the National Institutes of Health's ("SEC") Freedom of Information Act ("FOIA")[1] Request Number 56712, Empower Oversight Whistleblowers & Research ("Empower

---

[1] The FOIA is codified at 5 U.S.C. § 552.

Oversight")[2] appeals the NIH's February 7, 2022, initial determination on the grounds that NIH's FOIA staff:

- Did not perform a search for records that was reasonably calculated to find all responsive records;

- Claimed FOIA Exemption b(5)—specifically for the deliberative process privilege—for records that were not both pre-decisional and deliberative; and

- Claimed FOIA Exemption b(6) for records that do not invoke a legitimate personal privacy interest.

Accordingly, Empower Oversight respectfully requests that the NIH review the nature and scope of its FOIA staff's records search and review, correct any deficiencies that are identified, and apprise Empower Oversight of the results of such review.

## BACKGROUND

1. Empower Oversight's July 14, 2021, FOIA Request

On July 14, 2021, Empower Oversight filed with the NIH a request for records under the FOIA.[3]  Empower Oversight's July 14th FOIA request seeks:

1) All communications regarding the request to post the SARS-CoV-2 [genetic] sequences to the Sequence Read Archive in March 2020.  This request covers all communications between March 1, 2020 to March 31, 2020.

2) All communications regarding the request to withdraw the SARS-CoV-2 sequences from Sequence Read Archive in June 2020.  This request covers all communications between June 1, 2020 to June 31, 2020.

3) All communications regarding these withdrawn sequences as reported by a preprint titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred Hutchinson Cancer Research Center.  This request covers all communications between Jesse Bloom and the NIH, from January 1, 2021 and the present.  This request all covers all communications inside the NIH regarding the preprint from June 21, 2021 to the present.

---

[2] Empower Oversight is a nonpartisan, nonprofit educational organization, which is dedicated to enhancing independent oversight of government and corporate wrongdoing.  It works to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and seeks to hold those authorities accountable to act on such reports by, among other means, publishing information concerning the same.

[3] In compliance with the NIH's procedures, which require all requesters to submit their FOIA requests "through [the NIH's] online portal . . . rather than mail, fax, or courier," Empower Oversight registered with the NIH's online portal, and used it to submit its request.  *See*, NIH, *Submitting FOIA Requests* (Last Reviewed on March 27, 2020), available at https://www.nih.gov/institutes-nih/nih-office-director/office-communications-public-liaison/freedom-information-act-office/submitting-foia-requests.

4) All communications to, from, and within the NIH press office about the NIH statement released on June 23, 2021, and about reports that these sequences were removed from the Sequence Read Archive. This includes all emails related to the drafting of the statement, communications about the reported removal, and communications with reporters.  This request covers all communications between June 21, 2021 to June 25, 2021.[4]

In addition, Empower Oversight requested: 1) a waiver of search and duplication fees associated with the NIH's processing of its FOIA request, and 2) expedited processing.

In support of its FOIA request, Empower Oversight explained that in March 2020 Chinese researchers submitted SARS-CoV-2 genetic sequences for posting to the NIH's Sequence Read Archive ("SRA"), and in June of 2020 they requested that the same sequences be withdrawn from the SRA.[5]  Genetic sequences of the SARS-CoV-2 virus are critical to understanding how the coronavirus pandemic (which has killed more than 934,000 Americans)[6] started and how future pandemics can be prevented.[7]  Furthermore, the presence of the SARS-CoV-2 genetic sequences on U.S. government storage resources is crucial because, as the U.S. Department of State has advised, China has not been transparent in connection with efforts to discover the origin of the SARS-CoV-2 virus.[8]  Indeed, China has removed from its own online databases genetic sequences for RaTG13, which is a bat coronavirus that the Wuhan Institute of Virology ("WIV") has studied since at least 2016 and which it claimed to be the closest coronavirus sample to SARS-CoV-2 in January 2020 (RaTG13 is reported to be 96.2% similar to SARS-CoV-2).[9]

*The New York Times* and *The Washington Post* have reported on Chinese researchers' requests to remove the SARS-CoV-2 genetic sequences from the NIH's SRA.[10]  According to *The Washington Post*, "The NIH released a statement [June 23, 2021] saying that a researcher who originally published the genetic sequences asked for them to be removed from the NIH database

---

[4] Empower Oversight's July 14th FOIA request is attached as Exhibit 1.

[5] Zimmer, Carl, *Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted* (June 23, 2021), available at https://www.nytimes.com/2021/06/23/science/coronavirus-sequences.html; Achenbach, Joel, Guarino, Ben, Abutaleb, Yasmeen, *Seattle Scientist Digs up Deleted Coronavirus Genetic Data, Adding Fuel to the Covid Origin Debate* (June 23, 2021), available at https://www.washingtonpost.com/health/coronavirus-origin-nih-gene-sequence-deletion/2021/06/23/186e87d0-d437-11eb-a53a-3b5450fdca7a_story.html.

[6] Johns Hopkins University, *Mortality Analyses*, available at https://coronavirus.jhu.edu/data/mortality (last accessed on February 21, 2022).

[7] *See generally*, U.S. Department of State, *Fact Sheet: Activity at the Wuhan Institute of Virology*, available at https://2017-2021.state.gov/fact-sheet-activity-at-the-wuhan-institute-of-virology/index.html.
[8] U.S. Department of State, *Fact Sheet: Activity at the Wuhan Institute of Virology*, available at https://2017-2021.state.gov/fact-sheet-activity-at-the-wuhan-institute-of-virology/index.html.

[9] U.S. Department of State, *Fact Sheet: Activity at the Wuhan Institute of Virology*, available at https://2017-2021.state.gov/fact-sheet-activity-at-the-wuhan-institute-of-virology/index.html.

[10] Zimmer, Carl, *Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted* (June 23, 2021), available at https://www.nytimes.com/2021/06/23/science/coronavirus-sequences.html; Achenbach, Joel, Guarino, Ben, Abutaleb, Yasmeen, *Seattle Scientist Digs up Deleted Coronavirus Genetic Data, Adding Fuel to the Covid Origin Debate* (June 23, 2021), available at https://www.washingtonpost.com/health/coronavirus-origin-nih-gene-sequence-deletion/2021/06/23/186e87d0-d437-11eb-a53a-3b5450fdca7a_story.html.

so that they could be included in a different database."[11]  In a statement to *The Washington Post*, the NIH said:

> These SARS-CoV-2 sequences were submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020. The requestor indicated the sequence information had been updated, was being submitted to another database, and wanted the data removed from SRA to avoid version control issues.[12]

And, according to *The New York Times*:

> "These SARS-CoV-2 sequences were submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020," said Renate Myles, a spokeswoman for the National Institutes of Health. She said that the investigator, whom she did not name, told the archive managers that the sequences were being updated and would be added to a different database.[13]

Empower Oversight has no commercial interest in the records sought by its FOIA request, instead it seeks the requested records to contribute significantly to the public's understanding of understanding how the NIH is addressing the SARS-CoV-2 pandemic.  Part of NIH's responsibility in that regard necessarily includes furthering efforts to determine the origin of the virus and prevent future pandemics.  The potential usefulness of the SARS-CoV-2 genetics sequences that NIH removed from the SRA has ignited an extraordinary interest among the public in research integrity generally and in the NIH's rationale for its removal of the SARS-CoV-2 genetic sequences from the SRA specifically.  Public confidence in the NIH's activities and operations is at stake, and thus it is Empower Oversight's intention to enlighten the public about these issues.

As November 17, 2021, Empower Oversight had not received any correspondence whatsoever from the NIH concerning its FOIA request, and thus it filed against the NIH a Complaint for Declaratory and Injunctive Relief—Civil Case Number 1:21-cv-01275—in the United States Court for the Eastern District of Virginia.  Empower Oversight's complaint seeks, among other things, declarations that the NIH failed to file a timely determination and promptly provide responsive records, an order requiring the NIH to perform a reasonable search and disclose all responsive, non-exempt records, and an award of costs and attorney's fees.

---

[11] Achenbach, Joel, Guarino, Ben, Abutaleb, Yasmeen, *Seattle Scientist Digs up Deleted Coronavirus Genetic Data, Adding Fuel to the Covid Origin Debate* (June 23, 2021), available at https://www.washingtonpost.com/health/coronavirus-origin-nih-gene-sequence-deletion/2021/06/23/186e87d0-d437-11eb-a53a-3b5450fdca7a_story.html.

[12] Achenbach, Joel, Guarino, Ben, Abutaleb, Yasmeen, *Seattle Scientist Digs up Deleted Coronavirus Genetic Data, Adding Fuel to the Covid Origin Debate* (June 23, 2021), available at https://www.washingtonpost.com/health/coronavirus-origin-nih-gene-sequence-deletion/2021/06/23/186e87d0-d437-11eb-a53a-3b5450fdca7a_story.html.

[13] Zimmer, Carl, *Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted* (June 23, 2021), available at https://www.nytimes.com/2021/06/23/science/coronavirus-sequences.html.

2. <u>NIH's February 7, 2022, Response to Empower Oversight's FOIA Request</u>

By letter dated February 7, 2022, the NIH responded to Empower Oversight's July 14th FOIA request.[14]  In its letter, the NIH designated the request as FOIA Request Number 56712, and produced 238 pages of records, many of which have been redated pursuant to FOIA Exemptions b(5) and b(6).  With respect to FOIA Exemption b(5), the NIH explained that its redactions are limited to the deliberative process privilege:

> Exemption 5 permits the withholding of internal government records which are pre-decisional and contain staff advice, opinion, and recommendations. This exemption is intended to preserve free and candid internal dialogue leading to decision-making.

## ANALYSIS

As discussed in detail below, the 238 pages of records that the NIH produced in response to FOIA Request Number 56712 include evidence indicating that the NIH's FOIA staff made significant errors when searching for responsive records and when reviewing responsive records for FOIA exemptions.

1. <u>The NIH's Search for Responsive Records Was Not Reasonably Calculated to Locate All Records Responsive to Empower Oversight's FOIA Request</u>

The legal standard governing the search for records responsive to FOIA requests requires an agency to conduct a search that is "reasonably calculated to uncover all relevant documents."[15]  Such calculation involves both an understanding of the nature and scope of the FOIA request and knowledge of where information may be stored within an agency.  In the former regard, courts have found searches to be sufficient when they are based on a reasonable interpretation of the scope of the subject matter of the request.[16]

Regarding the issue of knowledge of the contents of an agency's records storage platforms, an agency must show that it conducted a good faith, reasonable search of all platforms likely to possess the requested records.[17]  Hence, the reasonableness of an agency's search can often depend on whether the agency properly determined where responsive records were likely to be found—and searched those locations,[18] or whether the agency improperly limited its search to certain platforms.[19]

---

[14] The NIH's February 7, 2021, response to Empower Oversight's July 14th FOIA request is attached as Exhibit 2.

[15] <u>Weisberg v. DOJ</u>, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

[16] <u>Larson v. Dep't of State</u>, 565 F.3d 857, 869 (D.C. Cir. 2009) (affirming the adequacy of a search based on the agency's reasonable determination regarding records being requested).

[17] *See*, <u>Marino v. DOJ</u>, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (internal citation omitted).

[18] *See*, <u>Karantsalis v. DOJ</u>, 635 F.3d 497, 500-501 (11th Cir. 2011) (affirming the district court's determination that the agency searched for records in the system most likely to store responsive records and described how it retrieved records from the system); <u>Lechliter v. Rumsfeld</u>, 182 F. App'x 113, 115-16 (3d Cir. 2006) (concluding that the agency fulfilled its duty to conduct a reasonable search when it searched two offices that it determined would be the only ones likely to possess responsive documents) (*citing* <u>Oglesby v. Dep't of the Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990).

[19] *See*, <u>Morley v. CIA</u>, 508 F.3d 1108, 1119-20 (D.C. Cir. 2007) (holding that because the agency retained copies of the records transferred to NARA and concedes that some transferred records are likely to be responsive, it was obligated to search those records in response to the FOIA

Courts tend to afford agencies a fair amount of leeway when determining the locations to search for responsive records, on the grounds that an agency generally "is not obliged to look beyond the four corners of [a FOIA] request for leads to the location of responsive" records.[20] On the other hand, an agency "cannot in good faith ignore . . . a lead that is both clear and certain."[21]  For example, an agency cannot ignore a responsive document that "clearly indicates the existence of [other] relevant documents."[22]

The NIH produced two documents that clearly indicate the existence of other records that it did not produce.  In that regard, the NIH produced an August 11, 2021, email from gb-admin@ncbi.nlm.nih.gov to Dr. Jesse Bloom, which has the Subject "GenBank Submissions grp 8164050," and states:

Dear Dr. Bloom,

Thank you for your reply:

> I assembled the consensus sequences from a dataset that was
> generated by Wuhan University, but then deleted from the SRA. So
> I did not generate the data myself, but wanted to somehow put it in
> a public sequence database. Is this allowed?
> https://www.biorxiv.org/content/l0.l101/2021.06.l8.449051v2

GenBank accepts data directly determined by the submitter per our submission guidelines outlined at https://www.ncbi.nlm.nih.gov/genbank/submit types/. In some cases, sequence data not directly obtained by the submitter may be acceptable for the Third Party Annotation database (https://www.insdc.org/documents/tpa-submission-guidelines). However, the primary read data must be present in an INSDC database.

Unfortunately, we are unable to accept your submission since it does not meet the criteria for either GenBank or TPA.

The GenBank Submissions Staff

---

request); Jefferson v. DOJ, 168 F. App'x 448, 450 (D.C. Cir. 2005) (reversing the district court's finding of a reasonable search when the agency offered no plausible justification for searching only its investigative database and the agency essentially acknowledged that responsive files might exist in a separate database); Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (holding that the agency may not limit its search to one record system if others are likely to contain responsive records).

[20] Kowalczyk v. DOJ, 73 F.3d 386, 389 (D.C. Cir. 1996).

[21] Kowalczyk, 73 F.3d at 389.

[22] Center for National Security Studies v. DOJ, 215 F. Supp. 2d 94, 110 (D.D.C. 2002) (holding that discovery of a  document that "clearly indicates the existence of [other] relevant documents" creates an "obligation"  for agency to further search for those additional documents), aff'd in part, rev'd in part & remanded on other grounds, 331 F.3d 918 (D.C. Cir. 2003); Tarullo v. DOD, 170 F. Supp. 2d 271, 275 (D. Conn. 2001) (declaring agency's search inadequate because "[w]hile hypothetical  assertions as to the existence of unproduced responsive documents are insufficient to create a dispute of material fact as to the reasonableness of the search, plaintiff here has [himself provided copy of agency record] which appears to be responsive to the request"); Kronberg v. DOJ, 875 F. Supp. 861, 870 – 871 (D.D.C. 1995) (holding that search was inadequate when agency did not find records required to be maintained and plaintiff produced documents obtained by other FOIA requesters demonstrating that agency possessed files which may contain records sought).

Bethesda, Maryland USA[23]

The August 11th email from gb-admin@ncbi.nlm.nih.gov responds to correspondence from Dr. Bloom, which it to characterize as a "reply" to earlier correspondence.  However, Dr. Bloom's correspondence and the correspondence that he allegedly replied to are not included among the 238 pages produced by NIH.

