**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

EMPOWER OVERSIGHT )
WHISTLEBLOWERS & RESEARCH, )
                                       )
                 Plaintiff, )
                                         )     No. 1:21-CV-1275-LMB/JFA
     v. )
                                         )
NATIONAL INSTITUTES OF HEALTH )
                                         )
               Defendant. )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Empower Oversight brought this suit to compel the National Institutes of Health (NIH) to comply with the Freedom of Information Act, which establishes a statutory right of public access to federal agency records. No court should construe this right to information "as a convenient formalism." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). "It defines a structural necessity in a real democracy." *Id.*

NIH suggests that it has fulfilled its statutory obligations under FOIA, and the agency urges this Court to grant judgment in its favor. Yet the agency's arguments cannot withstand scrutiny. This Court should deny NIH's motion for summary judgment for three reasons.

*First*, NIH undisputedly failed to comply with FOIA's statutory deadlines. Empower Oversight submitted requests in July and October 2021. To comply with the act, NIH had to respond to those requests within twenty days, or it had to explain why unusual circumstances warranted more time. NIH did neither one of those things. Indeed, the agency concedes that it did not respond to either request until February 7, 2022—months too late.

*Second*, NIH incorrectly claims that it conducted searches reasonably calculated to lead to responsive records. As proof, NIH touts the fact that it "has released, in whole or part, close to 2,000 pages of records responsive" to Empower Oversight's FOIA requests. Memo at 1 (Dkt. No. 37). This Court should reject that argument because the adequacy of an agency's search does not depend on "the fruits of the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). On this record, NIH has not demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents because an adequate search requires both an understanding of the nature and the scope of Empower Oversight's

1

requests as well as knowledge of where responsive information may be stored within the agency.

*Third*, NIH failed to carry its burden for this Court to sustain withholding information from Empower Oversight under Exemption 5 and Exemption 6.

## STATUTORY BACKGROUND

FOIA strongly favors openness. *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *accord Ethyl Corp. v. EPA*, 25 F.3d 1241, 1245 (4th Cir. 1994). As Congress "broadly conceived" the statutory purpose, *EPA v. Mink*, 410 U.S. 73, 79–80 (1973), "*disclosure*, not secrecy, is the dominant objective of the Act," *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (emphasis added). FOIA thus provides a statutory right for citizens "to be informed what their government is up to." *DOJ v. Reporters Comm.*, 489 U.S. 749, 773 (1989) (internal quotation marks omitted).

**Agency Response**. "FOIA provides that, subject to certain statutory exemptions, federal agencies shall 'upon any request for records which reasonably describe such records . . . make the records promptly available to any person.'" *Hanson v. USAID*, 372 F.3d 286, 290 (4th Cir. 2004) (quoting 5 U.S.C. § 552(a)(3)(A)). An agency must respond to a valid request within *twenty days* (exempting Saturdays, Sundays, and holidays) upon receipt of such request, including notifying the requestor immediately of its determination, the reasons therefor, and the right to appeal any adverse determination. 5 U.S.C. § 552(a)(6)(A)(i).

FOIA does not require the agency to produce responsive, non-exempt records within the 20-day statutory time limit, but the agency must make such records "promptly available" after it responds to the request. *Id.* § 552(a)(3)(A). Although FOIA does not assign a particular timeframe for an agency to comply with its

requirement to make documents "promptly available," the D.C. Circuit has concluded that, "depending on the circumstances," this requirement "typically would mean within days or a few weeks of a 'determination,' not months or years." *Citizens for Resp. & Ethics in Washington v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013).

**Search**.  An agency responding to a valid request for records "shall make reasonable efforts to search for [such] records."  5 U.S.C. § 552(a)(3)(C).  Courts generally consider an agency's search to be "adequate" if the agency "has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The agency need not "search every file where a document could possibly exist" because courts instead consider whether the search was reasonable "in light of the totality of the circumstances." *Rein v. USPTO*, 553 F.3d 353, 364 (4th Cir. 2009).  For example, in considering the adequacy and reasonableness of a search, no court should accept an agency's "self-imposed limitation" on the scope of its search when that self-imposed limitation inaccurately depicts what the requester really seeks. *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1253 (11th Cir. 2008).

**Exemptions**.  Public access to official records under FOIA "does not apply to matters" that fall within the discrete categories of exemptions identified by the statute. *See* 5 U.S.C. § 552(b).  This case primarily concerns two of those exemptions.  FOIA exempts "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," except where such records were "created 25 years or more before the date on which the records were requested."  5 U.S.C. § 552(b)(5).  And FOIA exempts the disclosure of records that "would constitute a clearly unwarranted invasion of personal privacy," such as "personnel and medical files." *Id.* § 552(b)(6).

3

Even if portions of responsive documents are covered by FOIA's exemptions, the statute requires that agencies must provide the reasonably segregable portions of those records that are not subject to a FOIA exemption.  *Id.* § 552(a)(3)(B).

## DISPUTED AND UNDISPUTED FACTS

**I.  Response to NIH's Statement of Undisputed Facts**

### Background on NIH's FOIA Process

1.      Undisputed.

2.      Undisputed.

3.      Undisputed.

4.      Undisputed to the extent that NIH generally describes its review process.

5.      Disputed in part.  In describing its response, NIH fails to recognize that all federal agencies must respond to a valid FOIA request within twenty days.  *See* 5 U.S.C. § 552(a)(6)(A).

