**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| EMPOWER OVERSIGHT WHISTLEBLOWERS & RESEARCH, ) ) ) Plaintiff, ) ) v. ) ) NATIONAL INSTITUTES OF HEALTH, ) ) Defendant. ) ) ) | Case No. 1:21-cv-1275 (LMB/JFA) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's Opposition (Dkt. 41) fails to meaningfully counter any of National Institutes of Health's ("NIH") arguments in its opening brief (Dkt. 37) in support of its motion for summary judgment in this Freedom of Information Act ("FOIA") case.

At the threshold, Plaintiff fails to respond to several of NIH's arguments, and therefore has conceded those arguments—the adequacy of NIH's second search and production of documents chief among them. And what Plaintiff did choose to challenge in its Opposition falls flat. First, Plaintiff argues that NIH's belated production of documents somehow is enough to defeat summary judgment. But just what relief Plaintiff seeks to receive on this front is unclear. Plaintiff has not alleged facts, let alone produced evidence, that this instance of isolated delay is part of a "policy-or-practice" by NIH of impeding FOIA requests—assuming such a claim is cognizable in the Fourth Circuit. And Plaintiff's arguments that this isolated instance of delay somehow entitles them to additional relief finds no support in caselaw.

Second, Plaintiff's challenge to the adequacy of NIH's search focuses solely on NIH's first search and production of records, while wholly ignoring NIH's second search and production—

1

which NIH undertook to remedy Plaintiff's concerns with the first. Plaintiff therefore has brought the Court a problem that has already been solved. And because Plaintiff fails to raise any challenge to the adequacy of NIH's second search, it has conceded that this search was, in fact, adequate.

Finally, Plaintiff challenges specific redactions without any mention of the over 100 pages of *Vaughn* indices that NIH provided that explain each redaction in the production. NIH properly withheld materials pursuant to Exemption 5 of FOIA, which includes the deliberative process privilege, and Exemption 6, which permits withholding of personal privacy information.

Summary judgment for NIH is therefore appropriate.

## NO MATERIAL FACTS ARE IN DISPUTE

Plaintiff's Opposition makes clear that no material facts are in dispute here.

First, Plaintiff purports to "dispute" several of NIH's facts by adding more information to them or claiming NIH has omitted key information. None of Plaintiff's "disputes" are material. For example, Plaintiff claims it disputes in part paragraph 11 of NIH's Statement of Undisputed Material Facts because "NIH does not indicate *when* the National Center for Biotechnology Information searched its database for communications between [Sequence Read Archive] curators and the submitter of the withdrawn SARS-COV2 sequences at Wuhan University." Opp'n at 5 (emphasis in original). But when NIH searched for responsive materials is immaterial to the ultimate questions before the Court: whether NIH adequately searched for responsive records, and whether NIH properly withheld materials pursuant to Exemptions 5 and 6 of FOIA. Plaintiff's attempts to dispute facts by injecting immaterial information fall flat, as evidence that is "not significantly probative" cannot defeat a motion for summary. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003); *see also* Opp'n at 7 ¶ 32, 9 ¶ 39. Similarly, Plaintiff's Statement of Undisputed Facts cite to news articles to provide additional detail about the Sequence Read Archive ("SRA"), Opp'n at 9-10, or Congressional requests to NIH for information about the data

2

withdrawal from SRA, *id.* at 10-11, or more information about its FOIA requests, *id.* at 11. But as before, none of these undisputed facts are material to the issues presented to the Court.

As to Plaintiff's other attempts to dispute NIH's Statement of Undisputed Facts, Plaintiff also purports to dispute whether NIH properly conducted a segregability review of the records and whether the withheld materials are appropriate for discretionary release. *See, e.g.*, Opp'n at 6 ¶¶ 23-24; 8 ¶¶ 37-38. Plaintiff's primary contention is that it disagrees with the agency's assessment. But this is not enough to overcome the presumption of good faith afforded to agency declarations in FOIA cases. *James Madison Project v. C.I.A.*, 2009 WL 2777961, at *2 (E.D. Va. Aug. 31, 2009) (citing *Bowers v. U.S. Dep't of Justice*, 930 F.2d 350, 357 (4th Cir. 1991)). While Plaintiff may be unhappy that NIH did not undertake a discretionary release here, that does not make NIH's stated reasons—concerns over misinformation about COVID-19 and its origins, the chilling effect disclosure would have on internal agency deliberations, and protecting the personal privacy of NIH employees from undue media attention or harassment, *see* Def.'s Summ. J. Mem. (hereinafter Def.'s Mem.) at 8 ¶ 24—any less deserving of the presumption of good faith.