Similarly, a July 26, 2021, email from Diane Tuncer to Steve Sherry and Kim Pruitt, which has the Subject "FW: FYI – News Report from China's Xinhua News Agency," states:

Hi Steve and Kim,

We shared this news article with NIH OCPL too, and they [NIH OCPL] responded with the following information (see below).  I'm also attaching the last set of QA (which we already sent to you last week).

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).][24]

The July 26th email forwards to Drs. Sherry and Pruitt a "last set of" questions and answers about Wuhan University dataset that was excluded from public access,[25] which Ms. Tuncer asserts had been forwarded to Drs. Sherry and Pruitt during the week of July 19, 2021 (i.e., "last week").  However, the earlier email to Drs. Sherry and Pruitt, which would have been equally responsive to Empower Oversight's FOIA request, was not produced among the 238 pages provided by the NIH.  Neither was a separate email referring the Xinhua news article that Ms. Tuncer asserts that "we" sent to the NIH's OCPL.

This evidence that the NIH failed to conduct a search that was reasonably calculated to lead to the discovery of all responsive records does not inspire confidence that the NIH has satisfied its search responsibilities under the FOIA.  Hence, Empower Oversight respectfully requests that the NIH, subject to DOJ's monitoring, review the work of its FOIA staff, ascertain the nature and scope of their search plan, determine whether such plan was appropriate and followed,[26] correct any errors that are discovered, and apprise Empower Oversight of its findings.

---

[23] NIH FOIA Request 56712_Redacted, p. 92.

[24] NIH FOIA Request 56712_Redacted, p. 93.

[25] See, e.g., NIH FOIA Request 56712_Redacted, pp. 96 – 97.

[26] Additionally, Federal agencies shoulder the burden of demonstrating that their searches are reasonable, and they typically do this by describing their efforts in affidavits that they file in support of motions for summary judgment.  See, e.g., Ethyl Corp. v. U.S. Environmental Protection Agency, 25 F.3d 1241 (4th Cir. 1994); Cochran v. Dep't of Homeland Security, 2019 WL 1433014 (D. Md. March 28, 20191). However, an agency may not rely upon vague or conclusory affidavits to show that it has conducted a reasonable search.  See, Cochran, 2019 WL 1433014, p. *5 – *6 (criticizing a conclusory FBI affidavit).  Rather, a satisfactory "affidavit must be reasonably detailed, 'setting forth the search terms and the type of search performed and averring that all files likely to contain responsive materials (if such records exist) were searched' so as to give the requesting party an opportunity to challenge the adequacy of the search." Ethyl Corp., 25 F.3d 1246 – 1247 (quoting Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).  Accordingly, Empower Oversight requests that the NIH generate and share with Empower Oversight affidavits fully describing the search efforts of the NIH's FOIA staff.

2. The NIH Asserted FOIA Exemption b(5) as Justification for Redacting Responsive Records that Are Not Both Pre-decisional and Deliberative

Subsection b(5) of the FOIA provides that the FOIA "does not apply to matters that are":

inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested.[27]

Courts have construed FOIA Exemption b(5) to "exempt those documents, and only those documents, that are normally privileged in the civil discovery context."[28] Although the United States Circuit Court of Appeals for the District of Columbia Circuit ("Circuit Court") has held that "all civil discovery rules" are incorporated into FOIA Exemption b(5),[29] the NIH's February 7th response to NIH FOIA Case Number 56712 appears to limit the NIH's reliance on the exemption to the deliberative process privilege (i.e., the NIH states, "Exemption 5 permits the withholding of internal government records which are pre-decisional and contain staff advice, opinion, and recommendations").

The purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions."[30] In this setting, the Circuit Court has explained that "quality" encompasses encouraging frank discussions during policy making, preventing advance disclosure of decisions, and protecting against public confusion that may result from disclosure of reasons or rationales that were not in fact the grounds for agency decisions.[31]

To claim the deliberative process privilege with respect to a record, the Circuit Court has held that an agency must show[32] that the record is "pre-decisional" (i.e., "antecedent to the adoption of agency policy")[33] and "deliberative" (i.e., "a direct part of the deliberative process in that it makes recommendations and expresses opinions on legal or policy matters").[34]

Unfortunately, it appears that the NIH, while purporting to follow FOIA Exemption b(5), has redacted responsive records that are **not** both pre-decisional and deliberative.

---

[27] 5 U.S.C. § 552(b)(5).

[28] NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also, Martin v. Office of Special Counsel, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

[29] See, Martin, 819 F.2d at 1185.

[30] Sears, 421 U.S. at 151.

[31] See, Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Coastal States Gas Corp. v. DOE, 617 F.2d 854, 866 (D.C. Cir. 1980); Jordan v. DOJ, 591 F.2d 753, 772 – 773 (D.C. Cir. 1978).

[32] Coastal States Gas Corp., 617 F.2d at 866.

[33] See, Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011).

[34] See, Vaughn v. Rosen, 523 F.2d 1136, 1143 – 1144 (D.C. Cir. 1975).

### A. The NIH Redacted Records that Are Not Pre-decisional

The Circuit Court has held that a document is "pre-decisional," if it is "generated before the adoption of an agency policy."[35] In determining whether a document is antecedent to the generation of agency policy, courts have found that an agency does not necessarily have to point to a specific agency final decision,[36] but instead it must establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process."[37]

On this point, the Supreme Court has been clear:

> Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.[38]

Thus, a document must be generated as part of such a continuing process of agency decision-making for a court to find that FOIA Exemption b(5) is applicable.[39]

### Communication with Dr. Bloom About a Request by a Wuhan University Researcher to Exclude a Genome Dataset from the SRA

The NIH produced a record that its FOIA staff heavily redacted, purportedly pursuant to FOIA Exemption b(5), that clearly was not part of the NIH's decision-making process. In that regard, on Friday, June 18, 2020, at 7:00 pm, Dr. Jesse Bloom emailed Francis Collins, Steve Sherry, and Anthony Fauci to alert them that he had "identified a data set of early Wuhan SARS-CoV-2 sequences that has been deleted from the NIH's" SRA, to forward a copy of his pre-print analysis of his recovery of the deleted data files from the Google Cloud, and to recommend that the NIH commence a comprehensive examination of the SRA to search for other SARS-CoV-2 genomes that may have been deleted.[40]

The next morning, June 19, 2021, at 7:34 am, Steve Sherry sent Francis Collins, Jesse Bloom, Anthony Fauci, and Patti Brennan an email, which has the Subject "RE: SARS-CoV-2 Data Deleted from the NIH/NCBI SRA," and stated:

Dear Francis and Jesse,

---

[35] Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006).

[36] Rein v. U.S. Patent & Trademark Office, 553 F.3d 353, 373 (4th Cir. 2009).

[37] Coastal States Gas Corp. v. DOE, 617 F.2d 854, 868 (D.C. Cir. 1980).

[38] NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 n.18 (1975).

[39] See, e.g., New Hampshire Right to Life v. HHS, 778 F.3d 43, 53 – 54 (1st Cir. 2015).

[40] NIH FOIA Request 56712_Redacted, pp. 176 – 177.

Below is the June 2020 exchange between Wuhan University and SRA submission staff. I have redacted names and the withdrawal request tracking ID for privacy. Please read from the bottom up.

I would note that this request was received and processed according to SRA policy. As Jesse notes in his manuscript, submitters own their SRA records and can withdraw them upon request. SRA does not adjudicate the reason.

More generally, I have requested the SRA team to compile a report of all withdrawn SARS-COV2 data so there is transparency into the status of all SRA SARS-COV2 sequence submissions. I will share the report as soon as it is available.

Kind regards,

Steve

(data withdrawal correspondence) -------------------------------------------------

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).]

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).][41]

Here, the NIH, in response to unsolicited correspondence from an external party (*i.e.*, Dr. Bloom), shares with Dr. Bloom a communication thread that Dr. Sherry characterizes as being a "June 2020 exchange between Wuhan University and SRA submission staff" from which he redacted names and a tracking identification number for "privacy" purposes (and at NIH FOIA Request 56712_Redacted, pages 174 – 176, the NIH FOIA staff redacts the exchange in its entirety).[42]   Thus, according to Dr. Sherry the redacted information is not part of the agency decision-making process: it represented a correspondence exchange between the NIH and Wuhan University concerning public access to SARS-CoV-2 data that Wuhan University had posted on the SRA and later wished to exclude from public access.  If there were an agency policy decision involved, then it would have been the decision whether to grant Wuhan University's request, which Dr. Sherry describes as being something that the NIH grants as a matter of course without "adjudicate[ing] the reason" for the request, or to follow Dr. Bloom's recommendation to examine the SRA, which Dr. Sherry advised he had implemented.

---

[41] NIH FOIA Request 56712_Redacted, pp. 174 – 176.

[42] The NIH appears to have twice produced Dr. Sherry's June 19th email.  *Compare*, NIH FOIA Request 56712_Redacted, pp. 174 – 176, and NIH FOIA Request 56712_Redacted, pp. 229 – 230.  As shown above, the version produced at pages 174 – 176 is fully redacted, purportedly pursuant to FOIA Exemption b(5), whereas the version produced at pages 229 – 230 includes the exchange as described by Dr. Sherry in his email.  The NIH's FOIA staff producing the same record with redactions at pages 174 – 176 and without redactions at pages 229 – 230 further undermines the credibility of their exemption claim.

Moreover, much of the text redacted at pages 174 – 176, assuming that it is the same text that is produced without redaction at pages 229 – 230, is replete with factual information, *compare*, NIH FOIA Request 56712_Redacted, pp. 174 – 176, and NIH FOIA Request 56712_Redacted, pp. 229 – 230, which, as described in the next section, is not protected by FOIA Exemption b(5).

### Internal Dissemination of Coverage of Dr. Bloom's Findings by the
### Official Press Agency of the Republic of China

Similarly, the NIH produced a July 26, 2021, email from Diane Tuncer to Steve Sherry and Kim Pruitt, which has the Subject FW: FYI – News Report from China's Xinhua News Agency," that purports to forward "information" from the NIH's Office of Communications and Public Liaison ("OCPL"). Further, given the context of the email, the forwarded "information" would appear to pertain to OCPL's analysis of an article published in Xinhua,[43] as opposed to an NIH policy under consideration.[44] Ms. Tuncer's July 26th email states:

Hi Steve and Kim,

We shared this news article with NIH OCPL too, and they [NIH OCPL] responded with the following information (see below). I'm also attaching the last set of QA (which we already sent to you last week).

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).][45]

## B. The NIH Redacted Records that Are Not Deliberative

To be "deliberative," a record must reflect[] the give-and-take of the consultative process," either by assessing the merits of a particular viewpoint, or by articulating the process used by the agency to formulate policy.[46]

Factual information, on the other hand, is not covered by the deliberative process privilege because the release of factual information does not expose the deliberations or opinions of agency personnel.[47] Accordingly, factual information is typically available in civil discovery and its release is not considered to have a chilling effect on agency deliberations.[48]

Empower Oversight cannot see behind the NIH's redactions, but other records produced by the NIH raise serious questions regarding whether segregable factual information[49] is included within numerous large text block redactions that the NIH's FOIA staff has made.

---

[43] Xinhua is an official news service run by the Chinese state. *See*, Markay, Lachlan, *China Increases Spending 500% to Influence America* (May 11, 2021), available at https://www.axios.com/china-foreign-influence-spending-317a9be4-8ead-4abf-8ac4-3f27974d7a9d.html. As such, its United States branch is registered as a foreign agent under the Foreign Agents Registration Act, 22 U.S.C. § 611 *et seq. Id.*

[44] Additionally, unless the information that Ms. Tuncer forwarded from OCPL excludes, for example, addressees, dates, and subject lines, it clearly includes non-deliberative, factual information such as that discussed in the next section.

[45] NIH FOIA Request 56712_Redacted, p. 93.

[46] Coastal States Gas Corp., 617 F.2d at 867.

[47] Coastal States Gas Corp., 617 F.2d at 867; *see also*, McGrady v. Mabus, 635 F. Supp. 2d 6, 18 – 21 (D.D.C. 2009) (distinguishing between draft letters and memoranda that may be deliberative and data used during a decision-making process, *e.g.*, key personnel data and evaluation summaries used in promotion decisions, which contain only factual material and are not deliberative).

[48] *See*, EPA v. Mink, 410 U.S. 73, 87 – 88 (1973); *see also*, Montrose Chem. Corp. v. Train, 491 F.2d 63, 66 (D.C. Cir. 1974) (holding that release of factual material would not be "injurious" to decision making process).

[49] "[W]ith regard to any document an agency believes falls under a FOIA exemption, the agency is required to "undertake a 'segregability analysis,' in which it separates the exempt from the non-exempt portions of the document, and produces the relevant non-exempt

**Planned Response to Media Inquiries Concerning Dr. Bloom's Reference
to the Exclusion of Information from Public Access on the SRA**

The NIH produced a thread of emails that were designed to formulate an official
response to an expected surfeit of media inquiries and—seemingly consistent with the policy
underlying FOIA Exemption b(5)—emails that were created before the adoption of the official
response include text block redactions. In several cases large ones. However, comparison of the
pre-adoption emails with the official response that was ultimately adopted begs the question
whether segregable factual information is included among the NIH's redactions. For example, a
June 21, 2021, 2:25 pm, email from Renate Myles to Diane Tuncer and Jody Nurik, which has
the Subject "FLAGGING: SARS-CoV-2 dated deleted from the NIH/NCBI SRA," states:

Hi all:

The attached paper was submitted to BioRx for preprint. The researcher is focusing
on early genome sequence data on SARS-CoV-2 that the submitter requested be
deleted. Unfortunately, the author of the paper is assigning motive and suggesting
that the purpose of deletion was to obscure its existence. Below are reactive
statement and QA in case we get media interest. Please let me know ASAP if NLM
has any concerns with this language.

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).]

**Was there any motive for the investigator to remove the data?**
[Text block redacted purportedly pursuant to FOIA Exemption b(5).]

**Are investigators allowed to request that data be deleted from SRA?**
[Text block redacted purportedly pursuant to FOIA Exemption b(5).][50]

A June 21, 2021, 6:22 pm, email from Renate Myles to Diane Tuncer and Jody Nurik,
which has the Subject "RE: FLAGGING: SARS-CoV-2 dated deleted from the NIH/NCBI SRA,"
states:

Hi Diane:

Spoke with Patti and below is what we agreed on. So far, the paper still has not
posted. We're keeping an eye out for it.

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).]

**Was there any motive for the investigator to remove the data?**
[Text block redacted purportedly pursuant to FOIA Exemption b(5).]

**Are investigators allowed to request that data be deleted from SRA?**

---

information." People for the American Way Foundation v. National Park Service, 503 F. Supp. 2d 284, 306 (D.D.C. 2007) (*quoting* Edmonds
Institute v. U.S., 383 F. Supp.2d 105, 108 (D.D.C. 2005)).

[50] NIH FOIA Request 56712_Redacted, pp. 21 – 22.