### Sequence Read Archive (SRA)

6.      Undisputed.

7.      Undisputed.

8.      Disputed in part.  NIH omits details, including that Dr. Bloom identified a supplementary table listing "all SARS-CovV-2 deep sequencing data available from the SRA as of March 30, 2020."  Jesse Bloom, BIORXIV, *Recovery of Deleted Deep Sequencing Data Sheds More Light On The Early Wuhan SARS-CoV-2 Epidemic* (June 22, 2021), https://www.biorxiv.org/content/10.1101/2021.06.18.449 051v1.full.  Dr. Bloom explained that the "majority of entries in this table refer to a project (Bio-Project PRJNA612766) by Wuhan University."  *Id.*  This particular project (PRJNA612766) "represents 241 of the 282 SARS-CoV-2 sequencing run accessions in the SRA as of March, 30, 2020."  *Id.*  All that data was removed from the SRA.

4

## FOIA Request 56712

9.  Undisputed.  *See also* Amended Compl. Ex. A (Dkt. No. 16-1) (July 14, 2021, FOIA request).

10.  Undisputed.

11.  Disputed in part.  NIH does not indicate *when* the National Center for Biotechnology Information (NCBI) searched its "database for communications between SRA curators and the submitter of the withdrawn SARS-CoV2 sequences at Wuhan University."

12.  Undisputed.

13.  Undisputed.

14.  Undisputed.

15.  Undisputed.

16.  Undisputed.

17.  Undisputed.

18.  Undisputed.

19.  Undisputed.

20.  Disputed in part.  Empower Oversight acknowledges that  NIH purported to rely on Exemption 5 to redact information from produced documents and that NIH withheld production of otherwise responsive documents under Exemption 5.  But Empower Oversight disputes that NIH carried its burden of demonstrating that the agency complied with 5 U.S.C. § 552(b)(5).

21.  Disputed in part.  Empower Oversight recognizes that, after "reviewing materials for the *Vaughn* index," NIH now claims that attorney-client privilege "also applied to one email string."  Garcia-Malene Suppl. Decl. ¶ 29 (Dkt. No. 37-2); *see also* *Vaughn* Index (Dkt. Nos. 37-3, 37-4).  Even so, Empower Oversight disputes that NIH carried its burden of demonstrating that the agency complied with 5 U.S.C. § 552(b)(5).

5

22.     Disputed in part.   Empower Oversight acknowledges that   NIH purported to rely on Exemption 6 to redact information from produced documents and that NIH withheld production of otherwise responsive documents under Exemption 6.   But Empower Oversights disputes that NIH carried its burden to demonstrate that it complied with 5 U.S.C. § 552(b)(6).   "Correspondence does not become personal solely because it identifies government employees." *Aguirre v. SEC*, 551 F. Supp. 2d 33, 54 (D.D.C. 2008).

23.     Disputed in part.   To the extent that "NIH conducted a segregability review of the records released," Empower Oversight disputes that the agency's review complied with FOIA and that NIH "could not reasonably segregate" information subject to an exemption.

24.     Disputed.   Empower Oversight disputes that NIH properly withheld information under Exemption 5 and Exemption 6.   Empower Oversight also disagrees with NIH's suggestion that "material withheld" by the agency would not be "appropriate for discretionary disclosure because of the amount of misinformation surrounding the COVID-19 pandemic and its origin."   NIH further suggests that disclosure could impede candid discussions among its staff "necessary to make decisions regarding public policy surrounding COVID-19."   But the agency has not carried its "burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 868 (D.C. Cir. 1980).   FOIA favors disclosure here because the act seeks to improve access to government information and to promote the principles of openness and accountability in government.   Understanding how the pandemic started is of tremendous public interest, particularly because understanding how the COVID-19 pandemic started may help prevent future pandemics.

**FOIA Request 57203**

25.    Undisputed. *See also* Amended Compl. Ex. B (Dkt. No. 16-2) (September 30, 2021, FOIA request).

26.    Undisputed.

27.    Undisputed to the extent that NIH generally describes its "normal procedure."

28.    Undisputed.

29.    Undisputed.

30.    Undisputed.

31.    Undisputed.

32.    Disputed in part.  On February 7, 2022, Empower Oversight agrees that NIH produced 17 pages of records.  In the first line of the letter sent to Empower Oversight, NIH stated that it was the agency's "final response" to the request.  Amended Compl. Ex. E (Dkt. No. 16-5).  Two months later, during an April 8, 2022 hearing, this Court recognized that "almost all" of the records produced in February came from one "subagency within NIH."  Hearing Trans. 5:24–25, 6:1 (ECF No. 29). Yet the Court understood that the scope of Empower Oversight's request went "beyond" records merely from that subagency.  *Id.* at 6:8.  About a month after the hearing, on May 13, 2022, NIH sent Empower Oversight 777 pages of additional responsive records.

33.    Disputed in part.  Empower Oversight accepts NIH's explanation that, "in response to Request 57203," the agency searched the NIH Director's Executive Secretariat and the Office of Legislative Policy and Analysis.  But Empower Oversight disputes that these are "the only places" where NIH may need to search to comply with FOIA.

34.    Disputed in part.  Empower Oversight acknowledges that  NIH purported to rely on Exemption 5 to redact information from produced documents and

that NIH withheld production of otherwise responsive documents under Exemption 5.  But Empower Oversights disputes that NIH has carried its burden to demonstrate that the agency complied with 5 U.S.C. § 552(b)(5).