Plaintiff's remaining challenge to NIH's Statement of Undisputed Facts is its belief that NIH improperly withheld materials under Exemptions 5 and 6 of FOIA. *See, e.g.*, Opp'n at 5 ¶ 20; 6 ¶ 22; 7 ¶ 34; 8 ¶ 36. In other words, Plaintiff disagrees with NIH's legal arguments in support of its motion for summary judgment. As described *infra*, Plaintiff's arguments on these points lack merit.

NIH's declarations "describe the search conducted, explain the basis for its response, and are not controverted by contrary evidence in the record or evidence that the agency acted in bad faith." *James Madison Project*, 2009 WL 2777961, at *2. They provide a sufficient basis for this Court to grant summary judgment to NIH.

## ARGUMENT

**I.     Plaintiff has conceded several of NIH's arguments.**

Plaintiff's Opposition fails to challenge several of NIH's arguments in its opening brief. "Failure to respond to an argument made in a dispositive pleading results in a concession of that claim." *United Supreme Council v. United Supreme Council of the Ancient Accepted Scottish Rite for 33 Degree of Freemasonry*, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018).

Most critically, Plaintiff raises no challenge to the adequacy of NIH's second search and production of documents on May 13, 2022. Therefore, it concedes that this search was adequate. Furthermore, while Plaintiff raises challenges to specific redactions (which, for reasons that follow, lack merit), Plaintiff does not challenge the adequacy of NIH's *Vaughn* indices.

As to specific redactions, Plaintiff appears to challenge the designation of two email strings as protected under the attorney-client privilege exemption to FOIA, 5 U.S.C. § 552(b)(5). Opp'n at 5 ¶ 21, 8 ¶ 35. However, Plaintiff's Opposition contains no argument in support of this contention. Likewise, Plaintiff's Opposition contains no argument that the files from which NIH withheld material pursuant to Exemption 6 are "the type considered by statute," *Judicial Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 46 (D.D.C. 2012), and therefore has conceded this issue as well. Finally, Plaintiff's Opposition fails to contest that there is no public benefit to releasing the private email addresses of third parties, Def.'s Mem. at 30, and therefore has conceded this point as well.

**II.    Plaintiff's arguments about timeliness lack factual and legal support.**

Plaintiff asserts in its Opposition that Count I—failure to comply with FOIA's statutory deadlines—is appropriately asserted as a stand-alone claim. Opp'n at 13-15. But Plaintiff's novel argument is not supported by case law.

Under 5 U.S.C. § 552(a)(4)(B), a federal court is authorized only to "enjoin the agency from withholding agency records and to order the production of any agency records improperly

4

withheld." In other words, judicial relief in FOIA cases is limited to ordering the production of documents. Thus, "once all requested records are surrendered, federal courts have no further statutory function to perform." *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("if we are convinced that appellees have, however belatedly, released all nonexempt material, we have no further judicial function to perform under FOIA"); *see also Ingraham v. U.S. Postal Serv.*, 816 F.2d 672 (table), 1987 WL 37025, at *1 (4th Cir. 1987) (finding FOIA timeliness claim is moot once request for documents is resolved); *Worsham v. U.S. Dep't of the Treasury*, 2013 WL 5274358, at 10 (D. Md. Sept. 17, 2013) (holding once agency has responded, "the timing of the [agency's] responses is of no moment"). This is because "[a] declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988).