[Text block redacted purportedly pursuant to FOIA Exemption b(5).][51]

However, a June 22, 2021, email from Renate Myles to Jody Nurik and Diane Tuncer, which has the Subject "RE: FLAGGING: SARS-CoV-2 dated deleted from the NIH/NCBI SRA," states:

> Thanks, Jody. We'll need lots of eyes. Also, I made as light tweak to the response. We'll handle it here.
>
> NIH is aware of Dr. Bloom's preprint submission. Staff at the National Library of Medicine, which hosts the Sequence Read Archive (SRA), have reviewed the submitting investigator's request to withdraw the data. These SARS-CoV-2 sequences were submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020. The requestor indicated the sequence information had been updated, was being submitted to another database, and wanted the data removed from SRA to avoid version control issues. The submitting investigator published relevant information about these sequences by preprint in March, 2020 and in a journal in June, 2020. Submitting investigators hold the rights to their data and can request withdrawal of the data.
>
> **Was there any motive for the investigator to remove the data?**
> NIH can't speculate on motive beyond the investigator's stated intentions.
>
> **Are investigators allowed to request that data be deleted from SRA?**
> Submitting investigators hold rights to their data and can request withdrawal of the data[.][52]

Thus, unless the text redacted from Ms. Myles' two June 21st emails differ dramatically from the text of her June 22nd email, which she characterizes as including only a "light tweak," the NIH's FOIA staff have redacted a surplus of factual information from the June 21st emails. Indeed, Ms. Myles' June 22nd email is entirely factual in nature; there is no policy discussion reflected therein.  She advises that:

- NIH is aware of Dr. Bloom's preprint article;

- Staff at the NLM, which hosts the SRA, have reviewed the Wuhan University researcher's request to withdraw SARS-CoV-2 genetic data from the SAR;

- The data in question was submitted for posting on the SRA in March 2020, and the withdraw request was submitted in June 2020;

---

[51] NIH FOIA Request 56712_Redacted, p. 20.

[52] NIH FOIA Request 56712_Redacted, p. 19.  In July of 2021, NIH internally disseminated a more detailed question/answer sheet for responding to media inquiries concerning the Wuhan University dataset that was excluded from public access on the SRA.  *See*, NIH FOIA Request 56712_Redacted, p. 96 – 97.

- The Wuhan University requester had indicated that the data in question had been updated, was being submitted to another database, and that the removal from the SRA was intended to avoid version control issues;

- Submitting researchers hold the rights to their data and can request the withdrawal thereof; and

- The NIH can't speculate on motive beyond the requester's stated intentions.

### Response to Inquiry by Dr. Bloom Related to an Assembly of "Consensus Sequences" of a Dataset Generated by Wuhan University and Later Excluded from Public Access on the SRA

Similarly, the NIH produced a thread of emails that were designed to respond to an offer from Dr. Bloom, who had advised that he had assembled "consensus sequences" of the genetic data that the Wuhan University researcher(s) had requested that the NIH remove from public access on the SRA, and sought permission to upload such sequences to the GenBank.[53]  Again, unless the pre-response emails differ dramatically from the text of the August 11, 2021, response to Dr. Bloom, the NIH FOIA staff redacted a significant amount of factual information that is not exempt from disclosure under FOIA Exemption b(5).

In that regard, an August 5, 2021, 5:35 pm, email from Ilene Mizrachi to Kim Pruitt and Steve Sherry, which has the Subject "Genome Assemblies from Jesse Bloom," states:

Hi,

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).]

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).]

Ilene[54]

Likewise, an August 5, 2021, 5:49 pm, email from Kim Pruitt to Steve Sherry, Ilene Mizrachi, Patti Brennan, and Teresa Zayas Caban, which has the Subject "RE: Genome Assemblies from Jesse Bloom," states:

Was just about to send this reply —

---

[53] GenBank is the NIH's annotated collection of all publicly available DNA sequences.  *See*, National Center for Biotechnology Information ("NCBI"), *GenBank Overview* (Last Updated April 26, 2021), available at https://www.ncbi.nlm.nih.gov/genbank/.  It is part of the International Nucleotide Sequence Database Collaboration ("INSDC") with the DNA DataBank of Japan and the European Nucleotide Archive.  *Id.*  The DNA sequences compiled in GenBank are submitted by the researcher that sequenced the DNA in question.  *See*, NCBI, *What Is a Third Party Annotation (TPA) Sequence?* (Last Updated October 15, 2020), available at https://www.ncbi.nlm.nih.gov/genbank/tpa/.

On the other hand, the SRA is a data base of raw "sequencing data from the next generation of sequencing platforms including Roche 454 GS System®, Life Technologies AB SOLiD Systems®, Helicos Biosciences Heliscope®, Complete Genomics®, and Pacific Biosciences SMRT®."  *See*, NCBI, DNA & RNA: Databases (Undated), available at https://www.ncbi.nlm.nih.gov/guide/dna-rna/.  And, the Third Party Annotation Sequence is an NIH "database designed to capture experimental or inferential results that support submitter-provided annotation for, or assembly of, sequence data that the submitter did not" sequence but rather "derived from GenBank primary data."  *See*,  NCBI, *What Is a Third Party Annotation (TPA) Sequence?* (Last Updated October 15, 2020), available at https://www.ncbi.nlm.nih.gov/genbank/tpa/.

[54] NIH FOIA Request 56712_Redacted, pp. 90 – 91.

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).]

Options:

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).]

Kim[55]

An August 6, 2021, 12:28 pm, email from Ilene Mizrachi to Kim Pruitt, Steve Sherry, Patti Brennan, and Teresa Zayas Caban, which has the Subject "RE: Genome Assemblies from Jesse Bloom," states:

This is the reply that we would like to send to Bloom. Is it ok?

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).]

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).][56]

An August 9, 2021, 7:15 am, email from Teresa Zayas Caban to Steve Sherry, Ilene Mizrachi, Kim Pruitt, and Patti Brennan, which has the Subject "RE: Genome Assemblies from Jesse Bloom," states:

Good morning all,

Am conferring with OGC on this but was wondering [text block redacted purportedly pursuant to FOIA Exemption b(5)].

-Teresa[57]

An August 9, 2021, 12:12 pm, email from Linda Yankie to Teresa Zayas Caban, Steve Sherry, Ilene Mizrachi, Kim Pruitt, and Pattie Brennan, which has the Subject "RE: Genome Assemblies from Jesse Bloom," states:

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).][58]

And, an August 9, 2021, 7:21 pm, email from Teresa Zayas Caban to Linda Yankie, Steve Sherry, Ilene Mizrachi, Kim Pruitt, and Patti Brennan, which has the Subject "RE: Genome Assemblies from Jesse Bloom," states:

**Pre-Decisional — Deliberative — Do Not Disclose**

I conferred with OGC [text block redacted purportedly pursuant to FOIA Exemption b(5)].

---

[55] NIH FOIA Request 56712_Redacted, pp. 89 – 90.

[56] NIH FOIA Request 56712_Redacted, pp. 87 – 88.

[57] NIH FOIA Request 56712_Redacted, p. 87.

[58] NIH FOIA Request 56712_Redacted, p. 86.

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).]

[Large text block redacted purportedly pursuant to FOIA Exemption b(5).]

The GenBank Submissions Staff
Bethesda, Maryland USA[59]

Whereas, the August 11, 2021, email from gb-admin@ncbi.nlm.nih.gov to Dr. Jesse Bloom, which has the Subject "GenBank Submissions grp 8164050," states:

Dear Dr. Bloom,

Thank you for your reply:

> I assembled the consensus sequences from a dataset that was generated by Wuhan University, but then deleted from the SRA. So I did not generate the data myself, but wanted to somehow put it in a public sequence database. Is this allowed?
> https://www.biorxiv.org/content/l0.l101/2021.06.l8.449051v2

GenBank accepts data directly determined by the submitter per our submission guidelines outlined at https://www.ncbi.nlm.nih.gov/genbank/submit types/. In some cases, sequence data not directly obtained by the submitter may be acceptable for the Third Party Annotation database (https://www.insdc.org/documents/tpa-submission-guidelines). However, the primary read data must be present in an INSDC database.

Unfortunately, we are unable to accept your submission since it does not meet the criteria for either GenBank or TPA.

The GenBank Submissions Staff
Bethesda, Maryland USA[60]

Thus, after quoting Dr. Bloom's earlier correspondence, a fact, the NIH adds the following facts:

- Its GenBank only accepts data from researchers that have directly prepared the sequences, according to its guidelines published at https://www.ncbi.nlm.nih.gov/genbank/submit types/;

- Experimental and inferential results from genetic sequences may be accepted by the Third Party Annotation ("TPA") database, https://www.insdc.org/documents/tpa-submission-guidelines, if the

---

[59] NIH FOIA Request 56712_Redacted, pp. 85 – 86.

[60] NIH FOIA Request 56712_Redacted, p. 92.

underlying genetic sequence is posted in an International Nucleotide Sequence Database Collaboration ("INSDC") database, such as GenBank; but

- The data offered by Dr. Bloom does not comply with the requirements of GenBank or the TPA.

This evidence that the NIH inappropriately used FOIA Exemption b(5)—*i.e.*, that while purporting to follow FOIA Exemption b(5), the NIH redacted responsive records that are **not** both pre-decisional and deliberative—does not inspire confidence that the NIH has satisfied its review responsibilities under the FOIA. Hence, Empower Oversight respectfully requests that the NIH, subject to DOJ's monitoring, analyze all of its FOIA staff's FOIA Exemption b(5) claims in response to FOIA Case Number 56712—not just the items described above—to ensure that their claims are consistent with the accepted legal parameters of the exemption, correct any errors that are discovered, and apprise Empower Oversight of its findings.

### 3. The NIH Asserted FOIA Exemption b(6) as Justification for Redacting Responsive Records that Do Not Invoke Substantial Privacy Interests

Subsection b(6) of the FOIA provides that the FOIA "does not apply to matters that are … personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[61] Courts have found that the plain language of FOIA Exemption b(6) requires agencies to engage in a four-step analysis of records that are potentially responsive to a FOIA request; agencies must:

1. Determine whether a record at issue constitutes a personnel, medical, or "similar" file;

2. Determine whether there is a substantial privacy interest invoked by information in such records;

3. Evaluate the requester's asserted FOIA public interest in disclosure of the records that include information that invoke a substantial privacy interest; and

4. Balance competing interests to determine whether disclosure of the records "would constitute a clearly unwarranted invasion of personal privacy," if there is a FOIA public interest in disclosure of records that include information that invokes a substantial privacy interest.[62]

Each step of the FOIA Exemption b(6) analysis is dependent upon the prior step being satisfied; hence, for example, if the information in question does not satisfy the threshold requirement (*i.e.*, a personnel, medical, or similar file), it is unnecessary to evaluate the existence and significance of privacy interests because the exemption is inapplicable.[63]

---

[61] 5 U.S.C. § 552(b)(6).

[62] *See*, Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1229 (D.C. Cir. 2008); NARA v. Favish, 541 U.S. 157, 172 (2004); Wash. Post Co. v. HHS, 690 F.2d 252, 261 (D.C. Cir. 1982).

[63] Schonberger v. NTSB, 508 F. Supp. 941, 942 (D.D.C. 1981).

The second step of the four-step FOIA Exemption b(6) analysis requires an agency to "determine whether disclosure of the files 'would compromise a substantial, as opposed to de minimis, privacy interest. . . .'"[64]  Of course, for a privacy interest to be "substantial" it must be real, not speculative.[65]  The Circuit Court explained that "mere speculation" of an invasion of privacy is not sufficient.[66]

Further, courts generally have declined to find that the identities of citizens who have petitioned the government to take an action be information that raises substantial privacy interests protected under FOIA Exemption b(6).[67]  They also have declined to find the identities of government officials to represent substantial privacy interests protected by the exemption.[68]

In contrast to this precedent, the NIH—purportedly in reliance on FOIA Exemption b(6)—has redacted the name(s) of one or more Wuhan University[69] researcher(s) who petitioned it to remove genome sequence data that he/she/they had submitted to the SRA for posting.  In that regard, pages 23 – 24, 35, 65, 70 – 72, 75 – 83, 103, 115, 145, and 150 – 163 of the 238 pages that the NIH produced in response to FOIA Case Number 56712 include emails and correspondence between the NIH staff and one or more external contact(s) whose name(s) and business affiliation(s)[70] is(are) redacted—allegedly pursuant to FOIA Exemption b(6).  The emails and correspondence relate to:

- The NIH's March 2020 acknowledgment of receipt of genome sequence data—for posting on the SRA—from the external contact(s);[71]

---

[64] See, Multi Ag Media LLC, 515 F.3d at 1229 (quoting National Association of Retired Federal Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989)).

[65] Department of the Air Force v. Rose, 425 U.S. 352, 380 n.19 (1976) ("The legislative history is clear that Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities.")

[66] National Association of Retired Federal Employees v. Horner, 879 F.2d 873, 878 (D.C. Cir. 1989) (citing Arieff v. U.S. Department of the Navy, 712 F.2d 1462, 1468 (D.C. Cir. 1983)), see also, Pinson v. DOJ, 313 F. Supp. 3d 88, 112 (D.D.C. 2018) (finding that "conclusory" and "generalized" allegations of privacy harms are insufficient for protection of records under Exemption 6); Aqualliance v. U.S. Army Corps. of Engineers, 243 F. Supp. 3d 193, 198 (D.D.C. 2017) (finding mailing lists of homeowners who lived in close proximity to a California water project to be too speculative to be protected by FOIA Exemption b(6)).

[67] People for the American Way Foundation, 503 F. Supp. 2d at 306 (determining that the mere identity of individuals who voluntarily submitted comments regarding a proposal to change a video displayed for guests at the Lincoln Memorial does not raise the kind of privacy concerns protected by FOIA Exemption b(6)) (quoting Lardner v. U.S. Department of Justice, 2005 WL 758267, at * 18 (D.D.C. 2005)); see also, Landmark Legal Found. v. IRS, 87 F. Supp. 2d 21, 27 – 28 (D.D.C. 2000); Alliance for Wild Rockies v. Department of the Interior, 53 F. Supp.2d 32, 34 (D.D.C. 1999).

[68] See, e.g., Aguirre v. SEC, 551 F. Supp. 2d 33, 54 (D.D.C. 2008) ("Correspondence does not become personal solely because it identifies government employees").

[69] Wuhan University describes itself as "a . . . key university directly under the administration of the Ministry of Education.  It is also one of the '211 Project' and '985 Project' universities with full support in the construction and development from the central and local government of China."  See, Wuhan University, About WHU: Overview (2014), available at https://en.whu.edu.cn/About_WHU1/Overview.htm.

[70] Although the NIH FOIA staff typically redacted the business affiliations of the external contact(s), i.e., Wuhan University, they neglected to do so with respect to a June 19, 2020, email from Steve Sherry to Francis Collins, Jesse Bloom, Anthony Fauci, and Patti Brennan.  See, NIH FOIA Request 56712_Redacted, pp. 229 - 230.  By his email, he forwarded a thread of three June 2020 emails between a Wuhan University "Submitter" and a "SRA Curator."  The submitter's name and the data identification numbers were redacted by Dr. Sherry, but he failed to redact "Wuhan University" in the contact's(s') salutation block.  See, NIH FOIA Request 56712_Redacted, p. 230; compare, NIH FOIA Request 56712_Redacted, pp. 81 – 82.