35.  Disputed in part.  Empower Oversight recognizes that, after "reviewing materials for the *Vaughn* index," NIH now claims that attorney-client privilege "also applied to some emails strings that had already been redacted under Exemption 5." Garcia-Malene Suppl. Decl. ¶ 49 (Dkt. No. 37-2); *see also Vaughn* Index (Dkt. Nos. 37-3, 37-4).  Empower Oversight disputes that NIH carried its burden of demonstrating that it complied with 5 U.S.C. § 552(b)(5).

36.  Disputed in part.  Empower Oversight acknowledges that  NIH purported to rely on Exemption 6 to redact information from produced documents and that NIH withheld production of otherwise responsive documents under Exemption 6.  But Empower Oversights disputes that NIH carried its burden to demonstrate that it complied with 5 U.S.C. § 552(b)(6).

37.  Disputed in part.  To the extent that "NIH conducted a segregability review of the records released," Empower Oversight disputes that the agency's review complied with FOIA and that NIH "could not reasonably segregate" information subject to an exemption.

38.  Disputed.  As with Request 56712, Empower Oversight disagrees with NIH's suggestion that any "material withheld, in whole or part," by the agency under Exemption 5 or Exemption 6 would not be "appropriate for discretionary disclosures" in response to Request 57203.  To be sure, "Congress did not design the FOIA exemptions to be mandatory bars to disclosure."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979).  NIH has discretion to apply "some balancing and accommodation," *id.*, particularly because Request 57203 concerns congressional oversight.  FOIA "does not prevent" NIH "from voluntarily disclosing" this information even if the

agency believes that it "would otherwise be covered by one of the statutory exemptions." *Stone v. FBI*, 727 F. Supp. 662, 666 (D.D.C. 1990).

### FOIA Request 57151

39. Disputed in part. In its Statement of Undisputed Facts at ¶ 9, NIH admitted that, on July 15, 2021, the agency received Empower Oversight's first FOIA request (dated July 14, 2021)—referred to as "Request 56712." NIH also admitted (at ¶ 25) that, on October 12, 2021, the agency received Empower Oversight's second FOIA request (dated September 30, 2021)—referred to as "Request 57203." However, NIH fails to explain that it never sent any correspondence to Empower Oversight concerning either request, even though applicable regulations required NIH, at a minimum, to acknowledge receipt of all FOIA requests "in writing within 10 working days after receipt by the appropriate office." 45 C.F.R. § 5.24; *see also id.* at §§ 5.3, 5.4 (explaining that all operating divisions of HHS, including NIH, are subject to this requirement). NIH correctly notes that Empower Oversight sought a "log" of FOIA requests submitted to the agency since March 1, 2020—referred to as "Request 57151." Empower Oversight submitted that final FOIA request before filing this lawsuit. It did so to confirm that NIH had received its earlier requests after months of no correspondence from the agency.

40. Undisputed. *See also* Amended Compl. Ex. D (Dkt. No. 16-4) (NIH's "final response" letter for Request 57151).

## II. Empower Oversight's Statement of Undisputed Facts

### Deletions from the SRA

1. Deletions from the Sequence Read Archive are reportedly rare. For the one-year period between March 2020 and March 2021, the SRA received approximately 2.4 million submissions of DNA sequencing data. A mere 0.19% of those submissions were withdrawn. Amy Dockser Marcus & Drew Hinshaw, *After Covid-19 Data Is Deleted, NIH Reviews How Its Gene Archive Is Handled*, Wall St.

J. (Sept. 13, 2021), *available at* https://www.wsj.com/articles/aftercovid-19-data-is-deleted-nih-reviews-how-its-gene-archive-is-handled-11631545490.

2.      After Dr. Bloom identified certain deletions from the SRA, the New York Times also reported that more than 200 data entries from the genetic sequencing of early COVID-19 cases had been removed from the SRA in the summer of 2020.  Carl Zimmer, *Scientist Finds Early Virus Sequences That Had Been Mysteriously Deleted*, N.Y. TIMES (June 23, 2021) (updated July 22, 2021), *available at* https://www.nytimes.com/2021/06/23/science/coronavirus-sequences.html.      The National Library of Medicine (the agency within the NIH that manages the SRA) confirmed that these sequences were "submitted for posting in SRA in March 2020 and subsequently requested to be withdrawn by the submitting investigator in June 2020." *Id.*

## NIH's Correspondence with Senators

3.      On June 28, 2021, Senators Grassley, Blackburn, and Marshall sent a letter to the NIH seeking records and responses to questions regarding the removal of the genetic sequencing of early COVID-19 cases from the SRA.  *See* Amended Compl. Ex. G (Dkt. No. 16-7) (June 28, 2021 letter).  The Senators explained that the public has a significant interest in understanding the reason why these early sequences were removed from the SRA.  "Simply put, the American people deserve to know what their government knows about the origins of this global illness." *Id.*

4.      NIH responded to the Senators on September 8, 2021.  *See* Amended Compl. Ex. G (Dkt. No. 16-7) (NIH's letters addressed to each Senator).  The agency explained to the Senators that "a researcher at Wuhan University" had submitted the SARS-CoV-2 sequences "for public release status via SRA" in March 2020.  *Id.* However, three months later, in June 2020, NIH wrote that the National Center for Biotechnology Information (NCBI) "received a request to withdraw the sequences from the same researcher." *Id.*  Although "NCBI withdrew the sequences from the

10

SRA," the agency noted that the sequences "remained available to the world's scientists and researchers" on other platforms.  *Id.*

5.     The Senators found NIH's response to be inadequate as the agency "failed to fully and completely answer all seven questions and failed to provide the requested records."  Amended Compl. Ex. G (Dkt. No. 16-7) (September 16, 2021 letter).