The Ninth and D.C. Circuits have carved out narrow exceptions to this mootness rule by recognizing a "policy-or-practice" claim, even after all requested records have been provided, if a plaintiff alleges that "an agency policy or practice will impair the party's lawful access to information in the future." *Payne Enters., Inc.*, 837 F.2d at 491; *see also Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1102 (9th Cir. 2016) (citing *Payne Enters.*, 837 F.2d at 491). Judge Allen recently noted that "the Fourth Circuit has not decided whether an independent policy-or-practice claim exists under FOIA." *Thompson v. U.S. Just. Dep't*, 2021 WL 6332676, at *17 (E.D. Va. Mar. 29, 2021) (granting summary judgment to the defendant on timeliness claim). The Fourth Circuit affirmed in an unpublished per curiam opinion that simply found "no reversible error" in the opinion below. *Thompson*, 2022 WL 1797324 (4th Cir. 2022). Therefore, it remains an open question whether such a "policy-or-practice" claim is cognizable in this Circuit.

Even assuming such a claim was viable, however, Plaintiff has not pled such a claim in its Amended Complaint.[1]  Courts that have recognized a "policy-or-practice" claim have explained that "a plaintiff must show, among other things, that (1) the agency's FOIA violation was not merely an isolated incident; (2) the plaintiff was personally harmed by the alleged policy; and (3) the plaintiff himself has a sufficient likelihood of further harm by the policy or practice." *Thompson*, 2021 WL 6332676, at 18 (citing cases).  Plaintiff's Amended Complaint contains no allegations of any of these three conditions.  As pled, Plaintiff's Amended Complaint alleges an isolated incident of delayed disclosure.  "The timing of an agency's release of records responsive to a FOIA request does not determine whether the agency has complied with its obligation under the FOIA." *Richardson v. U.S. Dep't of Justice*, 730 F. Supp. 2d 225, 231-32 (D.D.C. 2010).

Plaintiff's attempt to proceed on a timeliness claim where there is only an isolated incident of delay at issue fares no better.  In *Worsham v. Department of Treasury*, the district court held that the timing of the disclosures was not relevant to whether the agency fulfilled its duties under FOIA, where, as here, the agency did not substantively respond to the FOIA request until after the requestor-plaintiff filed suit in federal court.  2013 WL 5274358 at 10 (D. Md. Sept. 17, 2013).  "Nevertheless, although the FOIA establishes a presumptive twenty-day deadline for an agency to respond to a request, see 5 U.S.C. § 552(a)(6), 'a lack of timeliness or compliance with FOIA deadlines does not preclude summary judgment for an agency, nor mandate summary judgment for the requester.'"  *Id.* (citing *Landmark Legal Foundation v. E.P.A.*, 272 F. Supp. 2d 59, 69 (D.D.C. 2003)).  And, in fact, Plaintiff's Opposition appears to concede as such in citing to *Landmark Legal*,

---

[1] Nor, for that matter, has Plaintiff provided any such details in its Opposition, which, in any event, would be an impermissible amendment to its Amended Complaint.  *Lokhova v. Halper*, 441 F. Supp. 3d 238, 164 n.24 (E.D. Va. 2020) (Brinkema, J.) ("it is well established that parties cannot amend their complaints through briefing or oral advocacy.") (citations and internal quotation marks omitted).

6

Opp'n at 15, which similarly denied summary judgment for a requestor-plaintiff on a stand-alone timeliness claim. "A FOIA action is designed to remedy the improper withholding of documents and to compel their disclosure; it does not provide an after-the-fact remedy once documents have been released, however tardily." *Landmark Legal*, 272 F. Supp. 2d at 69; *see also Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987) ("The VA's response may have failed to meet FOIA's mandated standards of promptness, but the agency by now has released all nonexempt materials the Tijerinas seek.").