[71] A March 17, 2020, email from "sra" to "b(6)," with the Subject "SRA submission SUB7147304, 'Nanopore targeted sequencing for SARS-CoV-2 and other respiratory viruses, Mar 13 '20'" is an automatic acknowledgment of "b(6)"'s "recent submission to the SRA database."  See, NIH FOIA Request 56712_Redacted, p. 70.  The title in the subject line of the email corresponds to a pre-print article, Nanopore Target Sequencing

- The NIH's designation of the March 2020 data as Submission ID 7147304 and BioProject Accession Number PRJNA612766;

- Troubleshooting concerning access to the data on the SRA;

- The NIH's June 2020 acknowledgment of receipt of genome sequence data—for posting on the SRA—from the external contact(s);

- The NIH's designation of the June 2020 data as Submission ID 7554642 and BioProject Accession Number PRJNA637497;

- The external contact's(s') request to "retract" Submission ID 7554642 and BioProject Accession Number PRJNA637497, and the NIH's hesitance to do so;

- The external contact's(s') request, with the Subject "Re: SUB7554642/subs/sra/SUB7554642/overview," to "withdraw" Submission ID 7147304; and

- The NIH's inquiry regarding the scope of the external contact's(s') request, and confirmation that it "had withdrawn everything."

The external contact(s) are—on the basis of Dr. Sherry's June 19th email[72] and the title of the preprint publication associated with Submission ID 7147304 and BioProject Accession Number PRJNA612766[73]—affiliated with Wuhan University, and thus in some fashion is(are) employed by the Chinese government.  In other words, they are government officials operating in their official capacity.  Moreover, the external contact(s) clearly petitioned the NIH to take action with respect to Submission IDs 7147304 and 7554642, and BioProject Accession Numbers PRJNA612766 and PRJNA637497, *i.e.*, to "retract" or "withdraw" them from the SRA.  Accordingly, the external contact(s) name(s) and business affiliation should not have been redacted the NIH.[74]

Moreover, were the precedent controlling the privacy interests associated with petitions for government action and government employees' official actions not fatal to the NIH FOIA staff's FOIA Exemption b(6) assertions on pages 23 − 24, 35, 65, 70 − 72, 75 − 83, 103, 115, 145, and 150 − 163 of the NIH's production, the question would arise whether there is a substantial privacy interest at stake in the first place.  It seems unlikely that there is.  The data designated Submission ID 7147304 and BioProject Accession Number PRJNA612766 was submitted to the NIH to facilitate peer review of the methodology underlying a pre-print report

---

for Accurate and Comprehensive Detection of SARS-CoV-2 and Other Respiratory Viruses (March 2020), that was submitted by 15 authors affiliated with Wuhan University, the Ministry of Education, Wuhan Dgensee Clinical Laboratory Co., Ltd., the Wuhan Institute of Virology, Shanghai Jiao Tong University, and the Wuhan Institute of Biotechnology.  *See*, Hu, Ben, et al, *Nanopore Target Sequencing for Accurate and Comprehensive Detection of SARS-CoV-2 and Other Respiratory Viruses* (March 2020), available at https://pubmed.ncbi.nlm.nih.gov/32578378/.

[72] See footnotes 70, above.

[73] See footnotes 71, above.

[74] Indeed, although Dr. Sherry erroneously counseled staff to redact the names of the external contact(s), several NIH staffers questioned his guidance.  See NIH FOIA Request 56712_Redacted, pp. 169 − 171.  Apparently, to no avail.

entitled *Nanopore Target Sequencing for Accurate and Comprehensive Detection of SARS-CoV-2 and Other Respiratory Viruses*, which was submitted by 15 authors who freely attached their names thereto.  It seems implausible that such authors now would wish to be disassociated with their report or the methodology supporting their research.  Additionally, the NIH has publicly stated that the authors of *Nanopore Target Sequencing for Accurate and Comprehensive Detection of SARS-CoV-2 and Other Respiratory Viruses*: 1) own the genetic data that they submitted to the SRA for posting, and 2) have the complete discretion to "retract" or "withdraw" such data from public access on the SRA.  It thus seems equally implausible that the authors assertion of ownership over their data and their exercise of discretion over the use of it would implicate a privacy issue.  And, to date, the NIH has not offered any clues concerning what such a privacy interest may look like.

This evidence that the NIH inappropriately used FOIA Exemption b(6) does not inspire confidence that the NIH has satisfied its review responsibilities under the FOIA.  Hence, Empower Oversight respectfully requests that the NIH, subject to DOJ's monitoring, analyze all of its FOIA staff's FOIA Exemption b(6) claims in response to FOIA Case Number 56712—not just the items described above—to ensure that their claims are consistent with the accepted legal parameters of the exemption, correct any errors that are discovered, and apprise Empower Oversight of its findings.  Moreover, because "[a]n agency [in litigation] must provide affidavits containing 'reasonable specificity of detail rather than merely conclusory statements' to establish a substantial invasion of privacy,"[75] Empower Oversight requests that the NIH provide affidavits supporting its findings.

Thank you for your time and consideration.  Please don't hesitate to contact me with any questions.

Cordially,

/Jason Foster/

Jason Foster
Founder & President

---

[75] Climate Investigations Center v. DOE, 331 F. Supp. 3d 1, 26 (D.D.C. 2018) (*quoting* Judicial Watch, Inc. v. U.S. Secret Service, 726 F.3d 208, 215 (D.C. Cir. 2013)).

# Exhibit 1

# EMPOWER OVERSIGHT

## *W h i s t l e b l o w e r s  &  R e s e a r c h*



**EMPOWR.us**

July 14, 2021

**VIA ELECTRONIC TRANSMISSION:** NIHFOIA@MAIL.NIH.GOV

National Institutes of Health
Building 31 Room 5B35
9000 Rockville Pike
Bethesda, MD 20892

**RE: RECORDS REGARDING NIH's SARS-CoV-2 (COVID19) DATABASE**

Dear FOIA Officer:

Empower Oversight Whistleblowers & Research ("Empower Oversight") is a nonpartisan, nonprofit educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing.  We work to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities help to hold those authorities accountable to act on such reports.

We respectfully request records be delivered from the National Institutes of Health (NIH) pursuant to this request under the Freedom of Information Act (FOIA), 5 U.S.C. 552 within the next 20 business days. As detailed below, we request access to certain records regarding SARS-CoV-2 sequences submitted for posting to the Sequence Read Archive in March 2020 by Chinese researchers and subsequently requested to be withdrawn by the submitting investigator in June 2020. Sequences of SARS-CoV-2 virus are critical to understanding how this pandemic (which has killed more than 600,000 Americans) started, in order to prevent future pandemics.[1] Furthermore, the State Department has noted that China has not been transparent in its handling of the SARS-CoV-2 origin question and has removed virus sequences from its own online databases that could help uncover how the pandemic started.[2]

The *New York Times* and the *Washington Post* have reported on requests to remove these sequences and this removal has added fuel to the SARS-CoV-2 origin debate.[3]

---

[1] "COVID Mortality Data," Johns Hopkins University (https://coronavirus.jhu.edu/data/mortality).
[2] "Fact Sheet on Activity at the Wuhan Institute of Virology," U.S. State Dep't (https://2017-2021.state.gov/fact-sheet-activity-at-the-wuhan-institute-of-virology/index.html)
[3] "Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted," *New York Times* (Jun 23, 2021); "Seattle scientist digs up deleted coronavirus genetic data, adding fuel to the covid origin debate," *Washington Post* (Jun 23, 2021).

According to the *Washington Post*, "The NIH released a statement Wednesday saying that a researcher who originally published the genetic sequences asked for them to be removed from the NIH database so that they could be included in a different database."[4] In a statement to the *Washington Post*, the NIH said:

> These SARS-CoV-2 sequences were submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020. The requestor indicated the sequence information had been updated, was being submitted to another database, and wanted the data removed from SRA to avoid version control issues.[5]

And, according to the *New York Times*:

> "These SARS-CoV-2 sequences were submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020," said Renate Myles, a spokeswoman for the National Institutes of Health. She said that the investigator, whom she did not name, told the archive managers that the sequences were being updated and would be added to a different database.[6]

Accordingly, please provide all records relating to the following:

1) All communications regarding the request to post the SARS-CoV-2 sequences to the Sequence Read Archive in March 2020. This request covers all communications between March 1, 2020 to March 31, 2020.

2) All communications regarding the request to withdraw the SARS-CoV-2 sequences from Sequence Read Archive in June 2020. This request covers all communications between June 1, 2020 to June 31, 2020.

3) All communications regarding these withdrawn sequences as reported by a preprint titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred Hutchinson Cancer Research Center.[7] This request covers all communications between Jesse Bloom and the NIH, from January 1, 2021 and the present. This request all covers all communications inside the NIH regarding the preprint from June 21, 2021 to the present.

4) All communications to, from, and within the NIH press office about the NIH statement released on June 23, 2021, and about reports that these sequences were removed from the Sequence Read Archive. This includes all emails related to the drafting of the statement, communications about the reported removal, and communications with reporters. This request covers all communications between June 21, 2021 to June 25, 2021.

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] "Recovery of deleted deep sequencing data sheds more light on the early Wuhan SARS-CoV-2 epidemic," *bioRxiv* (Jun 18, 2021).

**Fee Waiver Request**

Empower Oversight requests a waiver of fees associated with processing this request, in keeping with 5 U.S.C. § 552 (a)(4)(A)(iii). The information sought is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government. Empower Oversight is a non-profit organization as defined under Section 501(c)(3) of the Internal Revenue Code and has no commercial interest in making this request.  The public has a significant interest in understanding how this pandemic started. Empower Oversight is committed to government accountability and public integrity and is committed to public disclosure of documents via its website, and by providing these documents to the media for public dissemination.[8]

**Request for Expedited Processing**

Empower Oversight also requests expedited processing of this request. Understanding how the SARS-CoV-2 pandemic started is of massive public interest both in the United States and around the globe, particularly because understanding how this pandemic started can help us stop future pandemics. The information requested is urgently needed to inform the public concerning actual or alleged federal government activity, namely why were genetic sequences removed from a United States federal database when they could help understand how the pandemic started. The request is of widespread and exceptional media interest and the information sought involves questions about research integrity, which affect public confidence in the operations of NIH.  Empower Oversight is engaged in disseminating information to the public through its website and working with media.[9]  It is important that this request be processed and the results publicly disseminated as quickly as possible to help the country guard against future pandemics.

For ease of administration and to conserve resources, we ask that documents be produced in a readily accessible electronic format. In the event our request for a fee waiver is denied or if you have any questions about this request, please contact us immediately. Thank you for your prompt attention to this matter.

Cordially,

/Jason Foster/

Jason Foster
Founder & President

---

[8] "Mission," *Empower Oversight* (http://empowr.us/mission).
[9] *Id.*

# Exhibit 2



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

National Institutes of Health
Freedom of Information Office
Building 31, Room 5B-35
31 Center Drive, MSC 2107
Bethesda, Maryland 20892-2107
phone: (301) 496-5633
fax: (301) 402-4541

Via Email: info@empowr.us

February 7, 2022

Jason Foster
Founder & President
Empower Oversight
2615 Columbia Pike, #445
Arlington, VA 22204

Re: NIH FOIA Case No.: 56712 & 57203; Empower Oversight Whistleblowers & Research v.
NIH, Case No. 21-cv-01275

Dear Mr. Foster:

This is the final response to the Freedom of Information Act (FOIA) request that is the subject of
the complaint filed in *Empower Oversight Whistleblowers & Research v. NIH*, Case No. 21-cv-
01275, now pending in the U.S. District Court for Virginia. Your FOIA request 56712, dated
July 15, 2021, was received by the National Institutes of Health (NIH) FOIA Office, on the same
day. Your FOIA request 57203, dated October 12, 2021, was received by the National Institutes
of Health (NIH) FOIA Office, on the same day.

FOIA request 56712 requested:
    1) All communications regarding the request to post the SARS-CoV-2 sequences to the
    Sequence Read Archive in March 2020. This request covers all communications between
    March 1, 2020 to March 31, 2020.
    2) All communications regarding the request to withdraw the SARS-CoV-2 sequences
    from Sequence Read Archive in June 2020. This request covers all communications
    between June 1, 2020 to June 31, 2020.
    3) All communications regarding these withdrawn sequences as reported by a preprint
    titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan
    SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred Hutchinson Cancer
    Research Center.  This request covers all communications between Jesse Bloom and the
    NIH, from January 1, 2021 and the present. This request all covers all communications
    inside the NIH regarding the preprint from June 21, 2021 to the present.
    4) All communications to, from, and within the NIH press office about the NIH statement
    released on June 23, 2021, and about reports that these sequences were removed from the
    Sequence Read Archive. This includes all emails related to the drafting of the statement,
    communications about the reported removal, and communications with reporters. This
    request covers all communications between June 21, 2021 to June 25, 2021.

FOIA Request 57203 requested:

Page 2 – Mr. Foster (56712 & 57203; Empower. v. NIH, 21-cv-01275)

       1) All communications regarding the letter by Senators Grassley and Blackburn dated June 28, 2021.
       2) All communications regarding the NIH's response to Senators Grassley and Blackburn dated September 8, 2021. 3) All communications regarding the letter by Senators Grassley and Blackburn dated September 16, 2021.

 In accordance with the Court's order dated November 17, 2021, we have processed 255 pages of responsive records for this litigation. The information being withheld is protected from release pursuant to Exemptions (b)(5) and (b)(6) of the FOIA, 5 U.S.C. § 552 (b)(5) and (b)(6); and sections 5.31 (e) and (f) of the HHS FOIA Regulations, 45 CFR Part 5. Exemption 5 permits the withholding of internal government records which are pre-decisional and contain staff advice, opinion, and recommendations. This exemption is intended to preserve free and candid internal dialogue leading to decision-making. Exemption 6 permits the withholding of privacy information, the release of which would constitute a clearly unwarranted invasion of personal privacy.

Please direct any questions regarding this response to Meghan Loftus of the Department of Justice, who can be reached at meghan.loftus@usdoj.gov.

            Sincerely,

            *for* Gorka Garcia-Malene
            Freedom of Information Act Officer, NIH

# Attachment H-1

**From:** Bryan Saddler <bsaddler@empowr.us>
**Sent:** Thursday, February 24, 2022 12:52 PM
**To:** Garcia-Malene, Gorka (NIH/OD) [E] <gorka.garcia-malene@nih.gov>
**Cc:** Jason Foster <jf@empowr.us>
**Subject:** [EXTERNAL] Appeal of FOIA Request Number 57203

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are confident the content is safe.

Dear Mr. Garcia-Malene:  Attached is a letter appealing the NIH's February 7, 2022, response to Empower Oversight's September 30, 2021, FOIA request, which the NIH designated as FOIA Request Number 57203.