### Empower Oversight's FOIA Requests

6.     As of November 17, 2021, NIH had not provided a determination to Empower Oversight as to FOIA Request Nos. 56712, 57203, or 57151, despite the statutory requirement that an agency must respond within twenty working days.  *See* 5 U.S.C. § 552(a)(6)(A).

7.     On February 7, 2022, NIH sent a letter to Empower Oversight conveying the agency's "final response" to FOIA Request 56712 (dated July 15, 2021) and FOIA Request 57203 (dated October 12, 2021).  Amended Compl. Ex. E (Dkt. No. 16-5). NIH also explained that the agency had "processed 255 pages of responsive records for this litigation."  *Id.*  "The information being withheld," NIH noted, "is protected from release" under FOIA Exemption 5 and Exemption 6.  *See id.* (citing 5 U.S.C. §§ 552(b)(5), (b)(6)).

8.     On February 24, 2022, Empower Oversight transmitted two administrative appeal letters in response to the NIH's production corresponding to its FOIA requests.  *See* Amended Compl. Ex. F (Dkt. No. 16-6) (Request 56712); *id.* Ex. G (Dkt. No. 16-7) (Request 57203).

9.     As of July 11, 2022, NIH has not responded to the administrative appeals.

### PROCEDURAL HISTORY

Empower Oversight filed this action on November 17, 2021.  *See* Compl. (Dkt. No. 1).  At that time, NIH had not yet provided Empower Oversight any responsive

records.  *Id.* ¶ 38.  Nor had the agency claimed that any statutory exemptions prevented disclosure.  *Id.*

NIH first produced responsive records on February 7, 2022.  Shortly thereafter, Empower Oversight sought leave to file an amended complaint, Dkt. No. 14, and the Court granted its unopposed motion, Dkt. No. 15.  Empower Oversight alleged three violations of FOIA in the amended complaint:

- NIH failed to comply with statutory deadlines, Amended Compl. ¶¶ 44–49 (Dkt. No. 16) (Count I);
- NIH failed to conduct searches reasonably calculated to locate responsive records, *id.* ¶¶ 50–57 (Count II); and
- NIH unlawfully withheld agency records under 5 U.S.C. §§ 552(b)(5), (b)(6), *id.* ¶¶ 58–63 (Count III).

NIH answered the amended complaint on March 11, 2022.  *See* Answer (Dkt. No. 17).

## LEGAL STANDARD

This Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(A).  A fact is "material" if a dispute over it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  This Court must view the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in its favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

"FOIA places the burden on the government agency to sustain its action to withhold information under any of the FOIA Exemptions."  *Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004) (citing 5 U.S.C. § 552(a)(4)(B)). This Court must determine as a matter of law whether the agency properly applied "FOIA's prescribed exemptions."  *Id.*  In doing so, the Court must construe the

statutory exemptions narrowly "in favor of disclosure." *JP Stevens & Co., Inc. v. Perry*, 710 F.2d 136, 139 (4th Cir. 1983) (citing *Rose*, 425 U.S. at 360–61).

**ARGUMENT**

**I.   NIH undisputedly failed to comply with statutory deadlines.**

As an undisputed fact, NIH acknowledges that the agency received Empower Oversight's first FOIA request on July 15, 2021.   Memo at 4, ¶ 9 (referring to Request 56712).   NIH similarly acknowledges that the agency received Empower Oversight's second FOIA request on October 12, 2021.   *Id.* at 9, ¶ 25 (referring to Request 57203).

FOIA requires all federal agencies to respond to valid requests for information within *twenty days*.   5 U.S.C. § 552(a)(6)(A)(i).   In certain circumstances, an agency may provide notice to the requester that "unusual circumstances" merit additional time—up to an additional ten working days—to respond to the request.   *Id.* § 552(a)(4)(viii)(II)(aa).

NIH failed to respond to Empower Oversight's FOIA requests within the twenty-day period, and NIH failed to provide notice of any unusual circumstances meriting additional time.   NIH first responded to Empower Oversight's requests on February 7, 2022—nearly *seven months* after the agency had received Request 56712 and *four months* after it had received Request 57203.   *See* Amended Compl. Ex. E (Dkt. No. 16-5).   In its February 7, 2022 letter, NIH confirmed that it was responding to Empower Oversight's requests that the agency  had received in July 2021 (Request 56712) and October 2021 (Request 42703).   *Id.*   NIH also acknowledged that these requests already were "the subject of the complaint" filed in this lawsuit.   *Id.*

NIH provided no explanation for its delay in responding to both requests.   Nor has NIH ever suggested that the agency in fact complied with FOIA's statutory deadlines.   Instead, while summarizing the procedural history of this case, NIH added a footnote urging this Court to simply disregard the deadlines.   *See* Memo at

13

12 n.1. NIH contends that the Court needs only to focus on the reasonableness of its searches (Count II) and whether the agency has carried its burden of demonstrating that it properly withheld information under statutory exemptions (Count III). *Id.* According to NIH, the statutory deadlines are "irrelevant." *Id.* (quoting *Hornbostel v. DOI*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003)). This Court should reject NIH's invitation to brush aside the relevance of FOIA's statutory deadlines.