Plaintiff attempts to distinguish *Landmark Legal* and *Tijerina* because "Empower Oversight does not concede that NIH has released all non-exempt materials after the agency failed to meet FOIA's mandated standards of promptness." Opp'n at 15. But whether NIH has released *all* responsive records possibly in the agency's possession is not the touchstone for what constitutes an adequate search under FOIA. *Carter, Fullerton & Hayes, LLC v. Fed. Trade Comm'n*, 601 F. Supp. 2d 728, 734 (E.D. Va. 2009) ("the relevant question" for determining whether a search was adequate under FOIA "is not whether every single potentially responsive document has been unearthed." Rather, a search is reasonably thorough so long as the places that are "likely to contain responsive materials" are searched.) Furthermore, as discussed *infra*, Plaintiff's challenge to the adequacy of the search here focuses on NIH's first production, without *any* mention of NIH's second production, which remedied Plaintiff's issues with the first. In other words, while Plaintiff claims to be arguing NIH has not produced responsive records, it completely ignores that it has in its possession the very documents it claims it does not have.

In any event, Plaintiff has not cited any legal support that permits a stand-alone timeliness claim as it seeks to bring here, nor has it pled a policy-or-practice claim (assuming that such a cause of action exists in the Fourth Circuit). Judgment for NIH on this claim is therefore appropriate.

### III.  Plaintiff's Opposition fails to acknowledge that NIH remedied Plaintiff's concerns with its first production by producing additional documents.

Plaintiff argues that NIH's search was inadequate by attacking NIH's first production. Any relief the Court could order with respect to the first production would be another search for documents. But NIH has done exactly that—it addressed Plaintiff's concerns and produced additional documents on May 13, 2022. Garcia-Malene Suppl. Decl. ¶¶ 57, 58. Thus, there is no harm for the Court to remedy with respect to the first search.

Nonetheless, Plaintiff's Opposition focuses *solely* on defects in NIH's *first* production. Yet, as described below, NIH has remedied these concerns. Plaintiff claims that NIH failed to adequately search for records responsive to its request for "all communications between Jesse Bloom and the NIH, from January 1, 2021 and the present."[2] Opp'n at 18. Plaintiff cites an August 11, 2021 email from an NIH email address to Dr. Bloom, in which the text of the email states it is a "reply" to an earlier correspondence, and claims that the earlier correspondence was not produced. *Id.* at 18-19. NIH produced the "reply" email to Plaintiff on May 13, 2022. Garcia-Malene Suppl. Decl. (Dkt. 37-2) ¶ 57. Similarly, Plaintiff claims that NIH did not produce emails and attachments referenced in an email from Diane Tuncer. Opp'n at 19. NIH produced those records to Plaintiff

---

[2] As an initial matter, this is an incredibly broad request. The request does not specify any particular NIH employee, and there are upwards of 20,000 employees at the agency. Rachel Baye, *NIH Plans to Move 3,000 Employees to Bethesda Campus*, WASH. EXAMINER (Oct. 17, 2012), available at https://www.washingtonexaminer.com/nih-plans-to-move-3-000-employees-to-bethesda-campus. "[I]t is the requester's responsibility to frame requests with sufficient particularity[.]" *Light v. Dep't of Just.*, 968 F. Supp. 2d 11, 24 (D.D.C. 2013); *see also Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 891 (D.C. Cir. 1995) ("Further, an agency is not required to undertake a search that is so broad as to be unduly burdensome."). During this litigation, NIH told Plaintiff that it would search specific custodians for emails with Dr. Bloom, which is exactly what NIH did. Garcia-Malene Suppl. Decl. (Dkt. 37-2) ¶ 19 ("In addition to Dr. Sherry running the above search, NIH conducted two other searches in the email accounts of the following individuals per Plaintiff's request (which was made during this litigation): Dr. Frances Collins, then-Director of NIH, Dr. Lawrence Tabak, then-deputy director of NIH; Dr. Michael Lauer, Deputy Director for Extramural Research, and John Burklow, then Director of the OCPL.").

on May 13, 2022.  Garcia-Malene Suppl. Decl. ¶ 58.  Plaintiff's statements that NIH "produced no such records," Opp'n at 19, is flatly incorrect.