Referencing the litigation pending in connection with the FOIA request, the NIH's February 7th letter does not advise Empower Oversight how to appeal.  I note, however, that the HHS has a web-portal established to accept appeals of the NIH's FOIA responses.   But, in light of the litigation and the risk of the matter getting lost in the HHS's processes, I thought that it would be more efficient to forward the appeal to your attention and request your advice concerning the effectuation of service.  Please advise me if I need to send a copy of the appeal to the HHS's web-portal, if your office is unable or unwilling to accept the appeal.

Cordially, Bryan Saddler

# Attachment H




EMPOWR.us

February 24, 2022

**Via Electronic Transmission:** gorka.garcia-malene@nih.gov

Gorka Garcia-Malene,
    NIH Freedom of Information Institute/Center Coordinator
    Office of the Director
Building 31 Room 5B35
9000 Rockville Pike
Bethesda, MD 20892

**Via Electronic Transmission:** meghan.loftus@usdoj.gov

Meghan Loftus
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314

**RE:**    **Freedom of Information Act Appeal**
        **FOIA Request Number 57203**

Dear Mr. Garcia-Malene:

## INTRODUCTION

    With respect to the National Institutes of Health's ("SEC") Freedom of Information Act ("FOIA")[1] Request Number 57203, Empower Oversight Whistleblowers & Research ("Empower

---

[1] The FOIA is codified at 5 U.S.C. § 552.

Oversight")[2] appeals the NIH's February 7, 2022, initial determination on the grounds that NIH's FOIA staff:

- Did not perform a search for records that was reasonably calculated to find all responsive records; and

- Claimed FOIA Exemption b(5)—specifically for the deliberative process privilege—for records that were not both pre-decisional and deliberative.

Accordingly, Empower Oversight respectfully requests that the NIH review the nature and scope of its FOIA staff's records search and review, correct any deficiencies that are identified, and apprise Empower Oversight of the results of such review.

## BACKGROUND

1. Empower Oversight's September 30, 2021, FOIA Request

On September 30, 2021, Empower Oversight filed with the NIH a request for records under the FOIA.[3]  Empower Oversight's September 30th FOIA request seeks:

1. All communications regarding the letter by Senators Grassley and Blackburn dated June 28, 2021.

2. All communications regarding the NIH's response to Senators Grassley and Blackburn dated September 8, 2021.

3. All communications regarding the letter by Senators Grassley and Blackburn dated September 16, 2021.[4]

In addition, Empower Oversight requested: 1) a waiver of search and duplication fees associated with the NIH's processing of its FOIA request, and 2) expedited processing.

In support of its FOIA request, Empower Oversight explained that *The New York Times* and *The Washington Post*, among others, have reported on requests by Chinese researchers to have certain SARS-CoV-2 genetic sequences withdrawn from public access on the NIH's Sequence

---

[2] Empower Oversight is a nonpartisan, nonprofit educational organization, which is dedicated to enhancing independent oversight of government and corporate wrongdoing.  It works to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and seeks to hold those authorities accountable to act on such reports by, among other means, publishing information concerning the same.

[3] In compliance with the NIH's procedures, which require all requesters to submit their FOIA requests "through [the NIH's] online portal . . . rather than mail, fax, or courier," Empower Oversight registered with the NIH's online portal, and used it to submit its request.  *See*, NIH, *Submitting FOIA Requests* (Last Reviewed on March 27, 2020), available at https://www.nih.gov/institutes-nih/nih-office-director/office-communications-public-liaison/freedom-information-act-office/submitting-foia-requests.

[4] Empower Oversight's September 30th FOIA request is attached as Exhibit 1.

Read Archive ("SRA").[5]  Genetic sequences for SARS-CoV-2 virus are critical to understanding how the pandemic (which has killed more than 934,000 Americans)[6] started, and understanding the origin of the pandemic is essential to furthering the prevention of future pandemics.[7] Additionally, the State Department has noted that China has not been transparent in its handling of the question of the origin of SARS-CoV-2 and, as part of its hindrance of efforts to gain an understanding of the virus, has removed genetic sequences from its own online databases.[8]

On June 28, 2021, Senators Marsha Blackburn, Charles Grassley, and Roger Marshall sent the NIH a letter seeking records and answers to seven questions regarding the removal of the SARS-CoV-2 genetic sequences from public access on the SRA.  They received a response to their inquiry on September 8, 2021, that they stated "failed to fully and completely answer all seven questions and failed to provide the requested records."[9]  Senators Blackburn, Grassley, and Marshall then sent a follow up letter on September 16, 2021, demanding answers to their previous questions.[10]

Empower Oversight has no commercial interest in the records sought by its FOIA request, instead it seeks the requested records to contribute significantly to the public's understanding of understanding how the NIH is addressing the SARS-CoV-2 pandemic and how it responds to legitimate Congressional oversight requests.  Part of NIH's responsibility in that regard necessarily includes furthering efforts to determine the origin of the virus and prevent future pandemics.  The potential usefulness of the SARS-CoV-2 genetic sequences that NIH removed from the SRA has ignited an extraordinary interest among the public in research integrity generally and in the NIH's rationale for its removal of the SARS-CoV-2 genetic sequences from the SRA specifically.  Public confidence in the NIH's activities and operations is at stake, and thus it is Empower Oversight's intention to enlighten the public about these issues.

As November 17, 2021, Empower Oversight had not received any correspondence whatsoever from the NIH concerning its FOIA request, and thus it filed against the NIH a Complaint for Declaratory and Injunctive Relief—Civil Case Number 1:21-cv-01275—in the United States District Court for the Eastern District of Virginia.  Empower Oversight's complaint seeks, among other things, declarations that the NIH failed to file a timely determination and

---

[5] Zimmer, Carl, *Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted* (June 23, 2021), available at https://www.nytimes.com/2021/06/23/science/coronavirus-sequences.html; Achenbach, Joel, Guarino, Ben, Abutaleb, Yasmeen, *Seattle Scientist Digs up Deleted Coronavirus Genetic Data, Adding Fuel to the Covid Origin Debate* (June 23, 2021), available at https://www.washingtonpost.com/health/coronavirus-origin-nih-gene-sequence-deletion/2021/06/23/186e87d0-d437-11eb-a53a-3b5450fdca7a_story.html.

[6] Johns Hopkins University, *Mortality Analyses*, available at https://coronavirus.jhu.edu/data/mortality (last accessed on February 21, 2022).

[7] *See generally*, U.S. Department of State, *Fact Sheet: Activity at the Wuhan Institute of Virology*, available at https://2017-2021.state.gov/fact-sheet-activity-at-the-wuhan-institute-of-virology/index.html.

[8] U.S. Department of State, *Fact Sheet: Activity at the Wuhan Institute of Virology*, available at https://2017-2021.state.gov/fact-sheet-activity-at-the-wuhan-institute-of-virology/index.html.

[9] Press Release: *Did NIH Improperly Delete COVID-19 Data at Request of Chinese Researchers? Senators Want Answers* (September 16, 2021), available at https://www.grassley.senate.gov/news/news-releases/did-nih-improperly-delete-covid-19-data-at-request-of-chinese-researchers-senators-want-answers.

[10] Press Release: *Did NIH Improperly Delete COVID-19 Data at Request of Chinese Researchers? Senators Want Answers* (September 16, 2021), available at https://www.grassley.senate.gov/news/news-releases/did-nih-improperly-delete-covid-19-data-at-request-of-chinese-researchers-senators-want-answers.

promptly provide responsive records, an order requiring the NIH to perform a reasonable search and disclose all responsive, non-exempt records, and an award of costs and attorney's fees.

2. NIH's February 7, 2022, Response to Empower Oversight's FOIA Request

By letter dated February 7, 2022, the NIH responded to Empower Oversight's September 30th FOIA request.[11]  In its letter, the NIH designated the request as FOIA Request Number 57203, and produced 17 pages of records, many of which have been redated pursuant to FOIA Exemptions b(5) and b(6).[12]  With respect to FOIA Exemption b(5), the NIH explained that its redactions are limited to the deliberative process privilege:

> Exemption 5 permits the withholding of internal government records which are pre-decisional and contain staff advice, opinion, and recommendations. This exemption is intended to preserve free and candid internal dialogue leading to decision-making.

**ANALYSIS**

As discussed in detail below, the 17 pages of records that the NIH produced in response to FOIA Request Number 57203 include evidence indicating that the NIH's FOIA staff made significant errors when searching for responsive records and when reviewing responsive records for FOIA exemptions.

1. The NIH's Search for Responsive Records Was Not Reasonably Calculated to Locate All Records Responsive to Empower Oversight's FOIA Request

The legal standard governing the search for records responsive to FOIA requests requires an agency to conduct a search that is "reasonably calculated to uncover all relevant documents."[13]  Such calculation involves both an understanding of the nature and scope of the FOIA request and knowledge of where information may be stored within an agency.  In the former regard, courts have found searches to be sufficient when they are based on a reasonable interpretation of the scope of the subject matter of the request.[14]

Regarding the issue of knowledge of the contents of an agency's records storage platforms, an agency must show that it conducted a good faith, reasonable search of all platforms likely to possess the requested records.[15]  Hence, the reasonableness of an agency's search can often depend on whether the agency properly determined where responsive records were likely

---

[11] The NIH's February 7, 2021, response to Empower Oversight's September 30th FOIA request is attached as Exhibit 2.

[12] The 17 pages produced by the NIH, *i.e.*, NIH FOIA Request 57203_Redacted, is attached as Exhibit 3.

[13] Weisberg v. DOJ, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

[14] Larson v. Dep't of State, 565 F.3d 857, 869 (D.C. Cir. 2009) (affirming the adequacy of a search based on the agency's reasonable determination regarding records being requested).

[15] *See*, Marino v. DOJ, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (internal citation omitted).

to be found—and searched those locations,[16] or whether the agency improperly limited its search to certain platforms.[17]

Based upon 17 pages of records that the NIH produced as being all responsive records it possessed in connection with its "communications"[18] concerning the receipt and consideration of two information requests from United States Senators and its development of a response to the Senators', NIH could not possibly have conducted a good faith, reasonable search for all responsive records.  In that regard, the 17 pages are comprised of:

- Two internal NIH communication threads (pages 1 – 3);

- Senators Blackburn, Grassley, and Marshall's September 16, 2021, information request (pages 4 – 6);

- Senators Blackburn, Grassley, and Marshall's June 28, 2021, information request (pages 7 – 8);

- The NIH's September 8, 2021, responses to Senators Blackburn, Grassley, and Marshall's June 28th information request (pages 9 – 14),[19] and

- An annotated version of Senators Blackburn, Grassley, and Marshall's June 28th information request, with redacted text blocks with the headings "Response" following each of the Senators' seven requests (pages 15 – 17).[20]

Thus, in order for one to believe that the NIH produced all records responsive to Empower Oversight's September 30th FOIA request, one has to believe that sum total of the NIH's communications regarding two Congressional oversight requests is:

---

[16] *See*, Karantsalis v. DOJ, 635 F.3d 497, 500-501 (11th Cir. 2011) (affirming the district court's determination that the agency searched for records in the system most likely to store responsive records and described how it retrieved records from the system); Lechliter v. Rumsfeld, 182 F. App'x 113, 115-16 (3d Cir. 2006) (concluding that the agency fulfilled its duty to conduct a reasonable search when it searched two offices that it determined would be the only ones likely to possess responsive documents) (*citing* Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

[17] *See*, Morley v. CIA, 508 F.3d 1108, 1119-20 (D.C. Cir. 2007) (holding that because the agency retained copies of the records transferred to NARA and concedes that some transferred records are likely to be responsive, it was obligated to search those records in response to the FOIA request); Jefferson v. DOJ, 168 F. App'x 448, 450 (D.C. Cir. 2005) (reversing the district court's finding of a reasonable search when the agency offered no plausible justification for searching only its investigative database and the agency essentially acknowledged that responsive files might exist in a separate database); Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (holding that the agency may not limit its search to one record system if others are likely to contain responsive records).

[18] Empower Oversight's September 30th FOIA request defines "communications" as:

> 'COMMUNICATION(S)' means every manner or method of disclosure, exchange of information, statement, or discussion between or among two or more persons, including but not limited to, face-to-face and telephone conversations, correspondence, memoranda, telegrams, telexes, email messages, voice-mail messages, text messages, meeting minutes, discussions, releases, statements, reports, publications, and any recordings or reproductions thereof.

*See*, Exhibit 1.

[19] The NIH sent separate, but identical, responses to Senators Grassley, Blackburn, and Marshall.

[20] *See generally*, Exhibit 3, NIH FOIA Request 57203_Redacted.

- A June 28, 2021, thread of four emails assigning responsibility for responding to Senators Blackburn, Grassley, and Marshall's June 28th information request to the NIH's Office of Legislative and Policy Analysis ("OLPA"), which occurred over the course of 50 minutes (pages 2 – 3);

- A September 8, 2021, thread of two emails seeking the formal approval of the NIH's Executive Secretariat to sign the September 8th responses to Senators Blackburn, Grassley, and Marshall's June 28th information request (page 1); and

- An annotated version of Senators Blackburn, Grassley, and Marshall's June 28th information request, with redacted text blocks with the headings "Response" following each of the Senators' seven requests (pages 15 – 17).

If true, that would mean that the NIH has no records of:

- The receipt (and acknowledgement of receipt) of the Senators' June 28th and September 16th information requests;

- The parallel assignment of the response to the September 16th information request to an action office;

- Meeting invites or calendar entries for discussions of the Senators' June 28th and September 16th information requests and how to respond to them;

- Emails disseminating and vetting drafts of the September 8th response to Senators' June 28th information request; or

- A parallel annotated version of the Senators' September 16th information request, with proposed responses to their seven requests.

Moreover, courts tend to afford agencies a fair amount of leeway when determining the locations to search for responsive records, on the grounds that an agency generally "is not obliged to look beyond the four corners of [a FOIA] request for leads to the location of responsive" records.[21]  On the other hand, an agency "cannot in good faith ignore . . . a lead that is both clear and certain."[22]  For example, an agency cannot ignore a responsive document that "clearly indicates the existence of [other] relevant documents."[23]

---

[21] Kowalczyk v. DOJ, 73 F.3d 386, 389 (D.C. Cir. 1996).

[22] Kowalczyk, 73 F.3d at 389.

[23] Center for National Security Studies v. DOJ, 215 F. Supp. 2d 94, 110 (D.D.C. 2002) (holding that discovery of a document that "clearly indicates the existence of [other] relevant documents" creates an "obligation" for agency to further search for those additional documents), aff'd in part, rev'd in part & remanded on other grounds, 331 F.3d 918 (D.C. Cir. 2003); Tarullo v. DOD, 170 F. Supp. 2d 271, 275 (D. Conn. 2001) (declaring agency's search inadequate because "[w]hile hypothetical assertions as to the existence of unproduced responsive documents are insufficient to create a dispute of material fact as to the reasonableness of the search, plaintiff here has [himself provided copy of agency record] which appears to be responsive to the request"); Kronberg v. DOJ, 875 F. Supp. 861, 870 – 871 (D.D.C. 1995) (holding that search was inadequate when agency did not find records required to be maintained and plaintiff produced documents obtained by other FOIA requesters demonstrating that agency possessed files which may contain records sought).