As an initial matter, NIH "provides no binding authority" requiring this Court to ignore the statutory deadlines. *Courtrade, v. United States*, 243 F. Supp. 3d 699, 706 (E.D. Va. 2017). Insofar as NIH invites this Court to adopt a sweeping new rule precluding the consideration of statutory deadlines at summary judgment in all FOIA cases, the agency's footnote is unpersuasive. Context matters.

The *Hornbostel* district court actually explained that "a lack of timeliness *does not preclude* summary judgment for an agency in a FOIA case" *so long as* "the agency *finally conducted a reasonable search*" and any "withholdings are *justified*" under appropriate statutory exemptions. 305 F. Supp. 2d at 28 (quoting *Landmark Legal Foundation v. EPA*, 272 F. Supp. 2d 59, 62 (D.D.C. 2003) (emphasis added)). Neither one of those circumstances exists here. Empower Oversight challenges the reasonableness of NIH's search (Count II) and whether the agency carried its burden of demonstrating that its withholdings were justified under statutory exemptions (Count III).

In any event, the guiding principle for a court faced with a FOIA summary judgment motion is *reasonableness*. *See Landmark*, 272 F. Supp. 2d at 62. When placed in its proper context, the *Landmark* district court did not announce a broad new rule meant to excuse agencies from complying with statutory deadlines. The requester in *Landmark* challenged the reasonableness of the EPA's *search* by raising "several arguments" about *timeliness*. *Id.* The district court merely rejected those

arguments as "irrelevant" to *the standard of reasonableness* that all courts must apply when considering the adequacy of an agency's *searches.* *Id.*

Empower Oversight has not challenged the adequacy or reasonableness of NIH's searches by advancing arguments about *timeliness.* Instead, Empower Oversight has alleged a stand-alone claim (Count I) that NIH failed to comply with FOIA's statutory deadlines. Empower Oversight does not concede that NIH "has released all nonexempt materials" after the agency "failed to meet FOIA's mandated standards of promptness." *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987). Thus, there is still "a live controversy" in this case. *Id.* And, unlike the circumstances in *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) (per curiam), this Court still has a judicial function to perform because NIH has not surrendered "all requested records." *Cf. Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 10 F. Supp. 2d 565, 573–74 (D.S.C. 1998) (concluding that "no case or controversy exists" after the agency produced all requested documents), *aff'd in part and remanded in part on other grounds*, 186 F.3d 457 (4th Cir. 1999).

\* \* \*

In sum, NIH's undisputed failure to comply with FOIA's statutory deadlines remains relevant as part of this live controversy. The Court, of course, may decide separately to consider first whether the agency conducted a reasonable search, justified all withholdings under an applicable exemption, and surrendered all requested records. NIH, however, did no such thing.

## II.   NIH failed to conduct searches reasonably calculated to locate responsive records.

Courts generally analyze the adequacy of a search by considering the reasonableness of the agency's effort in the context of the specific FOIA request. *See, e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009). An adequate search requires both an understanding of the nature and the scope of Empower Oversight's

requests as well as knowledge of where responsive information may be stored within the agency.   This Court should conclude, after reviewing the totality of the circumstances in this case, that NIH has not "demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents." *Rein*, 553 F.3d at 362 (quoting *Ethyl Corp.*, 25 F.3d at 1246).

### A.  Summary of relevant circumstances

On February 7, 2022, NIH issued the agency's "final response" to two of the FOIA requests that it had received from Empower Oversight—Request 56712 and Request 57203.  Amended Compl. Ex. E at 1 (Dkt. No. 16-5).  NIH claimed that it had "processed 255 pages of responsive records for this litigation" in accord "with the Court's order dated November 17, 2021." *Id.* at 2.

On March 30, 2022, NIH's FOIA Officer, Gorka Garcia-Malene, submitted a declaration explaining the adequacy of the agency's search and response to Empower Oversight's requests.  Garcia-Malene Declaration (Dkt. No. 37-1).  Garcia-Malene explained that he personally had "reviewed all documents at issue" in this litigation. *Id.* at ¶ 3. And he further explained that:

- NIH's National Center for Biotechnology Information (NCBI) at the National Library of Medicine uses a database to track communications between curators and submitters to various databases (including SRA), and in response to Items 1 and 2 of FOIA Request 56712, NCBI searched that database for communications between SRA curators and the submitter of the withdrawn SARS-CoV2 sequences at Wuhan University. Further, because the submitter involved in FOIA Request 56712 had provided the withdrawn sequences under the project ID PRJNA612766, NIH used that project ID "PRJNA612766" as search term to locate responsive documents, *id.* ¶¶ 15 – 16;

16

- In response to Item 3 of FOIA Request 56712, Stephen Sherry, Acting Director of NCBI, searched for responsive emails using the keywords "preprint," "jesse bloom," and "biorxiv," *id.* at ¶ 17;

- In response to Item 4 of FOIA Request 56712, "the Communications program at the [Office of the Director]" searched an undefined universe of email accounts for emails containing the keywords "NIH statement sequence read archive," *id.* at ¶ 18;

- As a result of these searches, NIH located, processed, and released 238 pages of responsive records to Empower Oversight on February 7, 2022, *id.* at ¶¶ 20 − 21;

- In response to FOIA Request 57203, NIH's Office of Executive Secretariat searched a database for responsive records using the keywords "Grassley" and "Blackburn," *id.* at ¶ 31; and

- As a result of this limited search, NIH located, processed, and released seventeen pages of responsive records to Empower Oversight on February 7, 2022, id. at ¶ 33.