Plaintiff's Opposition makes no mention of NIH's good faith efforts to remedy Plaintiff's concerns and instead raises a challenge that the Court cannot remedy.  Perhaps the closest Plaintiff comes to conceding that its concerns with NIH's first production are moot is its statement that NIH "initially" only produced records from one subagency in response to Request 57203, which sought Congressional correspondence.  Opp'n at 19-20.  But again, NIH went back and searched the Office of Public and Legislative Affairs ("OPLA"), recognizing that responsive records were likely to be stored there because "the NIH Director's Executive Secretariat works closely with OPLA to ensure that all congressional correspondence is appropriately handled and vetted."  Garcia-Malene Suppl. Decl. ¶ 44.

Tellingly, Plaintiff raises no challenge to NIH's second search and production—because, as Gorka Garcia-Malene's supplemental declaration demonstrates—NIH searched in all places likely to have responsive records, developed search terms relevant to the request, and produced responsive, non-privileged documents.  Dkt. 37-2.  NIH "has explained its search, the reasons it continued to produce responsive documents, and its results in fully adequate fashion." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Educ.*, 905 F. Supp. 2d 161, 174 (D.D.C. 2012).  Summary judgment is therefore appropriate for NIH.

**IV.    NIH properly withheld materials under Exemptions 5 and 6 to FOIA**

Plaintiff—without any reference to NIH's *Vaughn* indices—argues that NIH improperly applied Exemptions 5 and 6 of FOIA to withhold materials.  Plaintiff's arguments are unpersuasive.

**A.  NIH properly withheld materials pursuant to Exemption 5.**

NIH withheld materials pursuant to Exemption 5, which exempts from disclosure under FOIA "inter-agency or intra-agency memorandums or letters that would not be available by law to a

9

party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  As noted in NIH's opening brief, this exemption "'incorporates the privileges available to Government agencies in civil litigation.'" Def.'s Mem. at 17-18 (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021)).  NIH invoked the deliberative process privilege to withhold certain materials in responding to Plaintiff's requests, as the materials were both pre-decisional (prepared before NIH issued any final statement) and deliberative (reflecting the "give-and-take of the consultative process").  *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 329 (4th Cir. 2016).

    1.    In its first challenge to NIH's invocation of the deliberative process privilege, Plaintiff argues that NIH improperly withheld materials under the deliberative process privilege in responding to its request for documents related to Dr. Bloom's paper.  Opp'n at 21-23.  In essence, its argument appears to be that because it cannot see the "give-and-take" of the agency's policymaking—the very thing that is protected from disclosure—it must be that NIH improperly withheld material.  Opp'n at 22.  Curiously, Plaintiff argues that there is "nothing in the record" to justify the privilege, without even a cursory mention of the more than 100 pages of *Vaughn* indices NIH provided that explain the basis for each of NIH's redactions.  Opp'n at 23.  But perhaps this key omission is intentional, as a look at the *Vaughn* indices belie Plaintiff's contentions.

    Plaintiff identifies a June 2020 email string from Jesse Bloom to Francis Collins, Steve Sherry, and Anthony Fauci to alert them about sequences deleted from SRA.  Opp'n at 22.  The corresponding *Vaughn* index entry indicates that the materials withheld in this email chain are "internal pre-decisional discussion among NIH employees discussing how to respond to FOIA requests, including what types of sensitive information to withhold." *Vaughn* I at 13 (175-76).  NIH further explains that "[r]elease of these deliberations on a sensitive and nuanced matter would chill the employees' frank internal discussion in the future.  Additionally, release of non-final statements could be used out of context and serve to amplify the already prevalent misinformation regarding

10

the origins of the coronavirus pandemic." *Id.* Plaintiff's exhibit—which contains the materials that were requested pursuant to FOIA—omits the preceding pages, in which NIH employees discuss how to respond to FOIA requests. DEX 9. The email Plaintiff cherry-picked was an example provided by one NIH employee, Steve Sherry, (who was notably not a FOIA employee) to another on what types of redactions to make in a FOIA production. Thus, it is pre-decisional, as it was made before the agency finalized a FOIA response, and deliberative in that it reflected another NIH employee asking Sherry if those redactions were correct, reflecting a "give-and-take" between two employees. DEX 9 at 5.