The NIH produced a document that clearly indicates the existence of other records that it did not produce. In that regard, the NIH produced a September 8, 2021, email from Adrienne Hallett, the Associate Director of OLPA, to Lawrence Tabak and Patrice Allen-Gifford, with the Subject "Signature Approval for SRA Letters," that states:

> Hey LAT,
>
> Exec Sec needs your formal approval to sign the SRA response letters. I've attached the back and forth with [Francis Collins] last week to jog your memory if need be.
>
> Thanks!
> Adrienne[24]

As shown above, however, "the back and forth with" with the Director of NIH during the first week of September 2021 was not produced among the 17 pages that the NIH forwarded in response to FOIA Request Number 57203, either on its own or as an attachment to Ms. Hallett's September 8th email.

This evidence that the NIH failed to conduct a search that was reasonably calculated to lead to the discovery of all responsive records does not inspire confidence that the NIH has satisfied its search responsibilities under the FOIA. Hence, Empower Oversight respectfully requests that the NIH, subject to DOJ's monitoring, review the work of its FOIA staff, ascertain the nature and scope of their search plan, determine whether such plan was appropriate and followed,[25] correct any errors that are discovered, and apprise Empower Oversight of its findings.

2. <u>The NIH Asserted FOIA Exemption b(5) as Justification for Redacting Responsive Records that Are Not Both Pre-decisional and Deliberative</u>

Subsection b(5) of the FOIA provides that the FOIA "does not apply to matters that are":

> inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested.[26]

---

[24] *See*, Exhibit 3, NIH FOIA Request 57203_Redacted, p. 1.

[25] Additionally, Federal agencies shoulder the burden of demonstrating that their searches are reasonable, and they typically do this by describing their efforts in affidavits that they file in support of motions for summary judgment. *See, e.g.*, <u>Ethyl Corp. v. U.S. Environmental Protection Agency</u>, 25 F.3d 1241 (4th Cir. 1994); <u>Cochran v. Dep't of Homeland Security</u>, 2019 WL 1433014 (D. Md. March 28, 20199). However, an agency may not rely upon vague or conclusory affidavits to show that it has conducted a reasonable search. *See*, <u>Cochran</u>, 2019 WL 1433014, p. *5 – *6 (criticizing a conclusory FBI affidavit). Rather, a satisfactory "affidavit must be reasonably detailed, 'setting forth the search terms and the type of search performed and averring that all files likely to contain responsive materials (if such records exist) were searched' so as to give the requesting party an opportunity to challenge the adequacy of the search." <u>Ethyl Corp.</u>, 25 F.3d 1246 – 1247 (*quoting* <u>Oglesby v. U.S. Dep't of the Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990)). Accordingly, Empower Oversight requests that the NIH generate and share with Empower Oversight affidavits fully describing the search efforts of the NIH's FOIA staff.

[26] 5 U.S.C. § 552(b)(5).

Courts have construed FOIA Exemption b(5) to "exempt those documents, and only those documents, that are normally privileged in the civil discovery context."[27]  Although the United States Circuit Court of Appeals for the District of Columbia Circuit ("Circuit Court") has held that "all civil discovery rules" are incorporated into FOIA Exemption b(5),[28] the NIH's February 7th response to NIH FOIA Case Number 57203 appears to limit the NIH's reliance on the exemption to the deliberative process privilege (*i.e.*, the NIH states, "Exemption 5 permits the withholding of internal government records which are pre-decisional and contain staff advice, opinion, and recommendations").

The purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions."[29]  In this setting, the Circuit Court has explained that "quality" encompasses encouraging frank discussions during policy making, preventing advance disclosure of decisions, and protecting against public confusion that may result from disclosure of reasons or rationales that were not in fact the grounds for agency decisions.[30]

To claim the deliberative process privilege with respect to a record, the Circuit Court has held that an agency must show[31] that the record is "pre-decisional" (*i.e.*, "antecedent to the adoption of agency policy")[32] and "deliberative" (*i.e.*, "a direct part of the deliberative process in that it makes recommendations and expresses opinions on legal or policy matters").[33]

Unfortunately, it appears that the NIH, while purporting to follow FOIA Exemption b(5), may have redacted responsive records that are not deliberative.

To be "deliberative," a record must reflect[] the give-and-take of the consultative process," either by assessing the merits of a particular viewpoint, or by articulating the process used by the agency to formulate policy.[34]

Factual information, on the other hand, is not covered by the deliberative process privilege because the release of factual information does not expose the deliberations or opinions

---

[27] NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); *see also*, Martin v. Office of Special Counsel, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

[28] *See*, Martin, 819 F.2d at 1185.

[29] Sears, 421 U.S. at 151.

[30] *See*, Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Coastal States Gas Corp. v. DOE, 617 F.2d 854, 866 (D.C. Cir. 1980); Jordan v. DOJ, 591 F.2d 753, 772 – 773 (D.C. Cir. 1978).

[31] Coastal States Gas Corp., 617 F.2d at 866.

[32] *See*, Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011).

[33] *See*, Vaughn v. Rosen, 523 F.2d 1136, 1143 – 1144 (D.C. Cir. 1975).

[34] Coastal States Gas Corp., 617 F.2d at 867.

of agency personnel.[35]  Accordingly, factual information is typically available in civil discovery and its release is not considered to have a chilling effect on agency deliberations.[36]

Empower Oversight cannot see behind the NIH's redactions, but other records produced by the NIH raise serious questions regarding whether segregable factual information[37] is included within numerous large text block redactions that the NIH's FOIA staff has made. Specifically, the NIH produced an annotated version of Senators Blackburn, Grassley, and Marshall's June 28th information request, with redacted text blocks under the headings "Response" following each of the Senators' seven requests.[38]

The NIH also produced the September 16th responses that it actually transmitted to Senators Blackburn, Grassley, and Marshall.[39]  However, those response letters failed to include the specific answers to the Senators' enumerated questions, a fact which the Senators themselves noted.  Yet, the NIH did gather those answers in the "Response" paragraphs that are fully redacted from the documents produced to Empower Oversight.

The NIH's September 16th response to the Senators is not a policy document; rather, it is a partial response to the Senators' seven multipart requests for factual information about the NIH's SRA and the Wuhan University researcher's June 2020 request to withdraw SARS-CoV-2 genetic data from public access on the SRA.[40]  For example, the NIH's September 16th response provides:

- The SRA is managed by the NIH's National Center for Biotechnology Information ("NCBI"), which is a participating member of the International Nucleotide Sequence Database Collaboration ("INSDC"), and the NCBI follows the INSDC's policies for data submission and change requests with respect to data submitted to the SRA, in partial response to the Senators' first request;

- In March 2020, a researcher at Wuhan University submitted SARS-CoV-2 genetic sequences for public access on the SRA, and in June 2020 the same researcher requested that his/her sequences be withdrawn from public access because he/she was submitting updated sequences to different database and he/she wanted to prevent version confusion, in partial response to the Senators' third request;

---

[35] Coastal States Gas Corp., 617 F.2d at 867; see also, McGrady v. Mabus, 635 F. Supp. 2d 6, 18 – 21 (D.D.C. 2009) (distinguishing between draft letters and memoranda that may be deliberative and data used during a decision-making process, e.g., key personnel data and evaluation summaries used in promotion decisions, which contain only factual material and are not deliberative).

[36] See, EPA v. Mink, 410 U.S. 73, 87 – 88 (1973); see also, Montrose Chem. Corp. v. Train, 491 F.2d 63, 66 (D.C. Cir. 1974) (holding that release of factual material would not be "injurious" to decision making process).

[37] "[W]ith regard to any document an agency believes falls under a FOIA exemption, the agency is required to "undertake a 'segregability analysis,' in which it separates the exempt from the non-exempt portions of the document, and produces the relevant non-exempt information." People for the American Way Foundation v. National Park Service, 503 F. Supp. 2d 284, 306 (D.D.C. 2007) (quoting Edmonds Institute v. U.S., 383 F. Supp.2d 105, 108 (D.D.C. 2005)).

[38] See, Exhibit 3, NIH FOIA Request 57203_Redacted, pp. 15 – 17.

[39] See, Exhibit 3, NIH FOIA Request 57203_Redacted, pp. 9 – 14.

[40] See generally, Exhibit 3, NIH FOIA Request 57203_Redacted, pp. 9 – 14.

- "Withdrawal" of data from public accessibility on the SRA makes the data undiscoverable, but it but does not erase the data; rather, NCBI retains the "withdrawn" data for the scientific record and for disaster recovery, in partial response to the Senators' fourth request; and

- From January 2020 through June 2021, six institutions requested withdrawal of SARS-Co V-2 genetic sequence packages from "NCBI services." One request was from the Wuhan University researcher and the rest were from researchers at other institutions, predominantly domestic, in partial response to the Senators' seventh request.

Because the NIH's September 16th response to Senators Blackburn, Grassley, and Marshall's June 28th letter is replete with factual information that is partially responsive to their various requests, it is likely that the "Responses" that the NIH's FOIA staff redacted from the annotated version of Senators Blackburn, Grassley, and Marshall's June 28th information request also includes factual information that should have been produced to Empower Oversight without redaction.

The redaction in full of paragraphs that appear likely to contain the very information that the Senators publicly complained that the NIH withheld by failing to answer each of their enumerated questions raises reasonable suspicions. Do the redacted paragraphs contain additional relevant facts withheld from the Senators? Do they contain facts inconsistent with what was ultimately disclosed to the senators in the September 16th response?

This evidence that the NIH inappropriately used FOIA Exemption b(5)—*i.e.*, that while purporting to follow FOIA Exemption b(5), the NIH redacted responsive records that are not deliberative—does not inspire confidence that the NIH has satisfied its review responsibilities under the FOIA. Hence, Empower Oversight respectfully requests that the NIH, subject to DOJ's monitoring, analyze all of its FOIA staff's FOIA Exemption b(5) claims in response to FOIA Case Number 57203 to ensure that their claims are consistent with the accepted legal parameters of the exemption, correct any errors that are discovered, and apprise Empower Oversight of its findings.

Thank you for your time and consideration. Please don't hesitate to contact me with any questions.

Cordially,

/Jason Foster/

Jason Foster
Founder & President

# Exhibit 1

 

September 30, 2021

VIA ELECTRONIC TRANSMISSION: NIHFOIA@MAIL.NIH.GOV

National Institutes of Health
Building 31, Room 5B35
9000 Rockville Pike
Bethesda, MD 20892

RE: Records Regarding **NIH'S SARS**-COV-2 Database

Dear FOIA Officer:

## Introduction

Empower **Oversight Whistleblowers & Research ("Empower Oversight")** is a nonpartisan, nonprofit educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing.  We work to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and seek to hold those authorities accountable to act on those reports by, among other means, publishing information concerning the same.

## Background

*The New York Times* and *The Washington Post*, among others, have reported on requests by Chinese researchers to have certain SARS-CoV-2 genetic sequences withdrawn from the National Institutes of Health's ("NIH") Sequence Read Archive.[1] Genetic sequences for SARS-CoV-2 virus are critical to understanding how the pandemic (which has killed more than 670,000 Americans) started, and

---

[1] "Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted," New York Times (Jun 23, 2021); "Seattle scientist digs up deleted coronavirus genetic data, adding fuel to the covid origin debate," Washington Post (Jun 23, 2021).

understanding the origin of the pandemic is essential to furthering the prevention of future pandemics.[2]  Additionally, the State Department has noted that China has not been transparent in its handling of the question of the origin of SARS-CoV-2 and, as part of its hindrance of efforts to gain an understanding of the virus, has removed genetic sequences from its own online databases.[3]

On June 28, 2021, Senators **Charles Grassley and Marsha Blackburn** sent the NIH a letter seeking records and answers to seven questions regarding the removal of the SARS-CoV-2 genetic sequences from the Sequence Read Archive.  They received a response to their inquiry **on September 8, 2021, that they state "failed to fully and completely answer all seven questions and failed to provide the requested records."**[4] Senators Grassley and Blackburn then sent a follow up letter on September 16, 2021, demanding answers to their previous questions.[5]

## Records Request

To shed light on the manner in which the **NIH is addressing the** SARS-CoV-2 **pandemic and responding to information requests from members of Congress,** we respectfully request, pursuant to the **Freedom of Information Act ("FOIA"), 5 U.S.C.** § 552, copies of:

1. All communications regarding the letter by Senators Grassley and Blackburn dated June 28, 2021.
2. **All communications regarding the NIH's response to Senators Grassley and** Blackburn dated September 8, 2021.
3. All communications regarding the letter by Senators Grassley and Blackburn dated September 16, 2021.

## Definitions

**"COMMUNICATION(S)" means every manner or method of disclosure,** exchange of information, statement, or discussion between or among two or more persons, including but not limited to, face-to-face and telephone conversations, correspondence, memoranda, telegrams, telexes, email messages, voice-mail messages, text messages, meeting minutes, discussions, releases, statements, reports, publications, and any recordings or reproductions thereof.

**"DOCUMENT(S)" or "RECORD(S)" mean any kind of written, graphic, or** recorded matter, however produced or reproduced, of any kind or description,

---

[2] "COVID Mortality Data," Johns Hopkins University (https://coronavirus.jhu.edu/data/mortality)
[3] "Fact Sheet on Activity at the Wuhan Institute of Virology," U.S. State Dep't (https://2017-2021.state.gov/fact- sheet-activity-at-the-wuhan-institute-of-virology/index.html)
[4] https://www.grassley.senate.gov/news/news-releases/did-nih-improperly-delete-covid-19-data-at-request-of-chinese-researchers-senators-want-answers
[5] https://www.grassley.senate.gov/news/news-releases/did-nih-improperly-delete-covid-19-data-at-request-of-chinese-researchers-senators-want-answers

whether sent, received, or neither, including drafts, originals, non-identical copies, and information stored magnetically, electronically, photographically or otherwise. As used herein, the terms "DOCUMENT(S)" or "RECORD(S)" include, but are not limited to, studies, papers, books, accounts, letters, diagrams, pictures, drawings, photographs, correspondence, telegrams, cables, text messages, emails, memoranda, notes, notations, work papers, intra-office and inter-office communications, communications to, between and among employees, contracts, financial agreements, grants, proposals, transcripts, minutes, orders, reports, recordings, or other documentation of telephone or other conversations, interviews, affidavits, slides, statement summaries, opinions, indices, analyses, publications, questionnaires, answers to questionnaires, statistical records, ledgers, journals, lists, logs, tabulations, charts, graphs, maps, surveys, sound recordings, data sheets, computer printouts, tapes, discs, microfilm, and all other records kept, regardless of the title, author, or origin.

"PERSON" means individuals, entities, firms, organizations, groups, committees, regulatory agencies, governmental entities, business entities, corporations, partnerships, trusts, and estates.

"REFERS," "REFERRING TO," "REGARDS," REGARDING," "RELATES," "RELATING TO," "CONCERNS," "BEARS UPON," or "PERTAINS TO" mean containing, alluding to, responding to, commenting upon, discussing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, evidencing, setting forth, summarizing, or characterizing, either directly or indirectly, in whole or in part.

## Instructions

The time period of the requested records is June 28, 2021, through the present.

The words "and" and "or" shall be construed in the conjunctive or disjunctive, whichever is most inclusive.

The singular form shall include the plural form and vice versa.

The present tense shall include the past tense and vice versa.