In sum, Garcia-Malene declared that "NIH avers that it conducted searches reasonably calculated to locate records responsive to" Empower Oversight's FOIA requests. *Id.* at ¶ 43.

On April 8, 2022, during a hearing concerning NIH's motion to vacate a scheduling order, this Court recognized that "almost all" of the records that the NIH had produced in response to FOIA Request 57203 had come from one "subagency within NIH." Hearing Trans. 5:24–25, 6:1 (ECF No. 29). The Court further observed that the scope of Empower Oversight's request went "beyond" records merely from that subagency. *Id.* at 6:8.

On May 13, 2022, NIH released additional responses—more than 1,700 pages of documents—to Request 56712 and Request 57203. *See* Garcia-Malene Suppl.

Declaration ¶¶ 23, 25, 45, 57 (Dkt. No. 37-2).  Garcia-Malene never explained *how* or *why*, after NIH had produced 255 pages of responsive records as part of the agency's "final response" on February 7, 2022, NIH later located and processed an additional 1,741 pages of records on May 13, 2022.

### B. In response to Request 56712, NIH produced at least two documents clearly indicating the existence of other records that the agency did not produce.

Courts tend to afford agencies leeway in determining the locations to search for responsive records.  An agency, for example, "is not required to speculate about potential leads." *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996).  Nor is the agency "obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Id.*  But that does not mean that an agency "may ignore what it cannot help but know." *Id.*  No agency may ignore a responsive document that "clearly indicates the existence of [other] relevant documents, none of which were disclosed." *Center for Nat'l Security Studies v. DOJ*, 215 F. Supp. 2d 94, 110 (D.D.C. 2002), *aff'd in part, rev'd in part, and remanded on other grounds*, 331 F.3d 918 (D.C. Cir. 2003).  If "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

### 1. NIH did not produce responsive email correspondence.

Empower Oversight requested, among other things, "all communications between Jesse Bloom and the NIH, from January 1, 2021 and the present." Amended Compl. Ex. A at 2 (Dkt. No. 16-1).  In response to this request, NIH produced an August 11, 2021, email from gbadmin@ncbi.nlm.nih.gov to Dr. Bloom, which has the subject "GenBank Submissions grp 8164050." Ex. A at 000092 (attached hereto).  The first line of the email states:  "Thank you for *your reply*." *Id.* (emphasis added).

18

This email clearly indicates the existence of other relevant records because it refers to Dr. Bloom's *reply* to an earlier email from the agency. Yet no such correspondence was produced. Neither this particular email nor any other record produced by the NIH includes the earlier correspondence which prompted the agency to thank Dr. Bloom for his *reply*.

### 2. NIH did not produce earlier emails and an attachment.

Empower Oversight requested all communications to, from, and within NIH about reports that the Wuhan University sequences had been removed from the Sequence Read Archive. Amended Compl. Ex. A at 2 (Dkt. No. 16-1). In response to this request, NIH produced a July 26, 2021, email from Diane Tuncer to Steve Sherry and Kim Pruitt, which has the subject "FW: FYI – News Report from China's Xinhua News Agency." Ex. A at 000093. Tuncer wrote: "We shared this news article with NIH OCPL too, and they [NIH OCPL] responded with the following information (see below). I'm also attaching the *last set of QA* (which we *already sent to you* last week)." *Id.* (emphasis added). By its plain terms, Tuncer's email included an attachment— descried as the "last set" of questions and answers related to the Wuhan University dataset—that previously had been sent to the email recipients "last week."

This email clearly indicates the existence of other relevant records because it refers to the *last set* of questions and answers that had previously been sent to the email recipients. Yet NIH produced no such records. Neither this email nor any other record produced by the NIH includes the attachment or the earlier correspondence that Tuncer referenced.

### C. In response to Request 57203, NIH initially produced records from only one subagency.

Empower Oversight submitted FOIA Request 57203 to the NIH seeking copies of "all communications" regarding the letters sent by the Senators and the agency's response. *See* Amended Compl. Ex. B at 2 (Dkt. No. 16-2). In response to that

request, NIH purported to issue a "final" production of responsive records on February 7, 2022, which included less than twenty pages of documents. *See id.* Ex. E (Dkt. No. 16-5). The February production did not include any agency records acknowledging the receipt of the Senators' letters, any agency records assigning the Senators' information request to an action office, or any agency records disseminating drafts of potential responses that NIH considered.

As discussed above, this Court considers the adequacy of the NIH's search by assessing "whether the search was reasonably calculated to discover the requested documents," and not whether the NIH's search "actually uncovered every document extant." *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). The Court should conclude that the NIH failed to perform an adequate search based on the purportedly "final response" to Request 57203 issued by the agency in February 2022.