Plaintiff also challenges redactions to a July 26, 2021 email from Diane Tuncer to Steve Sherry and Kim Pruitt, which Plaintiff believes contains "OCPL's analysis of an article published in Xinhua, as opposed to deliberation for an NIH policy under consideration." Opp'n at 23. The corresponding *Vaughn* index entry states that the redacted material is an "[i]nternal pre-decisional discussion among NIH employees composing a draft QA in view of the posting of Dr. Bloom's paper." *Vaughn* I at 8 (93). In other words, the material redacted contains the Office of Communications and Public Liaison's ("OCPL") detailed examination on the impact of the Xinhua News article to future news media responses from NIH, as evidenced by the attachment to the email containing the latest set of QA (question and answer) documents. This type of material, in which agency employees are analyzing the impact of a public statement to a proposed agency response, is protected by the deliberative process privilege. As NIH notes, "[r]elease of these deliberations on a sensitive and nuanced matter would chill the employees' frank internal discussions in the future. Additionally, release of non-final statements could be used out of context and serve to amplify the already prevalent misinformation regarding the origins of the coronavirus pandemic." *Id.*; *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 83 (D.D.C.

11

2007) (finding that deliberative process privilege covered email messages discussing the agency's response to a news article).

   2. In its second challenge to NIH's use of the deliberative process privilege, Plaintiff attempts to characterize draft responses to Congressional inquiries as "factual" and posits that the "release of factual information does not expose the deliberations or opinions of agency personnel." Opp'n at 23-24. Plaintiff fails to appreciate that the withheld materials are contained in drafts, which are, "by definition, a preliminary version of a piece of writing subject to feedback and change." *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 787. "That is not to say that the label 'draft' is determinative," but "the administrative context" matters. *Id.* Here, the "administrative context" is that the withheld materials were "internal pre-decisional discussion among NIH employees discussing draft responses to the June 28, 2021/July 9, 2021 letter by Senators Grassley, Blackburn, and Marshall." *Vaughn* II at 21 (7-10). Thus, the proposed responses to the Congressional requests "allowed for the possibility of post-circulation changes," *i.e.*, adding or deleting particular facts in response to a request. *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 787. Such additions or deletions are the product of "editorial judgments," the disclosure of which "would stifle the creative thinking and candid exchange of ideas necessary" for the agency to produce its final product. *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987). The danger of chilling full and frank discussion among agency employees does not arise from the disclosure of the facts themselves, but "from disclosure that [the agency] as an institution made changes in a draft at some point[.]" *Id.* That is exactly the type of harm NIH identified could result from disclosure of these draft responses to Congress. *See Vaughn* II at 21 (7-10) ("Release of these deliberations during the drafting process would chill employees' frank internal discussion."). Furthermore, the status of these materials as drafts meant that the proposed responses might not have been fully vetted or fact-checked as would a final response. "[T]he release of non-final language and discussion materials could be used out of

12

context and serve to amplify the already prevalent misinformation regarding the origins of the coronavirus pandemic." *Id.* This information was appropriately withheld under the deliberative process privilege.

Plaintiff also argues that "the status of a response to a Congressional inquiry is not deliberative. It is factual." Opp'n at 24. But the order in which to respond, how quickly the agency is responding to a particular inquiry, and/or whether management has directed that a particular response be prioritized over others are all policy judgments by NIH employees that occur before a final response from the agency is generated. Therefore, this information, too, is protected by the deliberative process privilege.

### B. NIH properly withheld materials pursuant to Exemption 6.

Pursuant to Exemption 6, FOIA's personal privacy exemption, NIH withheld the email addresses and, in certain cases, names, of NIH employees, and the identity of the foreign researcher who requested the data withdrawal from SRA. Def.'s Mem. at 24-30. At issue here is whether the public interest in disclosure outweighs an individual's privacy interests. *Solers*, 827 F.3d at 332. Plaintiff does not articulate any public interest that would be served by disclosure of names and email addresses, other than stating earlier in its Opposition that "[u]nderstanding how the pandemic started is of tremendous public interest, particularly because understanding how the COVID-19 pandemic started may help prevent future pandemics," Opp'n at 6 ¶ 24. As described in NIH's opening brief, learning the names and email addresses of the NIH employees or the foreign researcher will not shed light on how NIH operates and will not help the public understand how the COVID-19 pandemic began. Def.'s Mem. at 26-27 (citing cases). And Plaintiff completely ignores the substantial privacy interests that both the NIH employees and foreign researcher, who is affiliated with Wuhan University, have in keeping their identities from public view. *See* Def.'s Mem. at 27-28 (noting potential for intense media scrutiny and harassment).