In producing the records described above, you shall segregate them by reference to each of the numbered items of this FOIA request.

If you have any questions about this request, please contact Bryan Saddler by e-mail at bsaddler@empowr.us.

## Fee Waiver Request

Empower Oversight agrees to pay up to $25.00 in applicable fees, but notes **that it qualifies as a "news** media requester"[6] and requests a waiver of any fees that may be associated with processing this request, in keeping with 5 U.S.C. § 552 (a)(4)(A)(iii).

Empower Oversight is a non-profit educational organization as defined under Section 501(c)(3) of the Internal Revenue Code, which helps insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and seeks to hold those authorities accountable to act on such reports by, among other means, publishing information concerning the same.  Empower Oversight has no commercial interest in making this request.

Further, the information that Empower Oversight seeks is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the NIH.  Specifically, the public has a significant interest in understanding how the **NIH is addressing the** SARS-CoV-2 **pandemic and responding to information requests from members of Congress**.  Empower Oversight is committed to government accountability, public integrity, and transparency.  In the latter regard, the information that that Empower Oversight receives that tends to explain **the NIH's practices will be disclosed publicly** via its website, and shared copies with other news media for public dissemination.[7]

## Request for Expedited Processing

Although Empower Oversight fully expects the NIH to respond to this FOIA request within the 20 business days allotted by the FOIA, it requests expedited processing. Understanding how the NIH responds to FOIA requests can enlighten the public concerning **why** SARS-CoV-2 **genetic sequences were removed from a United States' federal database when they could help researchers establish how the pandemic started. The request is of widespread and exceptional media interest and the information sought involves questions about research integrity that affect public confidence in the activities and operations of the NIH**.  Empower Oversight is engaged in disseminating information to the public through its website and working with media.[8]  Accordingly, it is important that this request be processed and the results publicly disseminated as quickly as possible.

---

[6] As the Securities Exchange Commission recently conceded, with its issuances of 'press releases' describing its activities and findings, and its emails of research papers, FOIA updates, and news accounts of its activities to an address list more than 9,400 members of the press, Capitol Hill staff, and key thought leaders, Empower Oversight qualifies as a news media requester for purposes of fees assessed pursuant to the FOIA.

[7] **"Mission,"** Empower Oversight (http://empowr.us/mission).

[8] **"Mission,"** Empower Oversight (http://empowr.us/mission).

For ease of administration and to conserve resources, we ask that documents be produced in a readily accessible electronic format.  In the event our request for a fee waiver is denied or if you have any questions about this request, please contact us immediately.  Thank you for your prompt attention to this matter.

Cordially,

/S/

Jason Foster
Founder & President

# Exhibit 2



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

National Institutes of Health
Freedom of Information Office
Building 31, Room 5B-35
31 Center Drive, MSC 2107
Bethesda, Maryland 20892-2107
phone: (301) 496-5633
fax: (301) 402-4541

Via Email: info@empowr.us

February 7, 2022

Jason Foster
Founder & President
Empower Oversight
2615 Columbia Pike, #445
Arlington, VA 22204

Re: NIH FOIA Case No.: 56712 & 57203; Empower Oversight Whistleblowers & Research v.
NIH, Case No. 21-cv-01275

Dear Mr. Foster:

This is the final response to the Freedom of Information Act (FOIA) request that is the subject of
the complaint filed in *Empower Oversight Whistleblowers & Research v. NIH*, Case No. 21-cv-
01275, now pending in the U.S. District Court for Virginia. Your FOIA request 56712, dated
July 15, 2021, was received by the National Institutes of Health (NIH) FOIA Office, on the same
day. Your FOIA request 57203, dated October 12, 2021, was received by the National Institutes
of Health (NIH) FOIA Office, on the same day.

FOIA request 56712 requested:
    1) All communications regarding the request to post the SARS-CoV-2 sequences to the
    Sequence Read Archive in March 2020. This request covers all communications between
    March 1, 2020 to March 31, 2020.
    2) All communications regarding the request to withdraw the SARS-CoV-2 sequences
    from Sequence Read Archive in June 2020. This request covers all communications
    between June 1, 2020 to June 31, 2020.
    3) All communications regarding these withdrawn sequences as reported by a preprint
    titled "Recovery of deleted deep sequencing data sheds more light on the early Wuhan
    SARS-CoV-2 epidemic" by Jesse Bloom, a virologist at the Fred Hutchinson Cancer
    Research Center.  This request covers all communications between Jesse Bloom and the
    NIH, from January 1, 2021 and the present. This request all covers all communications
    inside the NIH regarding the preprint from June 21, 2021 to the present.
    4) All communications to, from, and within the NIH press office about the NIH statement
    released on June 23, 2021, and about reports that these sequences were removed from the
    Sequence Read Archive. This includes all emails related to the drafting of the statement,
    communications about the reported removal, and communications with reporters. This
    request covers all communications between June 21, 2021 to June 25, 2021.

FOIA Request 57203 requested:

Page 2 – Mr. Foster (56712 & 57203; Empower. v. NIH, 21-cv-01275)

1) All communications regarding the letter by Senators Grassley and Blackburn dated June 28, 2021.
2) All communications regarding the NIH's response to Senators Grassley and Blackburn dated September 8, 2021. 3) All communications regarding the letter by Senators Grassley and Blackburn dated September 16, 2021.

In accordance with the Court's order dated November 17, 2021, we have processed 255 pages of responsive records for this litigation. The information being withheld is protected from release pursuant to Exemptions (b)(5) and (b)(6) of the FOIA, 5 U.S.C. § 552 (b)(5) and (b)(6); and sections 5.31 (e) and (f) of the HHS FOIA Regulations, 45 CFR Part 5. Exemption 5 permits the withholding of internal government records which are pre-decisional and contain staff advice, opinion, and recommendations. This exemption is intended to preserve free and candid internal dialogue leading to decision-making. Exemption 6 permits the withholding of privacy information, the release of which would constitute a clearly unwarranted invasion of personal privacy.

Please direct any questions regarding this response to Meghan Loftus of the Department of Justice, who can be reached at meghan.loftus@usdoj.gov.

Sincerely,

*for* Gorka Garcia-Malene
Freedom of Information Act Officer, NIH

# Exhibit 3

**From:**      Tabak, Lawrence (NIH/OD) [E]
**Sent:**      Wed, 8 Sep 2021 14:44:08 -0500
**To:**        Hallett, Adrienne (NIH/OD) [E];Allen-Gifford, Patrice (NIH/OD) [E]
**Cc:**        Cramer, Lindsay (NIH/OD) [E]
**Subject:**   Re: Signature Approval for SRA letters


please proceed.
thanks


**From:** "Hallett, Adrienne (NIH/OD) [E]"                                (b) (6)
**Date:** Wednesday, September 8, 2021 at 3:40 PM
**To:** "Tabak, Lawrence (NIH/OD) [E]"                        (b) (6)    , "Allen-Gifford, Patrice
(NIH/OD) [E]"                                        (b) (6)
**Cc:** "Cramer, Lindsay (NIH/OD) [E]"                            (b) (6)
**Subject:** Signature Approval for SRA letters


Hey LAT,

Exec Sec needs your formal approval to sign the SRA response letters.  I've attached the back and forth
with FC last week to jog your memory if need be.

Thanks!
Adrienne

**From:**          Downs, Austin (NIH/OD) [C]
**Sent:**          Mon, 28 Jun 2021 14:24:32 -0500
**To:**             McMahon, Christine (NIH/OD) [E]
**Subject:**      RE: Incoming Congressional from Blackburn/Grassley/Marshall (WF 400559)

Per guidance from Higgins, please assign the letter to OLPA with necessary action/input from NLM.

Please let me know if there is anything else I can help you with on this matter.

Thank you kindly,
Austin

---

**From:** McMahon, Christine (NIH/OD) [E]        (b) (6)
**Sent:** Monday, June 28, 2021 2:08 PM
**To:** Downs, Austin (NIH/OD) [C]      (b) (6) >
**Subject:** RE: Incoming Congressional from Blackburn/Grassley/Marshall (WF 400559)

Great, thanks very much for checking!

Best,
Christine

---

**From:** Downs, Austin (NIH/OD) [C]      (b) (6)
**Sent:** Monday, June 28, 2021 2:08 PM
**To:** McMahon, Christine (NIH/OD) [E]     (b) (6)
**Subject:** RE: Incoming Congressional from Blackburn/Grassley/Marshall (WF 400559)

Good afternoon Christine, let me check with Lauren Higgins and get back to you with how we would like to proceed.

Thank you,
Austin

---

**From:** McMahon, Christine (NIH/OD) [E]        (b) (6)
**Sent:** Monday, June 28, 2021 1:44 PM
**To:** Downs, Austin (NIH/OD) [C]      (b) (6)
**Subject:** Incoming Congressional from Blackburn/Grassley/Marshall (WF 400559)

Hi Austin,

I wanted to check with you on how ES should assign the attached incoming Congressional letter. Is OLPA taking the lead, or should NLM be the lead?

Thank you!
Christine

Christine McMahon
Executive Secretariat
National Institutes of Health
(b) (6)



## United States Senate

WASHINGTON, DC 20510

September 16, 2021

**VIA ELECTRONIC TRANSMISSION**

Francis S. Collins, M.D., Ph.D
Director
National Institutes of Health
9000 Rockville Pike
Bethesda, MD 20892

Dear Dr. Collins:

On June 28, 2021, we wrote to you requesting answers to seven questions pertaining to the NIH's role and responsibility with respect to the Sequence Read Archive (SRA) relating to COVID-19 data.  On September 8, 2021, your office provided a response that failed to fully and completely answer all seven questions and failed to provide the requested records.

As we have made clear to you, Congress has a constitutional responsibility to engage in oversight of the executive branch and the executive branch has an obligation to Congress and the American people to substantively respond.  In light of our responsibility and your obligation in that regard, we are reposing the unanswered questions from our June 28, 2021, letter.  If you are unable to respond to each question and provide the requested records, please explain why that is the case.

In addition, we'd like to note that in your most recent letter, you stated that the National Center for Biotechnology Information has initiated "an independent review of the [Sequence Read Archive] processes and standard operating procedures" with respect to the withdrawal request relating to the COVID-19 data.[1]  You also noted that NIH "conducted an analysis of withdrawal requests from January 2020 through June 2021."[2]  With that in mind, we request the final report of investigation, or an equivalent document, for the latter review and an explanation for why that review was done.  Further, we request that you answer several additional questions, provide the requested records and schedule a briefing to address your answers no later than September 30, 2021:

---

[1] Letter from Lawrence A. Tabak, Principal Deputy Director, NIH, to Sens. Grassley, Blackburn, Marshall (Sept. 10, 2021).
[2] *Id.*

1.  With respect to deleting data from the NIH Sequence Archive, please name all personnel that have the authority to do so.  In your answer, please provide the names and titles of the personnel that were involved in the deletion of SARS-CoV-2 data.

2.  With respect to the *Wall Street Journal* report, which Chinese researcher(s) requested that the data be deleted from the NIH Sequence Read Archive?[3]  When did the deletion occur?

3.  After deletion, does the NIH Sequence Read Archive maintain any accessible back-up of the deleted data?  If so, please provide all records to us.

4.  Please list all collaborating partners to the NIH Sequence Read Archive.

5.  In the past five years, how many researchers and other personnel associated with the communist Chinese government, as well as those not associated with the Chinese regime, have requested that data be deleted from the NIH Sequence Read Archive?  Please list by requestor, date, reason, and the information to be deleted. Please also note whether and when that material was in fact deleted.

6.  More specifically, in the past five years, how many researchers and other personnel associated with the communist Chinese government, as well as those not associated with the Chinese regime, have requested that data be deleted from the NIH Sequence Read Archive relating to coronaviruses?  Please list by requestor, date, reason, and the information to be deleted.  Please also note whether and when that material was in fact deleted.

7.  In your letter, you stated NCBI has initiated "an independent review of the SRA processes and standard operating procedures" with respect to the withdrawal request relating to the COVID-19 data.
    a.  When was that review initiated?
    b.  Which unit and personnel will be involved in the review?
    c.  What are the other countries that have requested withdrawal of data from the database?
    d.  Do you plan to analyze withdrawal requests that occurred prior to the COVID-19 outbreak? If not, why not?

---

[3] Amy Dockser Marcus, Betsy McKay, Drew Hinshaw, *Chinese Covid-19 Gene Data That Could Have Aided Pandemic Research Removed from NIH Database*, Wall St. J. (June 23, 2021), https://www.wsj.com/articles/covid-19-gene-data-that-could-have-aided-research-on-early-epidemic-removed-from-database-11624472105; Amy Dockser Marcus and Drew Hinshaw, *After Covid-19 Data Is Deleted, NIH Reviews How its Gene Archive Is Handled*, Wall St. J. (Sept. 13, 2021). https://www.wsj.com/articles/after-covid-19-data-is-deleted-nih-reviews-how-its-gene-archive-is-handled-11631545490

Thank you for your attention to this important matter.

Sincerely,

Charles E. Grassley
Ranking Member
Committee on the Judiciary

Marsha Blackburn
U.S. Senator

Roger Marshall, M.D.
U.S. Senator



# United States Senate

WASHINGTON, DC 20510

June 28, 2021

**VIA ELECTRONIC TRANSMISSION**

Francis S. Collins, M.D., Ph.D
Director
National Institutes of Health
9000 Rockville Pike
Bethesda, MD  20892

Dear Dr. Collins:

On June 23, 2021, the *Wall Street Journal* reported that Chinese researchers "directed" the National Institutes of Health (NIH) "to delete gene sequences of early COVID-19 cases from a key scientific database," called the NIH Sequence Read Archive.[1] The article states that NIH confirmed that it deleted the sequences.[2]  The article further reports that the deleted data includes genomic sequences from SARS-CoV-2 and that these sequences were from viral samples collected in Wuhan "in January and February 2020" from patients in the hospital.[3]

This type of data may contain important and relevant information that could help to better determine the virus's origins.  The efforts by Chinese researchers to delete the data demands additional explanation.  As you are aware, the Chinese government has failed, from the beginning, to be open and transparent with the world with respect to its role in the pandemic.

The COVID-19 pandemic has resulted in more than 600,000 deaths, and Congress has spent trillions of dollars to support the American people, businesses, and the economy during these difficult times.  Simply put, the American people deserve to know what their government knows about the origins of this global illness. As part of our continuing oversight with respect to NIH's role during the COVID-19 pandemic, we request additional information about the NIH Sequence Read Archive and the actions taken by Chinese researchers to have NIH delete SARS-CoV-2 related data.  Accordingly, please answer the following no later than July 12, 2021:

1.  Please describe, in detail, how and under what circumstances data can be provided to the NIH Sequence Read Archive and how and under what circumstances data can be deleted from the same.

---

[1] https://www.wsj.com/articles/covid-19-gene-data-that-could-have-aided-research-on-early-epidemic-removed-from-database-11624472105?mod=searchresults_pos1&page=1
[2] *Id.*
[3] *Id.*

2. With respect to deleting data from the NIH Sequence Archive, please name all personnel that have the authority to do so.  In your answer, please provide the names and titles of the personnel that were involved in the deletion of SARS-CoV-2 data.