NIH did not conduct a search reasonably calculated to discover all communications requested by Empower Oversight. As the Court previously recognized during the April 8, 2022 hearing, "almost all" of the records produced in February came from one "subagency within NIH." Hearing Trans. 5:24–25, 6:1 (ECF No. 29). NIH apparently did not consider the scope of Empower Oversight's request, which plainly went "beyond" records merely from that subagency. *Id.* at 6:8. As it turns out, the original search was inadequate because, in May 13, 2022, NIH sent Empower Oversight 777 pages of *additional* responsive records months after the agency supposedly produced its "final response."

* * *

Based on the totality of the circumstances, NIH has not demonstrated that it has conducted searches reasonably calculated to uncover all relevant documents.

III.   **NIH failed to carry its burden of demonstrating that it properly withheld information under FOIA exemptions.**

In this case, NIH has failed to satisfy its burden of demonstrating that it properly withheld information under the FOIA exemptions that it has invoked.  *See Wickwire Gavin*, 356 F.3d at 591.  This Court should conclude, as a matter of law, that NIH failed to comply with FOIA.

### A.  NIH improperly withheld information under 5 U.S.C. § 552(b)(5).

Courts generally have construed Exemption 5 as allowing an agency to withhold information from documents, or portions of documents, that normally would be "privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  The "clear thrust" of Exemption 5 "is simply to ensure that FOIA does not deprive the government of the work-product and attorney-client protections otherwise available to it in litigation." *Hunton & Williams v. DOJ*, 590 F.3d 272, 278 (4th Cir. 2010).

To qualify this exemption, a document must "satisfy two conditions:  its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it," such as the attorney-client, deliberative process, or attorney work product privileges. *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

### 1.   In response to Request 56712, NIH improperly withheld information under Exemption 5.

The purpose of the deliberative process privilege "is to prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151.  "In deciding whether a document should be protected by the privilege," courts typically consider whether the document is "predecisional"—i.e., "it was generated before the adoption of an agency policy"— and whether the document is "deliberative"—i.e., "it reflects the give-and-take of the consultative process." *Coastal States Gas Corp.*, 617 F.2d at 866; a*ccord City of Virginia Beach v. Dep't of Commerce*, 995 F.2d 1247, 1253–54 (4th Cir. 1993).

NIH produced several documents with redactions that the agency made purportedly under Exemption 5. It appears, however, that NIH has redacted responsive records that are not pre-decisional and not deliberative.

For example, NIH produced a heavily redacted email chain with information purportedly withheld under Exemption 5. But there is nothing in the record to suggest a give-and-take exchange as part of the agency's deliberative decision-making process. *See* Ex. A at 000174–77 (attached hereto). At the bottom of the chain, on Friday, June 18, 2020, at 7:00 pm, Dr. Bloom emailed Francis Collins, Steve Sherry, and Anthony Fauci to alert them that he had "identified a data set of early Wuhan SARSCoV-2 sequences that has been deleted from the NIH's Sequence Read Archive." *Id.* at 000176. Dr. Bloom forwarded a copy of his pre-print analysis and recommended that NIH commence a "comprehensive analysis of SRA" to search for other potential deletions related to this "hot-button topic." *Id.*

The next morning, June 19, 2020, at 7:34 am, Steve Sherry responded to the group with "the June 2020 exchange between Wuhan University and SRA submission staff." *Id.* at 000174. Sherry personally redacted names and tracking ID "for privacy." *Id.* And he noted that "this request was received and processed according to SRA policy." *Id.* "SRA does not adjudicate the reason" for the removal. *Id.* NIH redacted the entire exchange under Exemption 5.

So, in response to unsolicited correspondence from an *external non-NIH party* (Bloom), Sherry shared a communication thread that he described as "the June 2020 exchange between Wuhan University and SRA submission staff" from which he redacted names and a tracking identification number for "privacy" purposes. In turn, the NIH FOIA staff later redacts the entire exchange under 5 U.S.C. § 552(b)(5). This exchange, however, cannot be considered as "pre-decisional" or "deliberative." Moreover, the source is not a government agency and this exchange would not be considered "privileged in the civil discovery context." *Sears*, 421 U.S. at 149.

Similarly, NIH produced a July 26, 2021, email (discussed above) from Tuncer to Sherry and Pruitt, with the subject "FW: FYI – News Report from China's Xinhua News Agency," that purports to forward "information" from the NIH's Office of Communications and Public Liaison ("OCPL"). *See* Ex. A at 00093. Given the context of the email, the forwarded "information" appears to pertain to OCPL's analysis of an article published in Xinhua, as opposed to deliberation for a NIH policy under consideration.

To quality as "deliberative," the record must reflect give-and-take consultation. Factual information, in contrast, is not covered by the deliberative process privilege because the release of factual information does not expose the deliberations or opinions of agency personnel. *See, e.g.*, *Coastal States Gas Corp.*, 617 F.2d at 867. Factual information is typically available in civil discovery, and its release is not considered to have a chilling effect on agency deliberations. *See Mink*, 410 U.S. at 87–88. Empower Oversight cannot see behind the NIH's redactions, but other records produced by the NIH raise serious questions regarding whether segregable factual information has been withheld inside of several large blocks of redactions. *See, e.g.*, Ex. A at 00020, 00022, 00086, 00088–91.