13

Rather than respond to these arguments, Plaintiff asks the Court to focus on two largely irrelevant points. Neither comes anywhere close to demonstrating that NIH improperly withheld information pursuant to Exemption 6.

First, Plaintiff argues that NIH has waived the protections of Exemption 6 by its inadvertent disclosure of two names on one page of its production to Plaintiff.[3] Opp'n at 25. This is incorrect. "[A]n agency's inadvertent disclosure of individual names and other [personally identifiable information] rarely waives privacy interests under Exemption 6 because those interests belong to the individuals, not to the agency." *Amiri v. Nat'l Sci. Found.*, 2021 WL 4438910, at *8 (D.D.C. Sept. 28, 2021), *aff'd*, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022); *see also Bartko v. U.S. Dep't of Justice*, 167 F. Supp. 3d 55, 68 (D.D.C. 2016) (same, with respect to Exemption 7(C)). Plaintiff has put forward no evidence that either individual—the name of NIH's SRA curator or the foreign researcher who submitted, and then later withdrew, COVID-19 sequences from SRA—has waived their privacy interests here.

Second, Plaintiff argues that NIH redacted the email address of Dr. Frances Collins, the former director of NIH who it alleges retired before NIH's second production on May 13, 2022. Opp'n at 26. According to Plaintiff's convoluted logic, assuming Dr. Collins is retired, NIH had no basis to withhold his email address because there was no risk that he could receive threatening and harassing messages from the public, and therefore because there is no risk of harassment with respect to Dr. Collins, it must be unfounded with respect to *all* redactions. *Id.* Even assuming NIH should have disclosed Dr. Collins' email, that does not mean it was improper to withhold the names and emails of other NIH employees, including lower-level NIH employees who are not public

---

[3] In its Opposition filed on the public docket, Plaintiff states these names without redaction. NIH has moved to seal that information. Def.'s Mot. to Seal (Dkt. 42) & Mem. in Support (Dkt. 44). NIH is also preparing a properly redacted page to provide to Plaintiff.

figures—especially where, as here, Plaintiff has not articulated how learning these email addresses or names will help it in its ultimate goal to learn more information about the origins of the COVID-19 pandemic.

***

While Plaintiff disagrees with NIH's stated reasons for withholding material, that is of no moment in this Court's analysis. NIH's declarations and *Vaughn* indices are entitled to a presumption of good faith. *James Madison Project*, 2009 WL 2777961, at *2; *S. Appalachian Biodiversity Proj. v. U.S. Forest Serv.*, 500 F. Supp. 2d 764, 769 (E.D. Tenn. 2007). Plaintiff's Opposition contains no evidence that NIH acted in bad faith in withholding materials subject to Exemptions 5 and 6. *See S. Appalachian Biodiversity Proj.*, 500 F. Supp. 2d at 769 ("Mere tardiness, without more, does not equal bad faith. . . . bad faith exists where it becomes apparent that the subject matter of a request involves activities which, if disclosed, would publicly embarrass the agency or that a so-called 'cover up' is presented." (citations and internal quotation marks omitted)). NIH is entitled to summary judgment on Plaintiff's redaction claims.

//

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in its opening memorandum, NIH respectfully requests that this Court grant NIH's motion for summary judgment.

Dated: July 21, 2022

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
MEGHAN LOFTUS
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel:   (703) 299-3757
Fax:   (703) 299-3983
Email: meghan.loftus@usdoj.gov

*Counsel for Defendant*