3. With respect to the *Wall Street Journal* report, which Chinese researcher(s) requested that the data be deleted from the NIH Sequence Read Archive?  When was the request made and when did the deletion occur?

4. After deletion, does the NIH Sequence Read Archive maintain any accessible back-up of the deleted data?  If so, please provide all records to us.

5. Please list all collaborating partners to the NIH Sequence Read Archive.

6. In the past five years, how many researchers and other personnel associated with the communist Chinese government have requested that data be deleted from the NIH Sequence Read Archive?  Please list by requestor, date, reason, and the information to be deleted. Please also note whether and when that material was in fact deleted.

7. More specifically, in the past five years, how many researchers and other personnel associated with the communist Chinese government have requested that data be deleted from the NIH Sequence Read Archive relating to coronaviruses?  Please list by requestor, date, reason, and the information to be deleted.  Please also note whether and when that material was in fact deleted.

Thank you for your attention to this important matter.

Sincerely,

Marsha Blackburn
U.S. Senator

Charles E. Grassley
U.S. Senator

Roger Marshall
U.S. Senator

**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Public Health Service

                                                            National Institutes of Health
                                                            Bethesda, Maryland 20892

September 8, 2021

The Honorable Marsha Blackburn
United States Senate
Washington, DC  20510

Dear Senator Blackburn:

Thank you for your June 28, 2021, letter regarding the National Library of Medicine's (NLM)
Sequence Read Archive (SRA).

Early in the pandemic, the National Institutes of Health (NIH) and other federal agencies moved
quickly to make COVID-19 open-access data and computational resources freely available to
researchers.  NIH's National Library of Medicine (NLM) has a broad portfolio of open-access
databases, including the Sequence Read Archive (SRA), the world's largest publicly available
repository of high-throughput sequencing data.  In the past year, SRA received approximately
2.4 million submissions of sequence data.

SRA is managed by NLM's National Center for Biotechnology Information (NCBI), which is the
U.S. participating member of the International Nucleotide Sequence Database Collaboration
(INSDC) since 1987.  NCBI follows the INSDC policies[1] and guidelines for data submission and
change requests,[2] and collaborates with participating organizations in updating policies and
guidelines as described in this 2018 article.[3]

The guidelines describe the criteria for which submitting researchers can request a change in data
status (for example, if the data have been corrupted) and actions taken if the criteria are met.
Submitting institutions must contact NLM/NCBI to request that data be withdrawn.  NLM/NCBI
staff review the request against the INSDC guidelines.

In March 2020, the SARS-CoV-2 sequences you mention in your letter were submitted by a
researcher at Wuhan University for public release status via SRA.  The researcher from Wuhan
University published relevant information about these sequences by preprint in March 2020[4] and
in an international scientific journal in June 2020.[5]  In June 2020, NCBI received a request to
withdraw the sequences from the same researcher.  The reason given by the researcher was they
were depositing updated data in a different database and they wanted to prevent version
confusion.  In response, NCBI withdrew the sequences from the SRA but they remained

---

[1] https://www.insdc.org/policy.html
[2] https://www.insdc.org/documents/insdc-status-document
[3] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5753279/
[4] https://www.medrxiv.org/content/10.1101/2020.03.04.20029538v1
[5] https://onlinelibrary.wiley.com/doi/full/10.1002/smll.202002169

The Honorable Marsha Blackburn
Page 2

available to the world's scientists and researchers through the publication and on other platforms. No conditions were made on that request and no conditions were granted.

NIH subsequently conducted an analysis of withdrawal requests from January 2020 through June 2021. Withdrawal requests were generally submitted for scientific reasons. Examples include problems with the quality of the data, data were not correctly attributed to their owner, or data were not correctly identified. In that time, six institutions requested withdrawal of SARS-CoV-2 submission packages through NLM/NCBI services. This included the one requested by the researcher at Wuhan University and the rest from researchers at institutions from other countries, predominantly the U.S. In addition, NCBI received withdrawal requests from five institutions through INSDC collaborators for sequence data that were in the collaborating repositories and were replicated within the SRA.

While NIH considers the policies and guidelines of the INSDC sound, NCBI has initiated an independent review of SRA processes and standard operating procedures to determine whether the appropriate steps were taken to assess this withdrawal request. Withdrawal makes the data undiscoverable but does not erase it. Per the INSDC guidelines, NCBI retains withdrawn data for the scientific record and for disaster recovery. Pending outcome of the review, NCBI will work with INDSC to assign the data to the appropriate status.

Thank you for your interest in NIH's National Library of Medicine's broad portfolio of open-access databases. I hope this information is helpful to you. I have also sent an identical letter to the co-signers of your letter.

Sincerely,

(b) (6)

Lawrence A. Tabak, D.D.S., Ph.D.
Principal Deputy Director

**DEPARTMENT OF HEALTH & HUMAN SERVICES**         Public Health Service

National Institutes of Health
Bethesda, Maryland 20892

September 8, 2021

The Honorable Charles E. Grassley
United States Senate
Washington, DC  20510

Dear Senator Grassley:

Thank you for your June 28, 2021, letter regarding the National Library of Medicine's (NLM)
Sequence Read Archive (SRA).

Early in the pandemic, the National Institutes of Health (NIH) and other federal agencies moved
quickly to make COVID-19 open-access data and computational resources freely available to
researchers.  NIH's National Library of Medicine (NLM) has a broad portfolio of open-access
databases, including the Sequence Read Archive (SRA), the world's largest publicly available
repository of high-throughput sequencing data.  In the past year, SRA received approximately
2.4 million submissions of sequence data.

SRA is managed by NLM's National Center for Biotechnology Information (NCBI), which is the
U.S. participating member of the International Nucleotide Sequence Database Collaboration
(INSDC) since 1987.  NCBI follows the INSDC policies[1] and guidelines for data submission and
change requests,[2] and collaborates with participating organizations in updating policies and
guidelines as described in this 2018 article.[3]

The guidelines describe the criteria for which submitting researchers can request a change in data
status (for example, if the data have been corrupted) and actions taken if the criteria are met.
Submitting institutions must contact NLM/NCBI to request that data be withdrawn.  NLM/NCBI
staff review the request against the INSDC guidelines.

In March 2020, the SARS-CoV-2 sequences you mention in your letter were submitted by a
researcher at Wuhan University for public release status via SRA.  The researcher from Wuhan
University published relevant information about these sequences by preprint in March 2020[4] and
in an international scientific journal in June 2020.[5]  In June 2020, NCBI received a request to
withdraw the sequences from the same researcher.  The reason given by the researcher was they
were depositing updated data in a different database and they wanted to prevent version
confusion.  In response, NCBI withdrew the sequences from the SRA but they remained

---

[1] https://www.insdc.org/policy.html
[2] https://www.insdc.org/documents/insdc-status-document
[3] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5753279/
[4] https://www.medrxiv.org/content/10.1101/2020.03.04.20029538v1
[5] https://onlinelibrary.wiley.com/doi/full/10.1002/smll.202002169

The Honorable Charles E. Grassley
Page 2

available to the world's scientists and researchers through the publication and on other platforms. No conditions were made on that request and no conditions were granted.

NIH subsequently conducted an analysis of withdrawal requests from January 2020 through June 2021. Withdrawal requests were generally submitted for scientific reasons. Examples include problems with the quality of the data, data were not correctly attributed to their owner, or data were not correctly identified. In that time, six institutions requested withdrawal of SARS-CoV-2 submission packages through NLM/NCBI services. This included the one requested by the researcher at Wuhan University and the rest from researchers at institutions from other countries, predominantly the U.S. In addition, NCBI received withdrawal requests from five institutions through INSDC collaborators for sequence data that were in the collaborating repositories and were replicated within the SRA.

While NIH considers the policies and guidelines of the INSDC sound, NCBI has initiated an independent review of SRA processes and standard operating procedures to determine whether the appropriate steps were taken to assess this withdrawal request. Withdrawal makes the data undiscoverable but does not erase it. Per the INSDC guidelines, NCBI retains withdrawn data for the scientific record and for disaster recovery. Pending outcome of the review, NCBI will work with INDSC to assign the data to the appropriate status.

Thank you for your interest in NIH's National Library of Medicine's broad portfolio of open-access databases. I hope this information is helpful to you. I have also sent an identical letter to the co-signers of your letter.

Sincerely,

(b) (6)

Lawrence A. Tabak, D.D.S., Ph.D.
Principal Deputy Director

**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Public Health Service

                                                            National Institutes of Health
                                                            Bethesda, Maryland 20892

September 8, 2021

The Honorable Roger Marshall
United States Senate
Washington, DC  20510

Dear Senator Marshall:

Thank you for your June 28, 2021, letter regarding the National Library of Medicine's (NLM) Sequence Read Archive (SRA).

Early in the pandemic, the National Institutes of Health (NIH) and other federal agencies moved quickly to make COVID-19 open-access data and computational resources freely available to researchers.  NIH's National Library of Medicine (NLM) has a broad portfolio of open-access databases, including the Sequence Read Archive (SRA), the world's largest publicly available repository of high-throughput sequencing data.  In the past year, SRA received approximately 2.4 million submissions of sequence data.

SRA is managed by NLM's National Center for Biotechnology Information (NCBI), which is the U.S. participating member of the International Nucleotide Sequence Database Collaboration (INSDC) since 1987.  NCBI follows the INSDC policies[1] and guidelines for data submission and change requests,[2] and collaborates with participating organizations in updating policies and guidelines as described in this 2018 article.[3]

The guidelines describe the criteria for which submitting researchers can request a change in data status (for example, if the data have been corrupted) and actions taken if the criteria are met. Submitting institutions must contact NLM/NCBI to request that data be withdrawn.  NLM/NCBI staff review the request against the INSDC guidelines.

In March 2020, the SARS-CoV-2 sequences you mention in your letter were submitted by a researcher at Wuhan University for public release status via SRA.  The researcher from Wuhan University published relevant information about these sequences by preprint in March 2020[4] and in an international scientific journal in June 2020.[5]  In June 2020, NCBI received a request to withdraw the sequences from the same researcher.  The reason given by the researcher was they were depositing updated data in a different database and they wanted to prevent version confusion.  In response, NCBI withdrew the sequences from the SRA but they remained

---

[1] https://www.insdc.org/policy.html
[2] https://www.insdc.org/documents/insdc-status-document
[3] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5753279/
[4] https://www.medrxiv.org/content/10.1101/2020.03.04.20029538v1
[5] https://onlinelibrary.wiley.com/doi/full/10.1002/smll.202002169

available to the world's scientists and researchers through the publication and on other platforms. No conditions were made on that request and no conditions were granted.

NIH subsequently conducted an analysis of withdrawal requests from January 2020 through June 2021. Withdrawal requests were generally submitted for scientific reasons. Examples include problems with the quality of the data, data were not correctly attributed to their owner, or data were not correctly identified. In that time, six institutions requested withdrawal of SARS-CoV-2 submission packages through NLM/NCBI services. This included the one requested by the researcher at Wuhan University and the rest from researchers at institutions from other countries, predominantly the U.S. In addition, NCBI received withdrawal requests from five institutions through INSDC collaborators for sequence data that were in the collaborating repositories and were replicated within the SRA.

While NIH considers the policies and guidelines of the INSDC sound, NCBI has initiated an independent review of SRA processes and standard operating procedures to determine whether the appropriate steps were taken to assess this withdrawal request. Withdrawal makes the data undiscoverable but does not erase it. Per the INSDC guidelines, NCBI retains withdrawn data for the scientific record and for disaster recovery. Pending outcome of the review, NCBI will work with INDSC to assign the data to the appropriate status.

Thank you for your interest in NIH's National Library of Medicine's broad portfolio of open-access databases. I hope this information is helpful to you. I have also sent an identical letter to the co-signers of your letter.

Sincerely,

(b) (6)

Lawrence A. Tabak, D.D.S., Ph.D.
Principal Deputy Director

June 28, 2021

**VIA ELECTRONIC TRANSMISSION**

Francis S. Collins, M.D., Ph.D
Director
National Institutes of Health
9000 Rockville Pike
Bethesda, MD 20892

Dear Dr. Collins:

On June 23, 2021, the *Wall Street Journal* reported that Chinese researchers "directed" the National Institutes of Health (NIH) "to delete gene sequences of early COVID-19 cases from a key scientific database," called the NIH Sequence Read Archive.[1] The article states that NIH confirmed that it deleted the sequences.[2] The article further reports that the deleted data includes genomic sequences from SARS-CoV-2 and that these sequences were from viral samples collected in Wuhan "in January and February 2020" from patients in the hospital.[3]

This type of data may contain important and relevant information that could help to better determine the virus's origins. The efforts by Chinese researchers to delete the data demands additional explanation. As you are aware, the Chinese government has failed, from the beginning, to be open and transparent with the world with respect to its role in the pandemic.

The COVID-19 pandemic has resulted in more than 600,000 deaths, and Congress has spent trillions of dollars to support the American people, businesses, and the economy during these difficult times. Simply put, the American people deserve to know what their government knows about the origins of this global illness. As part of our continuing oversight with respect to NIH's role during the COVID-19 pandemic, we request additional information about the NIH Sequence Read Archive and the actions taken by Chinese researchers to have NIH delete SARS-CoV-2 related data. Accordingly, please answer the following no later than July 12, 2021:

1.  Please describe, in detail, how and under what circumstances data can be provided to the NIH Sequence Read Archive and how and under what circumstances data can be deleted from the same.

**Response**:

(b) (5)

---

[1] https://www.wsj.com/articles/covid-19-gene-data-that-could-have-aided-research-on-early-epidemic-removed-from-database-11624472105?mod=searchresults_pos1&page=1
[2] Id.
[3] Id.

(b) (5)

2.  With respect to deleting data from the NIH Sequence Archive, please name all personnel that have the authority to do so. In your answer, please provide the names and titles of the personnel that were involved in the deletion of SARS-CoV-2 data.

    **Response:**

    (b) (5)

3.  With respect to the *Wall Street Journal* report, which Chinese researcher(s) requested that the data be deleted from the NIH Sequence Read Archive? When was the request made and when did the deletion occur?

    **Response**:

    (b) (5)

4.  After deletion, does the NIH Sequence Read Archive maintain any accessible back-up of the deleted data? If so, please provide all records to us.

    **Response**:

    (b) (5)

5.  Please list all collaborating partners to the NIH Sequence Read Archive.

    **Response**:



(b) (5)

6.  In the past five years, how many researchers and other personnel associated with the communist Chinese government have requested that data be deleted from the NIH Sequence Read Archive? Please list by requestor, date, reason, and the information to be deleted. Please also note whether and when that material was in fact deleted.

**Response**:

(b) (5)

7.  More specifically, in the past five years, how many researchers and other personnel associated with the communist Chinese government have requested that data be deleted from the NIH Sequence Read Archive relating to coronaviruses? Please list by requestor, date, reason, and the information to be deleted. Please also note whether and when that material was in fact deleted.

**Response**:

(b) (5)

Thank you for your attention to this important matter.

                          Sincerely,

Marsha Blackburn                    Charles E. Grassley
U.S. Senator                        U.S. Senator

Roger Marshall
U.S. Senator