### 2.   In response to Request 57203, NIH improperly withheld information under Exemption 5.

NIH produced responses that the agency actually submitted to Senators Blackburn, Grassley, and Marshall. *See* Ex. B at 000009–17 (attached hereto). However, those response letters failed to include the specific answers to the Senators' questions, a fact which the Senators themselves noted. Yet, the NIH did gather those answers in the "Response" paragraphs that it then fully redacted from the documents produced to Empower Oversight under Exemption 5.

The NIH's response to the Senators is not a policy document; rather, it is

a partial response to the Senators' multipart requests for *factual information* about the NIH's SRA and the Wuhan University researcher's June 2020 request to withdraw SARS-CoV-2 genetic data from public access on the SRA.  Because the NIH's response to the Senators is replete with factual information that is partially responsive to the Senators' various requests, it is likely that the "Responses" that the NIH's FOIA staff redacted from the annotated version of Senators Blackburn, Grassley, and Marshall's June 28th information request also includes factual information that should have been produced to Empower Oversight without redaction.

The redaction *in full of paragraphs* that appear likely to contain the very information that the Senators *publicly* complained that the NIH withheld by failing to answer each of their enumerated questions raises reasonable suspicions.  Do the redacted paragraphs contain additional relevant facts withheld from the Senators? Do they contain facts inconsistent with what was ultimately disclosed to the Senators in the September 16th response?  It appears that NIH inappropriately relied on Exemption 5 to redact responsive records.

NIH appears to have redacted factual information from other documents as well.  For example, on a table reflecting the processing of various Congressional oversight requests, NIH redacted the content of the "Status" column with respect to responses to the oversight requests that had not been completed on the date that the table was last updated.  *See* Ex. D at 00041–43 (attached hereto).  The status of a response to a Congressional inquiry is not *deliberative*.  It is a matter of fact. Similarly, by an email dated March 27, 2022, Renate Myles, circulated a "draft rollout plan" for the report of NIH's review of the concerns that arose in connection with the deletion of the COVID-19 genetic sequences in June of 2020.  *Id.* at 000521–26. Regardless of its *draft* status, a rollout plan is not deliberative; it is factual.

**B.  NIH improperly withheld information under 5 U.S.C. § 552(b)(6).**

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In balancing individual privacy interests and public disclosure interests, courts first must determine "whether disclosure of the files 'would compromise a substantial, as opposed to *de minimis*, privacy interest.'"  MultiAg Media LLC v. Dep't of Agriculture, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C.Cir. 1989)).  If no *significant* privacy interest is implicated, "FOIA demands disclosure."  *Id.*

**1.     In response to Request 56712, NIH improperly withheld information under Exemption 6.**

Justifying NIH's application of Exemption 6 to redact the identities of the researcher that requested that the COVID-19 genetic data be removed from public access on the SRA in June of 2020, and the NIH curator that considered the researcher's request, NIH's FOIA Officer asserts that the exemption was applied "due to the heightened public scrutiny with anything remotely related to COVID-19." Garcia-Malene Supplemental Declaration at ¶ 51 (Dkt. No. 37-2).  The statute provides no such "heightened" protections because of COVID-19 or other matters that may be within NIH's purview.

Garcia-Malene claims to have reviewed records to prepare for his Supplemental Declaration.  S*ee id.* at ¶ 3.  One record includes an October 12, 2021, email from Jesse Bloom to Steve Sherry that discusses "two runs related to pangolin coronavirus sequences from China" that were deleted from the SRA on March 16, 2020.  *See* Ex. C. at 000625 (attached hereto).  The email identifies NIH's curator as [                    ] and the Chinese researcher as [                    ] the same individual names redacted elsewhere in the records produced to Empower Oversight.

Garcia-Malene also asserts that NIH properly redacted signatures, email addresses, and phone numbers of its employees purportedly pursuant to Exemption 6 because if this type of information were released it "could be used by the public to send threatening and harassing messages. Garcia-Malene Supplemental Declaration at ¶ 33. However, NIH used this approach in instances where there was no legitimate threat of such harassment. NIH repeatedly redacted the official NIH email address of Dr. Francis Collins, even though he had retired months before NIH's May 13th production of responsive records. *See, e.g.*, Ex. C. 000001, 000440, and 000528.

## 2. In response to Request 57203, NIH improperly withheld information under Exemption 6.

Justifying NIH's application of Exemption 6 to signatures, email addresses, and phone numbers of its employees, Garcia-Malene states that if this type of information were released it "could be used by the public to send threatening and harassing messages" to NIH staff. Garcia-Malene Supplemental Declaration at ¶ 53. However, NIH used this approach in instances where there was no legitimate threat of such harassment. NIH repeatedly redacted the official NIH email address of Dr. Francis Collins, even though he had retired months before NIH's May 13th production of responsive records. *See, e.g.*, Ex. D. 000053, 000072.

\*   \*   \*

NIH has not demonstrated that it properly withheld information under the FOIA exemptions that it purported to apply.

## CONCLUSION

For the foregoing reasons, this Court should deny NIH's motion for summary judgment.

Respectfully submitted,

*/s/ Jeffrey S. Beelaert*
Jeffrey S. Beelaert (VSB No. 81852)
STEIN MITCHELL BEATO & MISSNER LLP
901 15th Street NW, Suite 700
Washington, DC 20005
Tel: (202) 661-0923
Fax: (202) 296-8312
Email: jbeelaert@steinmitchell.com

*Attorney for Plaintiff Empower Oversight*
*Whistleblowers & Research*

July 11, 2022

27